# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULIE DIAZ,** | **CIVIL ACTION NO.  5:12-cv-00433** |
| **Plaintiff,** | |
| **v.** | **HON. GENE E.K. PRATTER** |
| **SAUCON VALLEY MANOR, INC, NIMITA KAPOORATIYEH A/K/A/ NEMITA ATIYEH A/K/A NEMO AIYAH** | |
| **Defendants.** | |

## ORDER

**AND NOW**, this _____ day of _____, 2013, upon consideration of Defendants Saucon Valley Manor, Inc. and Nimita Kapooratiyeh a/k/a Nemita Atiyeh a/k/a Nemo Aiyah's Amended Motion for Partial Summary Judgment, it is hereby **ORDERED AND DECREED** that the Motion is **GRANTED**.

BY THE COURT

_____

                                        , J.

10426601v.1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULIE DIAZ,** | **CIVIL ACTION NO.  5:12-cv-00433** |
| **Plaintiff,** | |
| **v.** | **HON. GENE E.K. PRATTER** |
| **SAUCON VALLEY MANOR, INC, NIMITA KAPOORATIYEH A/K/A/ NEMITA ATIYEH A/K/A NEMO AIYAH** | |
| **Defendants.** | |

## DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Saucon Valley Manor, Inc. and Nimita Kapooratiyeh a/k/a Nemita Atiyeh a/k/a Nemo Aiyah, by their attorneys, White and Williams LLP, moves this Court pursuant to Fed. R. Civ. P. 56 for an Order granting summary judgment in its favor on Counts I, II, III, IV, and VI of Plaintiff's Amended Complaint.  Defendants also seek dismissal of Count V to the extent a claim is asserted against individual Defendant Nimita Kapoor-Atiyeh.  Support for this Motion is set forth in the attached Memorandum of Law and Exhibits attached thereto.  Pursuant to this Court's Policies and Procedures, the following constitute the undisputed material facts of this case:

1.      On January 27, 2012, Julie Diaz (hereinafter "Diaz" or "Plaintiff) filed a Complaint against Saucon Valley Manor, Inc. and Nimita Kapooratiyeh a/k/a/ Nemita Atiyeh a/k/a Nemo Aiyah[1] claiming the following: (1) violation of the Americans with Disabilities Act against Saucon Valley Manor, 42 U.S.C. § 12101 et seq. (Count I – adverse action); (2) violation

---

[1] At her deposition, the individual Defendant identified her actual name as "Nimita Kapoor-Atiyeh." She will identified herein as "Atiyeh".

of the Pennsylvania Human Relations Act against Saucon Valley Manor, 43 P.S. Sec. 951, <u>et</u> <u>seq</u>. (Count II – disability discrimination); (3) violation of the Americans with Disabilities Act against Saucon Valley Manor, 42 U.S.C. § 12101 <u>et</u> <u>seq</u>. (Count III – retaliation/accommodation); (4) violation of the Pennsylvania Human Relations Act against Saucon Valley Manor, 43 P.S. §951, <u>et</u> <u>seq</u>. (Count IV – retaliation/accommodation); (5) violation of the Family and Medical Leave Act of 1993 against both Defendants, 29 U.S.C. §2601 (Count V); and violation of the Rehabilitation Act of 1973 against both Defendants, 29 U.S.C.A. §794 (Count VI).  On March 29, 2012, Plaintiff filed an Amended Complaint removing the individual liability component of Count VI.  <u>See</u> Amended Complaint, attached to Memorandum of Law In Support of Defendant's Motion for Summary Judgment as Exhibit "A."

2. On December 10,  2007, Diaz accepted employment with Saucon Valley Manor as a cook in its Hellertown, Pennsylvania facility. <u>See</u> Deposition Transcript of Diaz, attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "B" at 21:15-17; 32:3-7.

3. Plaintiff's direct supervisor was Cindy Fox ("Ms. Fox"), the Dietary Manager. <u>See</u> Exhibit "A" at ¶14.

4. At the time of her hire, Diaz signed an Employee Liability Waiver and Release Agreement Relating to Drug Testing.  <u>See</u> Waver and Release Agreement attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "C".

5. Shortly after she was hired, Diaz received an Employee Handbook, attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "D."

6.     Under the rules of the Handbook, coming to work under the influence of alcohol and being absent for a scheduled workday without making proper notification to the supervisor are dischargeable offenses.   See Exhibit "D," at p. 12-13.

7.     Also under the Handbook, employees seeking information about FMLA leave are directed to contact the Human Resources Department.  Id., at p. 22.

8.     In March 2009, Diaz was directed by Malissa Stroble, the Saucon Valley Manor Administrator, to appear for a random drug/alcohol test. See Exhibit "B," at 45:10-13; 51:20.

9.     Diaz failed the test. Id. at 47:22-23.

10.     The test results showed a .064 blood alcohol content.  Id., at 49:8-10.

11.     Diaz feared she was going to lose her job. Id. at 51:24-25.

12.     Diaz's explanation for the failed alcohol test was that she "was out last night." Id., 56:6-7.

13.     Diaz was not discharged for this event.  Id.

14.     In June of 2009, Diaz confided in Ms. Fox (her direct supervisor) about her struggles with alcohol. Id., at 101:22-25; 102:13.

15.     Ms. Fox assisted Diaz by calling the Alcoholics Anonymous hotline and obtaining an AA Sponsor for Diaz. Id., at 102:14-20.

