IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JULIE DIAZ, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAUCON VALLEY MANOR, INC. | : | |
| and NIMITA KAPOORATIYEH, A/K/A | : | |
| NEMITA ATIYEH, A/K/A NEMO AIYAH, | : | No. 12-0433 |
| Defendants. | : | |

MEMORANDUM OPINION

**TIMOTHY R. RICE**  March 5, 2013
**U.S. MAGISTRATE JUDGE**

Plaintiff Julie Diaz alleges Defendants Saucon Valley Manor, Inc. ("Saucon") and Nimita Kapooratiyeh, a/k/a Nemita Atiyeh, a/k/a Nemo Aiyah ("Atiyeh") fired her because she suffers from an alcohol-related disability and requested a reasonable accommodation to attend an inpatient treatment program.[1] Saucon and Atiyeh (collectively, "Defendants") seek summary judgment on all counts, except Diaz' FMLA claim against Saucon. They argue that Diaz' claims under the ADA, PHRA, and Rehabilitation Act must be dismissed as a matter of law because Diaz has failed to present a prima facie case of discrimination, or show that Saucon's legitimate, non-discriminatory reasons for terminating her employment were a pretext. Defendants

---

[1] Diaz brings six counts against Saucon: (1) two counts for violating the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), one for discrimination (Count I), and one for failure to accommodate and retaliation (Count III); (2) two counts for violating the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), one for discrimination (Count II), and one for failure to accommodate and retaliation (Count IV); (3) one count for violating the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"), based on Saucon's denial of her right to a leave of absence (Count V); and (4) one count for violating § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), based on Saucon's failure to accommodate her disability (Count VI). Diaz brings one count against Atiyeh for violating the FMLA (Count V).

additionally argue that Diaz' FMLA claim against Atiyeh must be dismissed because Atiyeh cannot be subject to individual liability under the FMLA.

I deny Defendants' motion for partial summary judgment, but will enter judgment against Diaz on her retaliation claims unless she shows that judgment is not proper within twenty-one days of this decision.

## I.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

Where there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. See id. at 250. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." Id. at 250-51. I must view the facts and any inferences from those facts in the light most favorable to the non-moving party. See Ray v. Warren, 626 F.3d 170, 173 (3d Cir. 2010).

## II.    DISCUSSION

### A.    Diaz' ADA and PHRA Discrimination Claims (Counts I and II)

#### 1.    Prima Facie Case

To establish a prima facie case of discrimination under the ADA and PHRA, Diaz must show: (1) she is disabled under the meanings of the acts; (2) she is qualified to perform the essential functions of the pertinent job, with or without reasonable accommodations by the

employer; and (3) Saucon took an adverse employment action against her because of the discrimination. See 42 U.S.C. § 12112(a); 43 P.S. § 955(a); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (PHRA claims are analyzed in same manner as ADA claims). This is not an onerous burden. See Decker v. Alliant Techs., LLC, 871 F. Supp. 2d 413, 425 (E.D. Pa. 2012).

Defendants seem to contend that Diaz cannot satisfy the third element of her prima facie case of discrimination because there is no evidence showing that Saucon treated "similarly situated" employees differently. Defs.' Bf. (doc. 19), at 11. Such evidence, however, is not required. Matczak v. Frankford Candy & Choc. Co., 136 F.3d 933, 939 (3d Cir. 1997) ("evidence of favorable treatment outside the protected class is not an element of a prima facie case"). Diaz needs to show only "that adverse employment actions occurred under circumstances that give rise to an inference of unlawful discrimination." Young v. St. James Mgmt., LLC, 749 F. Supp. 2d 281, 291 (E.D. Pa. 2010); see also Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). This may be established by any evidence tending to show that Diaz' disability was a determinative factor in Saucon's decision to terminate her. See Decker, 871 F. Supp. 2d at 428; see also Watson v. Se. Penn. Transp. Auth., 207 F.3d 207, 214-15 (3d Cir. 2000).

Viewed in the light most favorable to Diaz, the evidence shows:

(1) Diaz' supervisors knew of her alcoholism, Diaz Dep. at 101-02, 139;

(2) Diaz was an "excellent" employee and received "excellent" scores on an evaluation six weeks before her discharge, Belcak Dep., at 93, Diaz Ex. G;

(3) Diaz requested June 22, 2010 off for a court hearing, Diaz Dep., at 151;

(4) Diaz also requested medical leave for inpatient treatment in June 2010, id. at 130; Belcak Dep., at 23-24;

(5) Diaz' supervisor told Diaz that her medical leave would not be a problem and she did not need to fill out any paperwork until she received the exact dates of her treatment, Diaz Dep., at 135-36;

(6) Diaz' supervisor stated that Atiyeh, Saucon's president, had approved the leave, and she only needed to fax her treatment dates to Saucon, id. at 157;

(7) after her June 22, 2010 court hearing, Diaz informed her supervisor that her inpatient treatment would begin the next day, id. at 147-48;

(8) Atiyeh terminated Diaz on or around June 22, 2010, after hearing a rumor that Diaz was not at work, had been arrested for public drunkenness outside of the job, and was entering rehabilitation for 28 days, Atiyeh Dep., at 29, Diaz Ex. M;

(9) Saucon did not terminate another non-disabled employee after that employee's arrest, Hirsch Dep., at 53-54; Diaz Ex. S; and

(10) Diaz' arrest was unimportant to her work because it did not happen at Saucon, Atiyeh Dep., at 47.