16.     Ms. Fox even accompanied Diaz to her first AA meeting. Id., at 103:10-16.

17.     Ms. Fox accommodated Diaz with her requests to attend AA meetings.  Id.

18.     Ms. Fox was responsible for setting Diaz's schedule.  Id., at 104:23-25; 105:1-16.

19.     On March 1, 2010, Diaz's father died.  Id., at 60:11-13.

20.     On March 2, 2010, Diaz went to work as usual. Id., at 63:151-17. Soon after her arrival, Ms. Fox sent Diaz home. Id., at 67:12-16.

21.     Although Diaz claimed that she thought Ms. Fox was "just being nice," as Ms. Fox escorted Diaz out the door, Diaz told Fox "not to tell Malissa[2] bout (sic) my relapse the night before." Id., at 68:12-13.

22.     Diaz admitted to Ms. Fox in a telephone conversation the evening of March 1, 2010, that she had been drinking alcohol.  Id.

23.     Later in the morning of March 2nd, Diaz was again directed to be tested for the presence of alcohol.  Id., at 85:11-13. This time, the test came back negative.  Id., at 88:24-25; 89:1-3.

24.     Diaz received no discipline for this event.  Id.

25.     In June of 2010, Diaz received a favorable annual evaluation from Ms. Fox. Id., 122:5-25; 123:1-22. See also Ms. Fox's Handwritten Note Accompanying Evaluation, attached to Memorandum of Law in Support of Defendant's Motion as Exhibit "E."

26.     In the note, Ms. Fox refers to Diaz as having had "personal issues in her life outside of work" and that Diaz was "doing the right thing by getting help." Id.

---

[2] Malissa Stroble was the Administrator of Saucon Valley Manor at the time and the person who directed Diaz to a random drug/alcohol test in 2009. See Exhibit "B," at 45:10-13; 51:20.

27.     Diaz took these comments to refer to her struggles with alcohol.  <u>See</u> Exhibit "B," at 124:15-25; 125:1-4.

28.     Diaz received a pay raise at this time. <u>Id</u>., at 125:5-7.

29.     In June or July of 2010, Diaz claims that she informed Ms. Fox that she would need to take medical leave to receive in-patient treatment for her alcoholism.  <u>See</u> Exhibit "A," at ¶30; <u>See</u> Exhibit "B," at 127:14-19; 135:10-13.

30.     At the time, Diaz was undergoing outpatient treatment per the Northampton County criminal system due to a previous DUI charge.  <u>Id</u>., at 128:12-25; 129:1-2.

31.     At the time of her request for leave, Diaz had no knowledge as to where she was going to receive in-patient treatment. <u>Id</u>., at 131:5-7.

32.     She also did not know when she would be going to in-patient treatment. <u>Id</u>. at 132:8-10.

33.     However, Diaz's motivation for requesting this leave actually related to her learning from her probation officer that her probation for the prior DUI would be extended so that she could receive treatment.  <u>Id</u>., at 132:14-21.

34.     According to Diaz, Ms. Fox told her that a leave of absence would not be an issue and that she would work around Diaz's schedule.  <u>Id</u>., at 135:15-18.

35.     Diaz testified that she asked Ms. Fox for leave papers.  <u>Id</u>., at 135:19-25; 136:1-2.

36.     According to Diaz, Ms. Fox informed her the forms couldn't be filled out because the date was unknown. <u>Id.</u>

37.     Ms. Fox testified that she instructed Diaz to report to Human Resources regarding her leave request, in accordance with the Employee Handbook.   See Cindy Fox Deposition Transcript, attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "F," at 25:4-5, 21-22.

38.     Diaz never approached Atiyeh about needing a leave of absence. See Atiyeh Deposition Transcript, attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "G," at 17:10-15, 18.

39.     Diaz admits that she only informed Ms. Fox of her need for a leave of absence. See Exhibit "B," at 135:9-18.

40.     Diaz testified that she only approached Ms. Fox about the FMLA paperwork and did not report to Human Resources, as instructed, and in accordance with company policy.   Id., at 135:19-25.

41.     Diaz also testified that she "never spoke to Mrs. Atiyeh." Id., at 138:16.

42.     Atiyeh learned that Diaz went into alcohol rehabilitation on or about July 22, 2010, after Atiyeh had heard that Diaz had been arrested for public drunkenness and after Atiyeh made the decision to terminate Diaz for the arrest and for not showing up for work. See Exhibit "G," at 27:8-25.

43.     With respect to Diaz's alleged request for a leave of absence, Diaz never approached Atiyeh about needing a leave of absence.  See Exhibit "G," at 17:10-15, 18.

44.     Diaz testified that she only informed Ms. Fox of her need for a leave of absence. See Exhibit "B" at 135:9-18.

45.     Plaintiff stated that she asked only Ms. Fox about FMLA paperwork. <u>Id.</u>, at 135:19-25;136:1-2.

46.     Plaintiff stated that she "never spoke to Mrs. Atiyeh." <u>Id.</u> at 138:16.

47.     Ms. Atiyeh did not have any role in the supervision or control of employee work schedules or other conditions of employment — Ms. Fox was Diaz's supervisor.  <u>See</u> Exhibit "F," at 8:11-18, 24-25; 9:1-4.

48.     Ms. Fox's direct supervisor during Diaz's tenure with Saucon Valley Manor was Malissa Stroble. <u>Id.</u>, at 9:5-14.

49.     Ms. Fox was responsible for work schedules for her employees, including Plaintiff, as well as for monitoring their activities and assigning them work.  <u>Id.</u>, at 9:12-20.

50.     Ms. Fox approved their vacation time, sick time and personal days.  <u>Id.</u>, at 11:4-12.

51.     Ms. Fox prepared Plaintiff's annual evaluation without any other assistance, and provided a copy to Human Resources. <u>Id.</u>, at 12:23-24; 13:1-24.