A jury could reasonably infer from this evidence that Saucon terminated Diaz because of her alcohol-related disability, thereby establishing a prima facie case of discrimination under the ADA and PHRA. See Decker, 871 F. Supp. 2d at 428 (prima facie case of discrimination established where jury could reasonably infer that plaintiff's alleged perceived disability was a determinative factor in employer's termination decision).

## 2. Evidence of Pretext

Defendants next argue that even if Diaz can establish a prima facie case of discrimination, her claims must be dismissed because they have articulated legitimate, non-discriminatory reasons for her discharge, and she has failed to show that those reasons are a pretext for discrimination.

Once an employee has established a prima facie case of discrimination, the burden shifts to the employer to present "legitimate non-discriminatory reasons" for its actions. <u>Decker</u>, 871 F. Supp. 2d at 429; <u>see also</u> <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 500 (3d Cir. 1997). This burden is "relatively light: it is satisfied if the defendant articulates any legitimate reason" for the adverse employment action. <u>Krouse</u>, 126 F.3d at 500-01 (citing <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997)). The employer also does not need to "prove the articulated reason actually motivated the [action]." <u>Id.</u>

If the employer meets this burden, the employee must show that the employer's proffered reason is solely a pretext for discrimination. See <u>Krouse</u>, 126 F.3d at 500-01; <u>Decker</u>, 871 F. Supp. 2d at 429. An employee "can show pretext, and so defeat a motion for summary judgment," by presenting direct or circumstantial evidence to discredit the employer's proffered reasons. <u>Decker</u>, 871 F. Supp. 2d at 429. "This can be accomplished by demonstrat[ing] such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' . . . and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.'" <u>Id.</u> (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)).

Defendants assert Saucon had legitimate, non-discriminatory reasons to terminate Diaz based on her: (1) arrest for public drunkenness, (2) failure to show up for work, and (3) flagrant

5

violation of Saucon's policies.  See Defs.' Bf., at 13-14.  They further contend there is "no evidence demonstrating these legitimate, non-discriminatory reasons were pretextual."  Id. at 14.

Diaz points to evidence that casts doubt on each of Defendants' articulated reasons.  Diaz initially contends her arrest for public drunkenness was not a legitimate reason for her discharge because Atiyeh testified her arrest was unimportant.[2]  See Diaz Bf. (doc. 21), at 30; Atiyeh Dep., at 47.  Diaz also disputes Defendants' claim that she was terminated for not showing up to work by pointing to evidence demonstrating that: (1) she lacked a history of being late or calling out of work; (2) she requested June 22, 2010 off to attend her court hearing; and (3) she had requested and received approval for medical leave to attend inpatient treatment in June 2010.  See Diaz Bf., at 31-33; see also Diaz Ex. T; Diaz Dep., at 130, 135-36, 147-48, 151, 157; Belcak Dep., at 23-24.  Defendants also fail to identify what Saucon policy Diaz "flagrantly violated."  Defs.' Bf., at 14.  However, to the extent Defendants are claiming Diaz violated Saucon's attendance policy, Diaz maintains she followed the policy by providing notice and obtaining approval for her June 2010 absences.  See Diaz Bf., at 32-33.

This evidence raises disputed issues of fact as to whether Diaz' termination was for the legitimate, non-discriminatory reasons alleged by Saucon.  See Smith v. Davis, 248 F.3d 249, 252 (3d Cir. 2001) (summary judgment improper where record did not show what policy employee allegedly violated); Decker, 871 F. Supp. 2d at 429-30 (denying summary judgment where evidence cast doubt on employer's reasons for termination).  Summary judgment, therefore, is denied on Diaz' ADA and PHRA discrimination claims.

---

[2] Diaz also asserts that she was cited for public drunkenness, not arrested.

B.  **Diaz' Failure to Accommodate Claims Under the ADA, PHRA, and Rehabilitation Act (Claims III, IV, and VI)**

Because Defendants do not present any argument specifically addressing Diaz' failure to accommodate claims,[3] summary judgment is denied on these claims. See Fed. R. Civ. P. 56(a) (court shall grant summary judgment only if movant shows no genuine issue of material fact and entitled to judgment as matter of law).

C.  **Diaz' ADA and PHRA Retaliation Claims (Claims III and IV)**

Defendants' argument concerning Diaz' retaliation claims appears to encompass two sentences. First, Defendants summarily argue that Diaz has failed "to establish that [Saucon] retaliated against her." Defs.' Bf., at 13-14. Second, Defendants claim that Diaz has "produced no evidence to show that her termination was causally related to her engaging in protected activity under the Rehabilitation Act." Id. at 13.