52.     Ms. Fox only recalls discussing Diaz's evaluation with Diaz.  <u>Id.</u>, at 14:9-13.

53.     As for Diaz's alleged request for a leave of absence, Ms. Fox only recalls telling Diaz to report to Human Resources, in accordance with company policy.  <u>Id.</u>

54.     No evidence suggests that Diaz complied with this directive.  <u>Id.</u>, 25:2-5; 21-22.

55.     Saucon Valley's Director of Human Resources also testified that employees must go to Human Resources to process FMLA claims.  <u>See</u> Deposition Transcript of Carolyn Hirsch,

attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "H" at p.18.

56.     Atiyeh exercised little if any control over the conditions of Diaz's employment prior to her termination — Atiyeh did not supervise Diaz's work.  Exhibit "F," 25:2-5; 21-22.

57.     Plaintiff attempts to show that Defendants treated other non-disabled arrestees more favorably than Defendants treated Plaintiff.  See generally, Exhibit "A."

58.     Malissa Stroble testified about an employee who had a "run-in" with the law outside of work and that action was taken at work as a result of the incident.  See Deposition of Malissa Stroble attached to Memorandum of Law in Support of Defendant's Motion for Summary Judgment as Exhibit "I," at 74:15-25; 75: 1-25; 76: 1-25.

59.     Ms. Stroble testified that two off-duty employees, who were spending the night at Saucon Valley Manor due to a snow storm, had left the facility, went to a bar, and returned to Saucon Valley intoxicated. Id.

60.     Ms. Stroble testified as to her belief that they were both terminated.  Id., at 75:15-17.

61.     The record unequivocally establishes that on July 22, 2010, Atiyeh had heard a rumor that Diaz had been arrested for public drunkenness and Atiyeh decided to terminate Diaz for the incident and for not showing up for work.  See Exhibit "G," at 26: 23-25; 27:1-3.

62.     Atiyeh testified:

> "I called Carolyn before I wrote that and said, 'Did she apply for FMLA?'  She said 'No.'  So that was a rumor. The only fact is what I saw in the paper, that she was arrested for public

> drunkenness.  Both Cindy and Bob Balum[3] told me that she was
> arrested.  She didn't even come or call or show up or tell us she
> wasn't going to come to work.  And that was on the 22nd when I
> terminated her, when I had to pay extra employees to cover her
> work, and that was why I terminated her."

Exhibit "G," at 27:15-25.

63.    As of July 22, 2010, Ms. Diaz was not aware that she would be going to in-patient

rehabilitation the next day, July 23, 2010.  See Exhibit "B," at 145:21-25; 146:1-10.


64.    No sufficient evidence establishes that Saucon Valley Manor terminated

Plaintiff's employment on discriminatory criteria.


                                        WHITE AND WILLIAMS LLP


                                        _____/s/_____
                                        John K. Baker
                                        George C. Morrison
                                        Attorney I.D. Nos. 44725 and 203223
                                        3701 Corporate Parkway, Suite 300
                                        Center Valley, PA  18034-8233
                                        (610) 782-4913
                                        Attorneys for Defendants

Date:   January 10, 2013

---

[3] Bob Balum, a retired Chief of Police, is the Director of Maintenance for Saucon Valley Manor.  See Exhibit "G" at 29:13-14, 17.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JULIE DIAZ,** | **CIVIL ACTION NO.  5:12-cv-00433** |
| **Plaintiff,** | |
| **v.** | **HON. GENE E.K. PRATTER** |
| **SAUCON VALLEY MANOR, INC, NIMITA KAPOORATIYEH A/K/A/ NEMITA ATIYEH A/K/A NEMO AIYAH** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Saucon Valley Manor, Inc. and Nimita Kapooratiyeh a/k/a Nemita Atiyeh a/k/a Nemo Aiyah, by and through their attorneys, White and Williams LLP, hereby submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment and avers as follows.

**I.     INTRODUCTION**

On January 27, 2012, Julie Diaz (hereinafter "Diaz" or "Plaintiff) filed a Complaint against Saucon Valley Manor, Inc. and Nimita Kapooratiyeh a/k/a/ Nemita Atiyeh a/k/a Nemo Aiyah[4] claiming the following: (1) violation of the Americans with Disabilities Act against Saucon Valley Manor, 42 U.S.C. § 12101 et seq. (Count I – adverse action); (2) violation of the Pennsylvania Human Relations Act against Saucon Valley Manor, 43 P.S. Sec. 951, et seq. (Count II – disability discrimination); (3) violation of the Americans with Disabilities Act

---

[4] At her deposition, the individual Defendant identified her actual name as "Nimita Kapoor-Atiyeh." She will identified herein as "Atiyeh".

against Saucon Valley Manor, 42 U.S.C. § 12101 <u>et</u> <u>seq</u>. (Count III –
retaliation/accommodation); (4) violation of the Pennsylvania Human Relations Act against
Saucon Valley Manor, 43 P.S. §951, <u>et</u> <u>seq</u>. (Count IV – retaliation/accommodation); (5)
violation of the Family and Medical Leave Act of 1993 against both Defendants, 29 U.S.C.
§2601 (Count V); and violation of the Rehabilitation Act of 1973 against both Defendants, 29
U.S.C.A. §794 (Count VI).  On March 29, 2012, Plaintiff filed an Amended Complaint removing
the individual liability component of Count VI.  <u>See</u> Amended Complaint, attached hereto as
Exhibit "A."