Defendants' argument addresses a retaliation claim under the Rehabilitation Act, but Diaz has not brought such a claim. See Am. Comp. (doc. 6), ¶¶ 79-82. Her retaliation claims are solely based on the ADA and PHRA. See id. ¶¶ 60-69. Therefore, to the extent Defendants are seeking summary judgment for a retaliation claim under the Rehabilitation Act, their request is denied.

---

[3] To establish a failure to accommodate claim under the ADA, PHRA, and Rehabilitation Act, Diaz must show: (1) she is disabled within the meanings of the acts; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) Saucon failed to make reasonable efforts to determine an appropriate reasonable accommodation. See 42 U.S.C. § 12112(b)(5)(A); Decker, 871 F. Supp. 2d at 430-31; Taylor, 184 F.3d at 306, 312 (applying ADA standards to failure to accommodate claims under PHRA and Rehabilitation Act).

I also cannot grant summary judgment now on Diaz' retaliation claims under the ADA and PHRA because Defendants have failed to present any reasons why these claims must be dismissed. See Fed. R. Civ. P. 56.

Nevertheless, Diaz' retaliation claims appear to be legally flawed. The ADA and PHRA contain nearly identical retaliation provisions that prohibit employers from discriminating against an individual if she: (1) "opposed any act or practice made unlawful by [the ADA]," or (2) has "made a charge . . . under [the ADA]" 42 U.S.C. § 12203(a); see also 42 P.S. § 955(d) (similar provisions with references to the PHRA). These provisions have been interpreted as requiring a plaintiff to show the following for a prima facie case of retaliation: "(1) statutorily protected expression; (2) adverse action; and (3) a causal connection between the protected expression and the adverse action." Stewart v. Happy Herman's Chesire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997); Krouse, 126 F.3d at 500.

Diaz' retaliation claim is based on her "request for an accommodation." Am. Comp., Counts III, IV. Such a request is not "statutorily protected expression" under the ADA and PHRA, which expressly protect only: (1) opposition to an unlawful practice under the ADA or PHRA, or (2) the filing of a charge under the ADA or PHRA. See 42 U.S.C. § 12203(a); 42 P.S. § 955(d); see also Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 188 (3d Cir. 2003) (ADA retaliation provision makes it "unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA"); Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 134-35 (3d Cir. 2006) (discussing retaliation under Title VII as protecting employees only when they participate in statutory review process or otherwise oppose illegal activities under Title VII).

8

Accordingly, I will enter judgment against Diaz on her retaliation claims unless she establishes that judgment should not be granted within twenty-one days of this decision. See Fed. R. Civ. P. 56(f) (court may grant summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond).

### D. Diaz' FMLA Claim Against Atiyeh (Count V)

Defendants finally argue that Diaz' FMLA claim against Atiyeh must be dismissed because Atiyeh lacked sufficient control over Diaz' employment and did not know that Diaz requested a leave of absence.

The FMLA entitles "employees to take reasonable leave for medical reasons," and makes it unlawful for "an employer" to "interfere with, restrain, or deny" an employee's right to take this leave. 29 U.S.C. §§2601(b)(2), 2615(a)(1). An employer, for purposes of the FMLA, may include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Id. § 2611(4)(A)(ii)(I).

Such a person also may be individually liable for violating the FMLA if she "exercises 'supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation' while acting in the employer's interest." Hayberger v. Lawrence Co. Adult Prob. & Parole, 667 F.3d 408, 417 (3d Cir. 2012) (citing Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987)). In determining whether a person with supervisory authority was acting on behalf of the employer, I must examine the totality of the circumstances, including whether the person: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedule or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. See id. at 418 (citing Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999)).

9

Defendants recognize that Atiyeh, as Saucon's president, had the power to hire and fire Saucon's employees and that she fired Diaz. Defs.' Bf., at 7. Defendants nevertheless contend Atiyeh cannot be individually liable for Diaz' termination under the FMLA because she did not supervise Diaz. Undisputed testimony, however, establishes that Atiyeh was involved in supervising all Saucon's employees, including Diaz.

Atiyeh acknowledged that she was "very hands-on" at Saucon and "always responsible for [her] employees." Atiyeh Dep., at 8. Consistent with this testimony, Atiyeh stated she is on call at all times and is aware when accommodations are made for employees. Id. at 12. Diaz further testified that her supervisor told her that Atiyeh had approved her request for a leave of absence. Diaz Dep., at 157. Based on this evidence and Atiyeh's firing of Diaz, a jury could reasonably conclude that Atiyeh had supervisory authority over Diaz and was responsible for Diaz' firing. This evidence also creates an issue of material fact as to whether Atiyeh knew about Diaz' request for a leave of absence.

Summary judgment is denied on Diaz' FMLA claim against Atiyeh.

An appropriate order follows.