## II.    STATEMENT OF FACTS

The facts of this case are as follows.  On December 10, 2007, Diaz accepted employment
with Saucon Valley Manor as a cook in its Hellertown, Pennsylvania facility. <u>See</u> Deposition
Transcript of Diaz, attached hereto as Exhibit "B" at 21:15-17; 32:3-7. Her direct supervisor was
Cindy Fox ("Ms. Fox"), the Dietary Manager.  <u>See</u> Exhibit "A" at ¶14. At the time of her hire,
Diaz signed an Employee Liability Waiver and Release Agreement Relating to Drug Testing.
<u>See</u> Exhibit "C".  Shortly after she was hired, Diaz received an Employee Handbook, attached
hereto as Exhibit "D."  Under the rules of the Handbook, coming to work under the influence of
alcohol and being absent for a scheduled workday without making proper notification to the
supervisor are dischargeable offenses.    <u>See</u> Exhibit "D," at p. 12-13. Also under the Handbook,
employees seeking information about FMLA leave are directed to contact the Human Resources
Department.  <u>Id</u>., at p. 22.

In March 2009, Diaz was directed by Malissa Stroble, the Saucon Valley Manor
Administrator, to appear for a random drug/alcohol test. <u>See</u> Exhibit "B," at 45:10-13; 51:20.
Diaz failed the test. <u>Id</u>. at 47:22-23.  The test results showed a .064 blood alcohol content.  <u>Id</u>., at
49:8-10.  Diaz feared she was going to lose her job. <u>Id</u>. at 51:24-25. Diaz's explanation for the

failed alcohol test was that she "was out last night." Id., 56:6-7.  Diaz was not discharged for this event.

 In June of 2009, Diaz confided in Ms. Fox (her direct supervisor) about her struggles with alcohol. Id., at 101:22-25; 102:13.  Ms. Fox assisted Diaz by calling the Alcoholics Anonymous hotline and obtaining an AA Sponsor for Diaz. Id., at 102:14-20. Ms. Fox even accompanied Diaz to her first AA meeting. Id., at 103:10-16.  Ms. Fox accommodated Diaz with her requests to attend AA meetings.  Ms. Fox was responsible for setting Diaz's schedule.  Id., at 104:23-25; 105:1-16.

 On March 1, 2010, Diaz's father died.  Id., at 60:11-13.  On March 2, 2010, Diaz went to work as usual. Id., at 63:151-17. Soon after her arrival, Ms. Fox sent Diaz home. Id., at 67:12-16. Although Diaz claimed that she thought Ms. Fox was "just being nice," as Ms. Fox escorted Diaz out the door, Diaz told Fox "not to tell Malissa[5] bout (sic) my relapse the night before." Id., at 68:12-13.  Diaz admitted to Ms. Fox in a telephone conversation the evening of March 1, 2010, that she had been drinking alcohol.  Later in the morning of March 2nd, Diaz was again directed to be tested for the presence of alcohol.  Id., at 85:11-13. This time, the test came back negative. Id., at 88:24-25; 89:1-3. Diaz received no discipline for this event.

 In June of 2010, Diaz received a favorable annual evaluation from Ms. Fox. Id., 122:5-25; 123:1-22.  See also Ms. Fox's Handwritten Note Accompanying Evaluation, attached hereto as Exhibit "E."  In the note, Ms. Fox refers to Diaz as having had "personal issues in her life outside of work" and that Diaz was "doing the right thing by getting help." Id.  Diaz took these comments to refer to her struggles with alcohol.  See Exhibit "B," at 124:15-25; 125:1-4.  Diaz received a pay raise at this time. Id., at 125:5-7.

---

[5] Malissa Stroble was the Administrator of Saucon Valley Manor at the time and the person who directed Diaz to a random drug/alcohol test in 2009. See Exhibit "B," at 45:10-13; 51:20.

In June or July of 2010, Diaz claims that she informed Ms. Fox that she would need to take medical leave to receive in-patient treatment for her alcoholism.  See Exhibit "A," at ¶30; See Exhibit "B," at 127:14-19; 135:10-13.  At the time, Diaz was undergoing outpatient treatment per the Northampton County criminal system due to a previous DUI charge.  Id., at 128:12-25; 129:1-2.  At the time of her request for leave, Diaz had no knowledge as to where she was going to receive in-patient treatment. Id., at 131:5-7. She also did not know when she would be going to in-patient treatment. Id. at 132:8-10.  However, Diaz's motivation for requesting this leave actually related to her learning from her probation officer that her probation for the prior DUI would be extended so that she could receive treatment.  Id., at 132:14-21.  According to Diaz, Ms. Fox told her that a leave of absence would not be an issue and that she would work around Diaz's schedule.  Id., at 135:15-18. Diaz testified that she asked Ms. Fox for leave papers. Id., at 135:19-25; 136:1-2.  According to Diaz, Ms. Fox informed her the forms couldn't be filled out because the date was unknown. Id.  Ms. Fox testified that she instructed Diaz to report to Human Resources regarding her leave request, in accordance with the Employee Handbook.  See Cindy Fox Deposition Transcript, attached hereto as Exhibit "F," at 25:4-5, 21-22.

Diaz never approached Atiyeh about needing a leave of absence. See Atiyeh Deposition Transcript, attached hereto as Exhibit "G," at 17:10-15, 18.  Diaz admits that she only informed Ms. Fox of her need for a leave of absence. See Exhibit "B," at 135:9-18.  Diaz testified that she only approached Ms. Fox about the FMLA paperwork and did not report to Human Resources, as instructed, and in accordance with company policy.  Id., at 135:19-25.  Diaz also testified that she "never spoke to Mrs. Atiyeh." Id., at 138:16.

Atiyeh learned that Diaz went into alcohol rehabilitation on or about July 22, 2010, after Atiyeh had heard that Diaz had been arrested for public drunkenness and after Atiyeh made the

-4-

decision to terminate Diaz for the arrest and for not showing up for work. See Exhibit "G," at 27:8-25.   Under these circumstances, Atiyeh could not have terminated Diaz for anything relating to FMLA since Atiyeh had no knowledge that Diaz had ever applied for FMLA and had no information as to whether Diaz was eligible for FMLA leave.

**ARGUMENT**

**A.     Standard of Review.**

Defendants file this Motion pursuant to F.R.C.P. 56(c) which provides the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."   A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   Summary judgment thus serves to eliminate the waste of time and resources for both the litigants and the courts in cases where a trial would be a useless formality.   See id.   Once a motion for summary judgment has been properly supported, the non-moving party "must present affirmative evidence to defeat a properly supported motion for summary judgment."   Id., at 256-57.   In order to survive summary judgment, the plaintiff must come forward with probative evidence establishing the *prima facie* elements of her claim.   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).   A plaintiff must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production.   Anderson, at 252.   "Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials."   Best v. Janerich, 80 F. Supp. 2d 334, 335 (M.D. Pa. 1999) (citing Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990)).

As demonstrated below, there are no genuinely disputed material facts that would preclude entry of summary judgment in favor of Defendants and Plaintiff's Amended Complaint should be dismissed and judgment entered for Defendants as a matter of law.

**B.    Plaintiff Cannot Prevail On Her FMLA Claim Against Individual Defendant Atiyeh Because She Failed to Establish that Atiyeh is an Individual Subject to FMLA Liability.**

The Family and Medical Leave Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. §2615(a)(1).  The FMLA defines "employer" in relevant part as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. Sec. 2611(4)(A)(ii)(I).  Courts look to cases interpreting "employer" under the Fair Labor Standards Act to define the scope of FMLA individual employer liability. Narodetsky v. Cardone Industries, Inc., 2010 WL 678288 (E.D. Pa.) at 3.

Section 2611(4)(A)(ii)(I) contemplates that liability for FMLA violations may be imposed upon an individual person who would not otherwise be regarded as the plaintiff's employer.  Cullison v. Dauphin County, Pennsylvania, 2012 WL 3027776 at *7 (M.D.Pa. May 18, 2012).  This has been interpreted to mean "that an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation' while acting in the employer's interest." Id.(citing Haybarger v. Lawrence County Adult Probation and Parole, 667 F.3d 408, 417 (3d Cir.2012); Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir.1987)).

In examining supervisory control over an employee under the FMLA, most courts look to the "economic reality" of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee.  See  Cullison. "[W]hether a person functions as an employer depends on the totality of the circumstances rather

-6-

than on 'technical concepts of the employment relationship." Id. at 7 (citing Hodgson v. Arnheim & Neely, Inc. 444 F.2d 609, 612 (3d Cir. 1971)).  Some of the relevant factors in ascertaining the economic reality of the employment situation include whether the individual "(1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment, and (4) maintained employment records."  Cullison, at 8 (citing Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).  However, courts must consider "any relevant evidence" and "[n]o one of the four factors standing alone is dispositive." Id., at 7-8 (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947);  Haybarger v. Lawrence County Adult Probation and Parole, 667 F.3d 408, 417 (3d Cir. 2012)).

In the instant case, Count V of the Amended Complaint asserts a violation of the FMLA against both Saucon Valley Manor and individual Defendant Atiyeh.  Interestingly, Plaintiff asserts that she suffered an adverse action in that "her employment was terminated because she took a leave of absence to which she was entitled under the FMLA."  See Exhibit "A," at ¶74. As against Atiyeh, Plaintiff alleges that Atiyeh "acted in the interest of her employer Saucon Valley with regard to the actions she took concerning Ms. Diaz.  Ms. Atiyeh was in whole or in part responsible for the decision to terminate Ms. Diaz  and for the notification of Plaintiff's termination in violation of the [FMLA]." Id., at ¶75.  Defendants concede that Ms. Atiyeh, as Administrator and President of Saucon Valley Manor, had the power to hire and fire all employees, including Ms. Diaz.  However, she cannot be said to have had sufficient control over Diaz's employment so as to subject her to individual liability.  See Exhibit "G," at 7:14-16.

Atiyeh oversees the operations of the building with her Assistant Administrators.  See Exhibit "G," at 7:23-25; 8:1-2.  Atiyeh's job responsibilities do not include handling human

resource issues. Id., at 8:18-22.  For example, if an employee needs an accommodation, that employee must go to Human Resources and not to Atiyeh. Id., at 12:20-25; 13:1.  See also Exhibit "D," at p. 22.  Saucon Valley's Director of Human Resources also testified that employees must go to Human Resources to process FMLA claims.  See Deposition Transcript of Carolyn Hirsch, attached hereto as Exhibit "H" at p.18.  Former Saucon Valley Administrator, Malissa Stroble, testified in this same regard as well.  See Deposition Transcript of Malissa Stroble, attached hereto as Exhibit "I," at 16:14-25; 17:1-6; 18:6-25;19:14.

With respect to Diaz's alleged request for a leave of absence, Diaz never approached Atiyeh about needing a leave of absence.  See Exhibit "G," at 17:10-15, 18. Diaz testified that she only informed Ms. Fox of her need for a leave of absence.  See Exhibit "B" at 135:9-18. Plaintiff stated that she asked only Ms. Fox about FMLA paperwork. Id., at 135:19-25;136:1-2. Plaintiff stated that she "never spoke to Mrs. Atiyeh." Id. at 138:16.  No evidence suggests that Atiyeh had any knowledge of Diaz's discussions with Ms. Fox prior to Diaz's termination.

 In addition, Atiyeh only learned that Diaz went into alcohol rehabilitation on or about July 22, 2010, after Atiyeh had heard that Diaz had been arrested for public drunkenness and after Atiyeh made the decision to terminate Diaz for the arrest and for not showing up for work. See Exhibit "G," at 27:8-25.  Atiyeh did not terminate Diaz for anything relating to FMLA since Atiyeh had no knowledge as to whether Diaz attempted to invoke her FMLA rights and had no information as to whether Diaz was even eligible for FMLA leave.  Thus, Atiyeh could not have terminated Diaz for taking a leave of absence "to which she was entitled under FMLA." Exhibit "A," at ¶74.

Moreover, Ms. Atiyeh did not have any role in the supervision or control of employee work schedules or other conditions of employment.  Ms. Fox was Diaz's supervisor.  See Exhibit

"F," at 8:11-18, 24-25; 9:1-4.  Ms. Fox's direct supervisor during Diaz's tenure with Saucon Valley Manor was Malissa Stroble. Id., at 9:5-14.  Ms. Fox was responsible for work schedules for her employees, including Plaintiff, as well as for monitoring their activities and assigning them work.  Id., at 9:12-20.  She approved their vacation time, sick time and personal days.  Id., at 11:4-12.  Ms. Fox prepared Plaintiff's annual evaluation without any other assistance, and provided a copy to Human Resources. Id., at 12:23-24; 13:1-24. Ms. Fox only recalls discussing Diaz's evaluation with Diaz.  Id., at 14:9-13. As for Diaz's alleged request for a leave of absence, Ms. Fox only recalls telling Diaz to report to Human Resources, in accordance with company policy.  No evidence suggests that Diaz complied with this directive.  Id., 25:2-5; 21-22.

Admittedly, Atiyeh was acting in the interest of  Saucon Valley Manor when she terminated Diaz for the public drunkenness charge and for her failure to show up for work.  However, that is only one issue to examine to determine Atiyeh's individual liability.  Atiyeh exercised little if any control over the conditions of Diaz's employment prior to her termination.  As indicated above, she did not supervise Diaz's work.  Id.

The economic reality of Diaz's employment situation was that Atiyeh, as President/Administrator, exercised little or no daily operational control over Diaz.  Moreover, her termination of Diaz was done without any knowledge as to whether Diaz invoked her FMLA rights.  Thus, Atiyeh cannot be individually liable under the law.  See Cullison.  Under these circumstances, Atiyeh should be dismissed from this action with prejudice.

**C.    Plaintiff Cannot Prevail On Her Disability Discrimination Claims Under the ADA, PHRA and Rehabilitation Act Because She Cannot Establish a *Prima Facie* Case and Failed to Establish That Saucon Valley's Legitimate Non-Discriminatory Reason for Her Discharge is a Pretext for Discrimination.**

In order for Plaintiff to establish a *prima facie* case of discrimination under the ADA and PHRA, she must show that: (1) she is a disabled person within the meaning of the law; (2) she is otherwise qualified to perform the essential functions of the job; and, (3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Shaner v. Synthes (USA), 204 F.3d 494, 500 (3d Cir. 2000); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).

"To establish a *prima facie* case of retaliation under the [Rehabilitation Act], a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  Consistent with the shifting of burdens of proof under the employment discrimination standards, Diaz must show as part of her *prima facie* discrimination case that Saucon Valley Manor has treated more favorably persons similarly situated who are not disabled, or otherwise raise an inference of disability discrimination.  Jones v. Sch. District of Phila., 198 F.3d 403, 413 (3d Cir. 1999).

Should Plaintiff successfully establish a *prima facie* case of discrimination, the burden shifts to Saucon Valley Manor "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Stanzial v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).  If Saucon Valley Manor satisfies this burden, the burden returns to Plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by Saucon Valley Manor are merely a pretext for discrimination. McDonnell Douglas, at 804-05.  Saucon Valley Manor's burden of production is "relatively

light" when compared to the burden of persuasion, which remains with the Plaintiff at all times. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 2003); see also Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005).

As discussed below, Plaintiff fails to establish a *prima facie* case of discrimination in her various allegations.  Moreover, in the event that she can establish a *prima facie* case, Saucon Valley Manor has proffered valid legitimate non-discriminatory reasons for the action taken against Plaintiff and Plaintiff has failed to offer sufficient evidence to show these reasons are mere pretext.

        1.        **Plaintiff Failed to Establish a *Prima Facie* Case of Discrimination Because No Evidence Shows that Similarly Situated Persons Were Treated More Favorably Or That Plaintiff's Termination Was Causally Related to her Engaging in Any Protected Activity.**

A plaintiff can raise an inference of discrimination with evidence that non-members of the protected class were treated more favorably.  See Tucker v. Merck & Co., 131 Fed.Appx. 852, 855 (3d Cir. 2005); E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir.1990).  The plaintiff has the burden of showing that "similarly situated persons were treated differently." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998).  To raise an inference of discrimination, a plaintiff must show something more than "the fact that some members of one group are sometimes treated better and sometimes treated worse than members of another group."  Id., at 646.  In addition, "[t]he similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."  Jackson v. Planco,  660 F.Supp.2d 562, 577-78 (E.D. Pa. 2009).

In order for employees to be deemed "similarly situated," the Plaintiff must show that "the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same

-11-

conduct without such differentiating of mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mihalko v. Potter, 2003 WL 23319594, at 6 (W.D. Pa); see also Krouse v. American Sterilizer Co., 126 F.3d 494, 504 (3d Cir. 1997).  To show individuals to be similarly situated in all relevant respects, a Plaintiff  must be able to show that the claimed comparators  "engaged in comparable conduct." Andy v. United Parcel Service, 2003 WL 22697194, 12 (E.D.Pa.) (citing Linear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir.1988) (holding that "similarly situated" requires a showing "that the other employee's acts were of 'comparable seriousness' to [plaintiff's] own infraction")).  Determining whether another employee is similarly situated is a fact-specific inquiry but one still amenable to resolution at the summary judgment stage.  See Simpson, 142 F.3d at 645-47.  See also Lee v. Valley Forge Military Academy, 2008 WL 4899465, at 5 (E.D. Pa. 2008).

Plaintiff has failed to identify similarly situated comparators in support of her *prima facie* case.  Plaintiff focuses on her arrest for public drunkenness as the source for her comparators, apparently arguing that she was treated differently from others who were arrested for off duty conduct.  In this regard, Plaintiff attempts to show that Defendants treated other non-disabled arrestees more favorably than Defendants treated Plaintiff.  Malissa Stroble testified about an employee who had a "run-in" with the law outside of work and that action was taken at work as a result of the incident.  See Exhibit "I," at 74:15-25; 75: 1-25; 76: 1-25.  Ms. Stroble testified that two off-duty employees, who were spending the night at Saucon Valley Manor due to a snow storm, had left the facility, went to a bar, and returned to Saucon Valley intoxicated. Id.  Ms. Stroble testified as to her belief that they were both terminated.  Id., at 75:15-17.  Obviously, Plaintiff's "comparators" received the same treatment she received, so Diaz cannot argue that others were treated more favorably.  Similarly, Plaintiff also failed to establish that Saucon

-12-

Valley Manor retaliated against her.  Plaintiff also produced no evidence to show that her termination was causally related to her engaging in any protected activity under the Rehabilitation Act.  See Krouse.  As a result, Plaintiff's claims under the ADA, PHRA, and Rehabilitation Act fail and this Court should dismiss the Complaint with prejudice.

> **2.     Saucon Valley Manor had Legitimate, Non-Discriminatory Reasons for Plaintiff's Discharge Which Plaintiff Cannot Establish Were a Pretext for Disability Discrimination.**
>
> **a.     <u>Saucon Valley Manor  had articulated legitimate, non-discriminatory reasons for Plaintiff's termination.</u>**

Even if Plaintiff is able to meet her burden of proof of establishing a *prima facie* case, Saucon Valley Manor has demonstrated that it had a legitimate, non-discriminatory reason for her termination.  In this respect, the employer's burden is relatively low; "[t]he employer satisfies its burden of production by introducing evidence, which taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes, at 762 (internal citations omitted).  While Plaintiff claims that Saucon Valley terminated her employment because of her alleged disability and/or for engaging in protected activity under the Rehabilitation Act, the evidence establishes that Saucon Valley Manor terminated Plaintiff's employment because of her arrest for public drunkenness and her subsequent no call/no show.[6]

Diaz concedes being arrested for public drunkenness and disorderly conduct at a public park on July 16, 2010.  See Exhibit "B," at 141:7-25; 142-14.      The record unequivocally establishes that on July 22, 2010, Atiyeh had heard a rumor that Diaz had been arrested for public drunkenness and Atiyeh decided to terminate Diaz for the incident and for not showing up

---

[6] The ADA specifically provides that an employer may hold an employee who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the alcoholism of such employee.  See 42 U.S.C. § 12114(c)(4); Brown v. Lucky Stores, Inc., 246 F.3d 1182 (9th Cir. 2001).  In Brown, an employee who was sent to Court-ordered inpatient rehabilitation was discharged for failure to report to work.  246 F.3d at 1186.  The Court concluded that the employer did not violate the ADA, and that the employer did not have a duty to provide an accommodation to the employee as she had never requested one.  Id. at 1188.

for work.  See Exhibit "G," at 26: 23-25; 27:1-3.  The termination had nothing to do with Diaz's

alleged disability, nor was it related to any request for medical leave.  In fact, as of July 22, 2010,

Ms. Diaz was not aware that she would be going to in-patient rehabilitation the next day, July 23,

2010.  See Exhibit "B," at 145:21-25; 146:1-10.  Atiyeh also testified:

> "I called Carolyn before I wrote that and said, 'Did she apply for FMLA?'
> She said 'No.'  So that was a rumor.  The only fact is what I saw in the
> paper, that she was arrested for public drunkenness.  Both Cindy and Bob
> Balum[7] told me that she was arrested.  She didn't even come or call or
> show up or tell us she wasn't going to come to work.  And that was on the
> 22nd when I terminated her, when I had to pay extra employees to cover
> her work, and that was why I terminated her."

Exhibit "G," at 27:15-25.

Based upon these legitimate and non-discriminatory findings and recommendations,

Saucon Valley Manor terminated Plaintiff's employment on July 22, 2010.  See id.

### b.    **Plaintiff cannot establish that Saucon Valley Manor's articulated reasons are a pretext for discrimination**.

Even apart from the fact that Plaintiff fails to establish a *prima facie* case, the fact

remains that any decision to end Plaintiff's employment was based on Plaintiff's flagrant

violation of Saucon Valley Manor's policies.   There is no evidence demonstrating these

legitimate, non-discriminatory reasons were pretextual and, therefore, Saucon Valley Manor is

entitled to summary judgment as a matter of law.

The "standard for proving pretext . . . 'places a difficult burden on the Plaintiff.'"  Kautz

v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (quoting Fuentes, at 765).  In the summary

judgment context, in order to defeat the employer's motion, the employee must provide

evidence, "direct or circumstantial, from which a fact finder could reasonably either (1)

---

[7] Bob Balum, a retired Chief of Police, is the Director of Maintenance for Saucon Valley Manor.  See Exhibit "G" at 29:13-14, 17.

disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Fuentes, at 764.  In doing so, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reason.'" Id., at 765 (quoting Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).  Plaintiff's evidence does not approach the point of meeting this difficult burden.

The factual record in this matter is devoid of any evidence of disability discrimination or retaliation.  To this end, Plaintiff supports her claim with mere conclusory statements that Saucon Valley terminated her employment on the basis of a disability and/or engaging in a protected activity.  See generally, Exhibits "A" and "B."  Plaintiff's bald statements and unsupported conclusions are not sufficient to support her claims at the summary judgment stage. Schoch, at 657 (mere conclusory allegations are insufficient to withstand a motion for summary judgment).

In addition, it is important to note that Plaintiff has failed to produce any evidence to show that Saucon Valley Manor terminated her employment  on the basis of a disability.  In the light most favorable to Plaintiff, the record at best establishes that Diaz had a drinking problem, received minimal disciplinary action in 2009 for showing up to work intoxicated, admitted to her supervisors (Ms. Fox and Ms. Stroble) that she had a problem with alcohol, indicated a need to Ms. Fox for a leave of absence some time in the future but never filled out the appropriate FMLA paperwork.  See Exhibits "F" and "I."  Indeed, Ms. Fox helped Diaz connect with AA,

got her a sponsor, attended an AA meeting with Diaz, gave her glowing performance evaluations, and recommended her for raises.  Id.  Atiyeh and Ms. Stroble were aware of Diaz's alcohol struggles as far back as March of 2009, yet no action was ever taken against Diaz and she suffered no adverse consequence.  See Exhibits "G" and "I."

Under these circumstances, Plaintiff cannot discredit Saucon Valley Manor's legitimate reasons for terminating her employment as a matter of law regardless of what Diaz may have informed Ms. Fox since the information Ms. Fox obtained, if any, was never communicated to Atiyeh.  See   EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 484 (10th Cir. 2006) (an employer cannot be held liable for a subordinates' discriminatory recommendation or complaint if the employer conducts an independent investigation of the allegations against the employee); Diaz v. City of Tucumcari, 2011 WL 6830410 (D. N.M) (same); Clayton v. Vanguard Car Rental U.S.A., Inc., 761 F.Supp.2d 1210 (D. N.M.) (same).

Since Plaintiff offers insufficient evidence to discredit Saucon Valley Manor's proffered explanation for terminating employment, summary judgment should be granted to all Defendants.  See Williams v. Rumsfeld, 44 Fed. Appx. 592, 594 (3d Cir. 2002) (granting summary judgment to employer where plaintiff failed to offer material evidence that cast doubt on the employer's stated reason for termination).  See also Gray v. New York Newspaper, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  In Gray, the Third Circuit Court of Appeals held that a disputed fact is "material" if it would affect the outcome of the suit as determined by the substantive law.  Id.  It further held that a party attempting to avoid a motion for summary judgment must offer "sufficient evidence for a jury to return a verdict in favor or the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted."  Id.  In this case, Plaintiff fails to offer material evidence that casts doubt on

-16-

the stated reason for termination — her unsupported belief that discriminatory conduct occurred is insufficient.  Id.  Plaintiff failed to produce any evidence to show that Saucon Valley Manor treated any similarly situated employee differently, retaliated against her, or terminated her for engaging in any protected activity.  Furthermore, Plaintiff's failure to produce evidence to show that Ms. Atiyeh based her decision on discriminatory criteria is fatal to Plaintiff's claims.  Based on all of the foregoing reasons, all Defendants entitled to summary judgment in their favor.

**CONCLUSION**

For all the foregoing reasons, all Defendants respectfully request that this Court enter an Order granting their Motion for Partial Summary Judgment and dismiss Counts I, II, III, IV and VI of Plaintiff's Amended Complaint, with prejudice.  In addition, to the extent a claim is asserted against individual Defendant Atiyeh under Count V, the claim should be dismissed and Ms. Atiyeh removed from this action with prejudice.

WHITE AND WILLIAMS LLP


_____/s/_____

John K. Baker
George C. Morrison
Attorney I.D. Nos. 44725 and 203223
3701 Corporate Parkway, Suite 300
Center Valley, PA  18034-8233
(610) 782-4913
Attorneys for Defendants

Date:   January 10, 2013

10426601v.1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE DIAZ, | CIVIL ACTION NO.  5:12-cv-00433 |
| Plaintiff, | |
| v. | HON. GENE E.K. PRATTER |
| SAUCON VALLEY MANOR, INC, NIMITA KAPOORATIYEH A/K/A/ NEMITA ATIYEH A/K/A NEMO AIYAH | |
| Defendants. | |

CERTIFICATE OF SERVICE

I, John K. Baker, Esquire, hereby certify that on this 10th day of January, 2013 a true and correct copy of  the foregoing DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT, MEMORANDUM OF LAW IN SUPPORT THEREOF and PROPOSED ORDER was served by way of the electronic case filing system of the United States District Court for the Eastern District of Pennsylvania upon the following counsel of record:

Virginia Hardwick, Esq.
Tiffanie C. Benfer, Esq.
Joyce L. Collier, Esq.
Hardwick Collier, LLC
179 North Broad St.
Doylestown, PA 18901
Attorneys for Plaintiff

10426601v.1

WHITE AND WILLIAMS LLP


By:   _/s/_____
      John K. Baker
      Attorney For Defendants

10426601v.1