## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE DIAZ** | : | No. 12-cv-00433 |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| **SAUCON VALLEY MANOR, INC.** | : | |
| | : | **HON. TIMOTHY R. RICE** |
| and | : | |
| | : | |
| **NIMITA KAPOOR ATIYEH** | : | |
| | : | |
| Defendants. | : | |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S PETITION FOR
## ATTORNEYS' FEES AND COSTS

---

**Hardwick Collier, LLC**
Attorneys for Plaintiff
179 North Broad Street
Doylestown, PA 18901
(215) 230-1912

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ............................................................................. 1

II. LEGAL ARGUMENT ...................................................................................... 3

    A. As the Prevailing Plaintiff under the FMLA, the ADA, the PHRA
    and the Rehabilitation Act, Ms. Diaz is Entitled to Recover the Full Amount of
    Reasonable Attorney's Fees and Costs ......................................................... 3

    B. The Fees Sought by Plaintiff are Reasonable:  Calculation of the Loadstar ................... 4

        1. Hours Expended Were Reasonable ....................................................... 4

            a. Discovery Challenges and Belated Document Production ............................. 4

            b. Summary Judgment Motion ......................................................... 6

            c. Cross Examination and Trial Preparation ......................................... 8

            d. Preparation of Plaintiff for Trial .................................................. 9

            e. Focus Group and Mock Trial Preparation ......................................... 9

        2. The Hourly Rates Sought by Counsel are Reasonable ................................... 10

    C. There Should Be No Reduction in the Loadstar ............................................ 14

        1. Plaintiff Prevailed on All Claims ..................................................... 14

        2. Plaintiff Achieved an Excellent Result ............................................... 15

        3. A Fee Award in Excess of the Verdict is Appropriate ................................. 17

    D. Total Attorneys' Fees and Costs Sought ................................................... 20

III. CONCLUSION ......................................................................................... 20

## I.     PRELIMINARY STATEMENT

Plaintiff Julie Diaz is the prevailing party in this case.  She prevailed on her claim of interference under the FMLA, and this Court found that she was entitled to liquidated damages because Saucon Valley and Ms. Kapoor Atiyeh could not show that they acted in good faith.  Ms. Diaz prevailed on her claim of discrimination under the Americans with Disabilities Act (ADA), the Pennsylvania Human Relations Act (PHRA) and the Rehabilitation Act.  She also prevailed on her claim that defendants failed to provide a reasonable accommodation as required by the ADA and related statutes.  (For simplicity, all of these claims will be referred to as the plaintiff's "ADA claims.")  The jury awarded compensatory damages of $25,000 and punitive damages of $75,000.  Although the jury did not find for plaintiff on the alternative theory of FMLA retaliation and the Court did not find for Ms. Diaz on the additional claim of ADA retaliation, a judgment for Ms. Diaz on these alternate theories would not have increased her damages.

Throughout the protracted litigation process, defendants took the position that Ms. Diaz was fired for legitimate reasons.  They argued that she was a no call/no show on July 22, 2010.  They argued that she was fired for an incident of public drunkenness.  They argued that her performance was negatively impacted by her alcoholism.  They even insinuated, without evidence, that she abused the elderly.  The key factual question to be resolved at trial was:  Why was Ms. Diaz fired?  Virtually all of the evidence that was required to disprove defendants' position was in the defendants' possession.  Saucon Valley took every possible step to make it more difficult for Ms. Diaz to prove her case.  Key documents were not produced until demanded and demanded again, and then they

1

were not provided until the eve of trial. Defendants provided incorrect and misleading answers to interrogatories. Ms. Kapoor Atiyeh was less than candid about her motives; she and the other Saucon Valley witnesses made crucial admissions at deposition and at trial only when faced with documentary evidence, and even then they often tried to explain away the written evidence.

After a one-week trial, the jury rendered a verdict in the plaintiff's favor.

Ms. Diaz is entitled to an award of reasonable attorneys' fees under the FMLA, the ADA, the PHRA and the Rehabilitation Act.

The defendants took a hard line approach to this litigation from the beginning. At the inception of the litigation, counsel for defendants stated in the press that defendants "looked forward to vigorously defending the case in court." Hardwick Verification at ¶ 33. True to their word in this regard, Ms. Kapoor Atiyeh and Saucon Valley vigorously fought this litigation every step of the way. Although there were countless interactions between counsel over more than two years, until two weeks before trial, defendants never made an offer that was more than nuisance value. Defendants adopted a "take no prisoners" approach to the litigation, which left Ms. Diaz and her counsel with no choice but to litigate persistently to demonstrate that the stated reasons for Ms. Diaz's termination were pretextual.

This brief will not repeat in detail the many actions of Saucon Valley and Ms. Kapoor Atieyeh that prolonged the litigation and drove up fees and costs; those are set forth in some detail in the Hardwick Verification. The fees incurred were reasonable and necessary to secure the substantial award to Ms. Diaz of more than $120,000.

As set forth in detail in the attached Verification of Virginia Hardwick and time records, Ms. Diaz seeks a total attorneys' fee of $443,701.50 (Hardwick Collier time and Hill Wallack time) and costs of $16,490.13; for a total award of $460,191.63. (Hardwick Verification at ¶ 2 and Exhibits A and B) This amount reflects cuts of $67,729.50 in the initial bills. (Hardwick Verification ¶¶ 4 and 17, and Exhibits A, B and C).

## II.    LEGAL ARGUMENT

### A.    As the Prevailing Plaintiff under the FMLA, the ADA, the PHRA and the Rehabilitation Act, Ms. Diaz is Entitled to Recover the Full Amount of Reasonable Attorneys' Fees and Costs.

Each of the statutes on which Ms. Diaz's claims were based provides for an award of reasonable attorneys' fees. The FMLA makes an award of fees mandatory, using the word "shall." 29 U.S.C. § 2617(a)(3)(Under the FMLA, the court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."); *see also, e.g., McDonnell v. Miller Oil Co., Inc.*, 968 F. Supp. 288 (E.D. Va. 1997) (awarding fees and costs of over $20,000 for a nominal award of $2.10). Ms. Diaz is also entitled to an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 43 Pa. Stat. § 962(c.2).

There is no question that Ms. Diaz is a prevailing plaintiff. Under the FMLA, she was awarded the full amount of her lost wages, and she was awarded liquidated damages. On the ADA claims, Ms. Diaz won a substantial award. In addition to the agreed-upon lost wages, the jury awarded Ms. Diaz $25,000 in compensatory damages and $75,000 in punitives. The result was excellent for plaintiff in every respect.

3

**B.     The Fees Sought by Plaintiff are Reasonable: Calculation of the Loadstar**

"The first step to determine the reasonableness of an attorney's fee request is to calculate the 'loadstar' – the 'number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.'" *Perkins v. Shinseki*, Civil Action No. 08-1244, 2013 WL 497158 at *5 (E.D. Pa. 2013), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   The loadstar is a presumptively reasonable fee. *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 168-69 (2d Cir. 2011).

**1.     Hours Expended were Reasonable**

The district court has substantial discretion in determining what constitutes reasonable hours. *Id.; Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).   To a large extent, the Court can assess the reasonableness of the hours expended to achieve the result in this trial.  The efforts are set forth in greater length in the Hardwick Verification and are amply documented in the attached time records.  This discussion will focus on those extra challenges that may not have been evident to the Court during the course of the trial.

**a.     Discovery Challenges and Belated Document Production.**

Defendants' repeated failure to make complete and timely production of documents added hugely to the expenses in this litigation.  The course of events is set out in the Hardwick Verification at ¶¶ 41 - 61, and will not be repeated at length here. Plaintiff should be compensated for the hours spent by plaintiff's counsel to obtain the evidence from defendants that should have been provided in response to the initial request for production of documents.

4

Defendants' repeated failures to meet their discovery obligations until the eve of trial when new counsel entered was consistent with their threat at the outset of the litigation to vigorously defend against Ms. Diaz's claims.   This vigorous defense may be understood as an attempt by Saucon Valley and Ms. Kapoor Atiyeh to make the litigation as expensive and difficult as possible – a tactic designed not only to win this litigation, but to also intimidate defendants' other current and former employees and dissuade them from bringing claims. (Pollins Verification at ¶ 16)

When the actions of an employer contribute to the costs of bringing a successful ADA or FMLA claim, the court should make every effort to ensure that the successful plaintiff is fully compensated for fighting these unnecessarily expensive battles. Defendants should not be permitted to take actions that caused Ms. Diaz to incur additional legal costs, and then complain that the fees are too high.

The last minute document production caused plaintiff's counsel to expend time that would not have been necessary if discovery had been provided on a timely basis. The last minute document production required plaintiff's counsel to review hundreds of pages of documents just before trial, and to re-write examinations of witnesses that had already been completed.  As just one example, plaintiff's motion in limine to exclude the 2005 handbook would not have been needed if the relevant 2009 handbook had been produced in a timely way.[1] When the 2009 handbook was produced shortly before trial, counsel was required to re-work a substantial portion of the cross examination of Ms. Kapoor Atiyeh to account for the change.  As another example, the work schedules and

---

[1] The fact that this particular motions in limine was not granted does not mean that it was unreasonable or excessive for plaintiff to make the motion to attempt to prevent the use of the outdated handbook. Motions in limine are important to limit the issues, especially in complex and contentious litigation. They are compensable even when the plaintiff has only limited success. *EEOC v. Federal Express Corp.*, 537 F. Supp.2d 700, 724 (M.D. Pa. 2005).

time cards that were produced at the last minute resulted in numerous changes to the examination of Ms. Fox on the question of whether Ms. Diaz was a no call/no show on July 22.

The attorney time during discovery was used efficiently. During the initial discovery phase, Ms. Benfer did most of the work on this matter. She bills at a relatively lower hourly rate. The time billed for communication among counsel was modest throughout 2012. Ms. Hardwick became involved in the litigation after the defendants filed a motion for summary judgment.

### b.   Summary Judgment Motion

Defendants made the decision to file a meritless motion for summary judgment, requiring counsel to expend substantial effort (146.7 attorney hours) combing the record and drafting a response. Hardwick Verification at ¶¶ 62-68. In the exercise of discretion, plaintiff is not seeking fees for 18.5 hours of Ms. Hardwick's and 5 hours of Ms. Benfer's time in preparing the response to the summary judgment motion. Hardwick Verification at ¶ 69. Thus, plaintiff seeks compensation for 123.2 attorney hours relating to the summary judgment brief.

In *EEOC v. Federal Express Corp.*, 537 F. Supp. 2d 700 (M.D. Pa. 2005), the court awarded fees including approximately 130 hours responding to motions for summary judgment. The court dismissed the defendants' argument that counsel should not have spent so much time responding to the summary judgment motions:

> More fundamentally, the Court notes that it was the Defendant who elected to file two [similar] motions for summary judgment, to which Intervenor was required to respond. It is somewhat disingenuous to litigate aggressively and then complain that the opposing party fought vigorously to defeat motions adverse to its interests. In this case the stakes were high, the issues moderately

> complex, and the litigation contentious. The Court finds that
> counsel rendered necessary and valuable services in responding to
> and defeating Defendant's efforts to dispose of this litigation before
> trial.

*Id.* at 725.

Plaintiff's successful fending off of the summary judgment motion was not a

foregone conclusion. Numerous cases involving alcoholism have been dismissed at the

summary judgment level. *See, e.g., Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 671

(7th Cir. 2011) (upholding district court's decision to grant summary judgment for

employer where plaintiff failed to establish that her alcoholism was an ADA disability

and that her employer violated the FMLA); *Budde v. Kane County Forest Preserve,* 597

F.3d 860, 863 (7th Cir. 2010) (rejecting plaintiff's ADA claim alleging discrimination

based on his alcoholism and drunk driving incident, in part, because the plaintiff's

"inability to operate a vehicle is not the result of his disability; it is a consequence of

choosing to drive his car after consuming four or five glasses of wine."); *Sullivan v.*

*Neiman Marcus Group, Inc.,* 358 F.3d 110, 116-17 (1st Cir. 2004) (finding that

alcoholism did not substantially interfere with work where plaintiff was able to hold jobs

prior to and after treatment); *Larkin v. Methacton School Dist.,* 773 F. Supp. 2d 508, 527-

29, 539 (E.D. Pa. 2011) (granting school district's motion for summary judgment on

ADA claims after concluding that physical education and health teacher failed to

establish that her alcoholism limited a major life activity or that she was retaliated against

for requesting a reasonable accommodation in the form of a transfer to elementary school

teaching); *Knepp v. Overhead Door Corp.*, No. Civ. A. 1:03-CV-1993, 2005 WL

2030469 at *9 (M.D. Pa. Aug. 16, 2005) (granting defendant's motion for summary

judgment on FMLA and ADA claims where plaintiff, a field service technician who was

7

demoted to warehouse two months after inpatient treatment for alcoholism was unable to establish that he was a qualified individual with a disability or that he was retaliated against for taking FMLA leave); *Werner v. PGW*, No. CIV. A. 96-5130, 1997 WL 610498 at *4 (E.D. Pa. Sept. 30, 1997) (granting defendant's motion for summary judgment; plaintiff was unable to establish that how her alleged alcoholism limited any major life activity).

Plaintiff was successful in defeating every aspect of defendants' motion for summary judgment and should be awarded fees for the work that was required to achieve that result.

### c.     Cross Examination and Trial Preparation

An essential element of plaintiff's proofs at trial was to show the intent of Ms. Kapoor Atiyeh when she made the decision to terminate Ms. Diaz's employment. Ms. Kapoor Atiyeh was an intelligent and difficult witness. She had no motivation to be forthcoming in her testimony. Plaintiff's counsel had to prove much of plaintiff's case through the testimony of Ms. Kapoor Atiyeh and through the other employees of Saucon Valley.

Thus, counsel spent substantial time preparing for the depositions of these witnesses (which was necessary to obtain testimony needed for cross examination) and preparing for their cross examinations at trial. The cross examinations would not have been so effective without meticulous (and time consuming) preparation. Hardwick Verification at ¶¶ 111 – 115.

Courts have recognized that substantial attorney time in preparing for difficult cross examinations is justifiable. For example, in *Witkowski v. Int'l Brotherhood of*

8

*Boilermakers*, Civil Action No. 06-874, 2010 WL 1433104 (W.D. Pa. Apr. 7, 2010), the court considered a challenge to a fee petition in which the attorney spent 34.8 hours preparing for one witness's cross examination, and 19.7 hours preparing for the cross examination of another witness. *Id.* at *9. The court found this time to be reasonable. Because the defendant denied a key fact in the retaliation case, the attorney was forced to spend time reviewing over one hundred pages of exhibits and deciding which exhibits and portions of deposition testimony to use to impeach the witness's testimony. *Id.*

### d.      Preparation of Plaintiff for Trial

The Hardwick Verification sets forth the particular challenges in preparing Ms. Diaz psychologically for the ordeal of trial. As Ms. Matos states in her Verification, plaintiffs in employment discrimination cases "are often emotionally fragile, and require substantially more support than clients in other litigation areas." Matos Verification at ¶ 11. That was certainly the case here, and plaintiff's counsel spent a great deal of time preparing Ms. Diaz for trial. Hardwick Verification at ¶¶ 100 - 108. Because of the particular psychological complexity of this client and this case, counsel for plaintiff retained the services of a jury consultant who specializes in preparing clients who have difficult emotional histories for the ordeal of trial testimony.

### e.      Focus Group and Mock Trial Preparation

As set forth in the Hardwick Verification, counsel for plaintiff had good reason to be concerned that obtaining a jury trial for a plaintiff with the disease of alcoholism would pose particular challenges. Hardwick Verification at ¶¶ 82 - 86. In numerous conversations with colleagues in the employment law bar, and in legal researc, plaintiff's counsel was unable to find a single example of a plaintiff with an active addiction who

9

had prevailed on an ADA claim. *See cases cited in section b above. See also Renaud v. Wyoming Dept. of Family Servs.*, 203 F.3d 723 (10th Cir. 2000) (affirming jury verdict in defendants' favor on ADA and FMLA claims after plaintiff, the superintendent of state juvenile facility, was terminated while he was on leave for inpatient rehabilitation).

For this reason, plaintiff's counsel conducted two jury focus groups to obtain feedback on how a jury might respond to the particularly difficult aspects of plaintiff's case. The exercise and practice inherent in presenting the case to the focus group also helped to hone the plaintiff's presentation and to ensure that the plaintiff's case was effectively presented at trial.

Attorneys' fees incurred in the conduct of a mock trial before a mock jury are properly compensable. In *Rozell v. Ross-Holst, et al.*, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008), the court recognized the value of this technique, and awarded attorneys' fees:

> It is entirely proper, however, to bill a client for a mock trial exercise devoted to the case at hand. Just as preparation for oral argument frequently involves a moot court, so may preparation for an evidentiary presentation appropriately include a mock trial. Indeed this technique has the added benefit of previewing a case for a mock jury, and the jury's reaction may influence a party's willingness to settle. Consequently, no reduction shall be made for time spent on the mock trial.

*Id.* (citations omitted). It makes sense that since a trial is conducted orally, the court should allow fees for the practice and preparation of the oral presentation to the jury.

## 2.     The Hourly Rates Sought by Counsel are Reasonable

The hourly rates charged by plaintiff's counsel are reasonable and customary within the market of the greater Philadelphia area. (Although counsel's office is in Bucks County, because most employment litigation is conducted in federal court, the relevant

market extends geographically beyond Bucks County.)  The reasonableness of the

contingency hourly rates of $400/hour for Virginia Hardwick and $300 per hour for

Tiffanie Benfer are attested to in the attached Verifications of Virginia Hardwick,

Carmen Matos and Scott Pollins.  (Matos Verification at ¶¶ 9 and 15; Pollins Verification

at ¶¶ 12 and 19)

Ms. Hardwick has been practicing law (or engaged in related pursuits, including

law school teaching) since her graduation from law school in 1984 (29 years) (Hardwick

Verification at  ¶¶ 140 – 154); Ms. Benfer has been practicing law since her graduation in

2003 (10 years)(Hardwick Verification at ¶¶ 157 – 164).  Both are experienced attorneys.

Numerous courts evaluating attorneys' fees claims in the Philadelphia market

have found rates similar to those requested by Claimant's counsel to be reasonable.

In *Davis v. Eastman Kodak Co.*, 758 F. Supp. 2d 190 (W.D.N.Y. 2010), the court

made an extensive analysis of prevailing rates in the Philadelphia market, since lead

counsel was from Philadelphia.  The court determined the following rates to be

reasonable:

Attorneys with more than 20 years experience: $450/hour;

Attorneys with 11 – 20 years experience, $350/hour;

Attorneys with 6 – 10 years experience, $300/hour;

Attorneys with 0 – 5 years experience, $250/hour;

Paralegals, $130/hour.

*Id.* at 201-02.  These suggested rates are greater than those sought by plaintiff here.  (Ms.

Hardwick, with 28 years' experience at $400 per hour; Ms. Benfer, with 10 years'

experience at $300/hour; paralegals at $95/hour.)

Other cases evaluating reasonable contingent hourly rates for plaintiffs' counsel in
Pennsylvania include: *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216-17
(E.D. Pa. 2011) (approving rates of $485/hour to $700/hour for experienced attorneys and
rates between $125/hour and $175/hour for paralegals); *Reilbstein v. Rite Aid Corp.*, 761
F. Supp.2d 241, 260 (E.D. Pa. 2011) (approving rate of $650/hour for experienced
counsel and rates between $125 and $225 for paralegals and law clerks); *Choike v.
Slippery Rock Univ.*, Civil Action No. 6-622, 2010 WL 4614610 at * 3-4 (W.D. Pa. Nov.
5, 2010) (approving rate of $475/hour for highly experienced attorney and $325/hour for
attorney who is 8 years out of law school); *Serrano v. Sterling Testing Systems, Inc.*, 711
F. Supp. 2d 402, 422 (E.D. Pa. May 7, 2010) (approving rates for counsel ranging from
$290 to $650/hour, and for paralegals and law clerks between $125 and $225/hour);
*Mitchell v. City of Philadelphia*, Civil Action No. 99-6306, 2010 WL 1370863 at *14-15
(E.D. Pa. Apr. 5, 2010) (approving rate of $400/hour for attorney with ten years'
experience at the time the suit was filed); *Broadcast Music Inc v. Shane's Flight Deck,
Ltd.*, Civil Action No. 1:09-CV-2151, 2010 WL 4916208 at *1 n.3 (M.D. Pa. Nov. 24,
2010) (approving rate of $450 for experienced counsel); *McGuffey v. Brinks*, 598 F.
Supp. 2d 659, 669-70 (E.D. Pa. 2009) (approving rate of $400/hour for experienced
counsel); *Enright v. Springfield School Dist.*, Civil Action No. 04-cv-1653, 2008 WL
696845 at *4-5 (E.D. Pa. Mar. 13, 2008) (approving rate of $400/hour for experienced
counsel and $275/hour for less experienced counsel).

Counsel's requested rates also compare favorably with the National Law Journal's
Survey of partner's billing rates in Philadelphia, which was cited by the court in *Mitchell
v. City of Philadelphia.*

> [T]he NLJ Survey reports that Blank Rome has a "Partner Billing
> Rate Low" of $425, and a "Partner Billing Rate High" of $785, with
> an average hourly rate of $525.  Cozen O'Connor reports a range of
> $240 to $640, with an average of $457.  Duane Morris reports a
> range of $340 to $755, with an average of $490.  Fox Rothschild
> reports a range of $360 to $585, with an average of $440.  Finally,
> Pepper Hamilton reports a range of $385 to $795, with no average
> reported.

*Mitchell,* 2010 WL 1370863 at *14 n.12.  It should be recognized that the NLJ survey of

hourly rates captures hourly rates that are paid immediately on a non-contingent basis.

The appropriate hourly rate when a case is taken on contingency is higher.  The attorney

who takes a case on contingency runs the risk of never being paid, and even in the best

case situation must wait months or years for payment.  Pollins Verification at ¶¶ 13 -16.

Pennsylvania courts have recognized that contingency rates in the private market are

higher than usual hourly rates.  "The premium added for contingency compensates for the

risk of nonpayment if the suit does not succeed and for the delay in payment until the end

of litigation-factors not faced by a lawyer paid promptly as litigation progresses. . . . the

market based fee or hourly rate that is contingent on success is necessarily higher than the

hourly rate charged when payment is current and certain." *Braun v. Wal-Mart Stores,*

*Inc.,* 24 A.3d 875, 975 (Pa. Super. 2011) (quoting *Pennsylvania v. Del. Valley Citizens'*

*Council for Clean Air,* 483 U.S. 711, 735 (1987) (Blackmun, J., dissenting).

    The requested hourly rate of $400 per hour for Virginia Hardwick's time reflects

a modest enhancement of her normal hourly rate of $350 for clients who pay by the hour

without delay and without regard to the outcome of the litigation.

13

C. **There Should Be No Reduction in the Loadstar**

1. **Plaintiff Prevailed on All Claims**

Ms. Diaz prevailed on both her FMLA claim and her claims for discrimination and failure to accommodate under the ADA. The fact that the jury did not find for plaintiff on the retaliation theory under the ADA, and the Court mirrored that decision on the retaliation theory of the ADA, does not diminish the fact that she was successful on every statute under which she brought a claim. Her damages would have been no greater if the jury had also found retaliation.

Counsel's tasks at trial and in the months before would have been the same whether or not plaintiff pursued the claims for retaliation.[2] As this Court recognized in addressing a similar issue, "the disability and retaliation claims are not distinctly different claims based on different facts and theories. Both theories involved the same core factual allegations and were based on closely related legal theories." *Eshelman v. Agere Systems, Inc.*, No. Civ. A. 03-CV-1814, 2005 WL 3088363 at * 3 (E.D. Pa. 2005). "A jury's decision to render a split verdict on the related ADA theories does not merit a reduction in the fee award when [plaintiff's] ADA claim featured a common core of facts." *Id.* In this case, similarly, the Court should not view the retaliation theory as a separate unsuccessful claim.

Even if this Court were to view the retaliation claims as separate unsuccessful claims, numerous courts have found that legal work done for a successful claim is compensable, even when the plaintiff was unsuccessful on other related claims. Thus, in *McGuffey v. Brinks, Inc.*, 598 F. Supp.2d 659 (E.D. Pa. 2009), the court considered a

---

[2] Plaintiff does not seek legal fees for legal research or brief writing that is specifically related to the claim for retaliation.

claim for attorneys' fees under the Age Discrimination in Employment Act ("ADEA"). In *McGuffey*, the plaintiff prevailed on a retaliation claim, but not on five related claims of discrimination and under the WPCL. *Id.* at 666. Where "claims for relief . . . involve a common core of facts" or are "based on related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), quoted by *McGuffey*, 598 F. Supp. 2d at 671.

When a prevailing party has not succeeded on every claim, the court should first consider how interrelated the claims were. In *McGuffey*, the court recognized that the great majority of the plaintiff's counsel's time was spent discrediting the employer's single explanation for first firing the plaintiff and then refusing to rehire him. Thus, the work done by counsel on the claims that were not successful contributed to the plaintiff's ultimate success on the successful claim. *McGuffey,* 598 F. Supp. 2d at 673-74.

In this case, similarly, the work done by plaintiff's counsel to disprove defendants' explanation for the firing of Ms. Diaz was essential to all of her claims. It is impossible to divide the factual investigation and discovery work between the two claims and attorneys' fees should be awarded for the work in full.

## 2. **Plaintiff Achieved an Excellent Result**

Plaintiff received an excellent result on any measure. She received a judgment that will fully compensate her for lost wages, she received $25,000 in emotional distress damages, and she received liquidated damages under the FMLA, doubling her lost wages and her prejudgment interest. Most strikingly, the judgment provides for $75,000 in punitive damages, a rare result in an employment discrimination case.

The Court may also consider the settlement posture of the parties in determining the relative measure of success. *Perkins v. Shinseki*, 2013 WL 497158 at *10; *see also Mitchell v. City of Philadelphia*, 2010 WL 1370863 at *9 – 10. The fact that the verdict was higher than any settlement offer should be considered by the Court. In fact, at the Rule 16 conference, on May 10, 2012, plaintiff made a settlement demand (inclusive of attorneys' fees) of $50,000. Defendant countered with an offer of $8,000. (Hardwick Verification at ¶ 34) For the next fourteen months, defendant never made another offer despite numerous overtures from plaintiff's counsel. (Hardwick Verification at ¶ 36) Finally, two weeks before trial, defendants offered $100,000, inclusive of fees. The verdict for Ms Diaz alone was greater than any offer to settle made by defendants. Because the defendants' offers did not provide for attorneys' fees, they were not in the ballpark.

It is evident that the defendants' strategy in vigorously fighting every aspect of the litigation, combined with their virtually "no settlement" posture left Ms. Diaz and her attorneys with no choice but to proceed with the litigation, despite the substantial costs.

In addition, it is notable that defendants took the position from the beginning, and throughout the litigation, that Ms. Diaz was fired for misconduct. In addition to the monetary award, Ms. Diaz benefits intangibly from the name-clearing verdict of the jury that this was not the real reason for her termination.

Another measure of success is the "private attorney general" effect of plaintiff's claim. This litigation and this jury verdict sent a strong message to defendants that they must follow the law. The hundreds of employees of Saucon Valley and Whitehall Manor

will benefit from changes in those organizations to ensure that the human resources departments understand and follow the law.

### 3. A Fee Award in Excess of the Verdict is Appropriate

It would be an error to reduce plaintiff's fees because the fees requested are greater than the judgment for the plaintiff. For one thing, Ms. Diaz's total award would have been much higher if she Ms. Diaz had been a more highly compensated employee, or if she had been less diligent in mitigating her economic damages. If Ms. Diaz were an executive who had lost hundreds of thousands of dollars in wages, her case would have been no more complex to prove. A scheme in which the attorneys' fee award for a low wage earner is slashed would have the result of making it more difficult for average working people to secure legal representation. This would be counter to the purposes of the fee shifting provisions in the ADA and the FMLA. In fact, fee shifting provisions are particularly important to protect the rights of lower wage earners, who will otherwise be particularly unable to secure legal assistance. If fees are not fairly awarded to counsel who successfully represent lower wage earners, fewer attorneys will find it possible to undertake this representation, and these employees will find themselves unable to seek protection of the discrimination laws and unable to seek protection under the FMLA.

The Second Circuit provided a cogent explanation for providing fees that are great in proportion to the monetary award in *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 169 (2d Cir. 2011). The court in *Millea* held that the district court abused its discretion by calculating attorneys' fees in an FMLA case as a proportion of the monetary recovery.

17

The Second Circuit in *Millea* held that the loadstar calculation creates a "presumptively reasonable" fee. *Id.* at 166. In *Millea*, the award to the plaintiff was only $612.50, but the court held that this was not "de minimis." *Id.* at 168. "It was not a derisory or contemptuous rejection by the jury." *Id.* "FMLA claims are often small-ticket items, and small damages awards should be expected without raising the inference that the victory was technical or de minimis. If an expense of time is required to obtain an award that is not available by voluntary compliance or offer of settlement, the expense advances the purposes of the statute. Absent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance." *Id.*

The court in *Millea* explained why it is error to limit attorneys' fees to a proportion of the damages awarded:

> [C]alculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. **The whole purpose of fee-shifting statutes is to generate attorney's fees that are disproportionate to the plaintiff's recovery.** Thus, the district court abused its discretion when it ignored the loadstar and calculated the attorney's fees as a proportion of the damages awarded.

*Id.* at 169 (emphasis added).

Similarly, in *McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659 (E.D. Pa. 2009), the district court approved an award of attorneys' fees and costs totaling over $417,000 in a matter which generated an award to the plaintiff of $170,000. The court noted that although the plaintiff did not prevail on every claim, the ultimate award was an excellent outcome for the plaintiff. *Id.* at 674. "[W]here a plaintiff has obtained excellent results,

his attorney should recover a fully compensatory fee." *Id.,* quoting *Hensley,* 461 U.S. at 435.

While the plaintiff's award in *McGuffey* was substantial, it was far less than the plaintiff had initially sought. The plaintiff sought between $1.7 million and $2.7 million in front and back pay, but was ultimately awarded just $170,000. *McGuffey v. Brinks, Inc.,* verdict sheet, No. 2:07-cv-02299-AB, 2008 WL 4073370 (E.D. Pa. June 17, 2008). Nevertheless, plaintiff's counsel was appropriately awarded nearly all of the attorneys' fees sought. In contrast, in this case, Ms. Diaz had not initially sought an amount that was far in excess of what she was awarded.

Most recently, in *Perkins v. Shinseki,* 2013 WL 497158 at *11, the court awarded attorneys' fees of $244,565 and costs of $22,492 in a case in which the judgment for damages to plaintiff was only $16,853. The court reduced the requested fee of over $500,000 because the plaintiff received far less than had been offered in settlement, and because the plaintiff lost the majority of his claims. The court recognized that awarding a fair fee to the plaintiff's counsel was important to give "some incentive for competent counsel to undertake these types of cases." *Id.*

> If a court is too parsimonious in awarding fees, even if a plaintiff prevails on only one of several claims, the court has "cheapened" legal representation. When an individual with colorable claims, which the Court believes is an accurate characterization of Plaintiff's claims, desires to sue as allowed by Congress, being fair to the plaintiff regarding his counsel fees is an essential part of enforcement of our civil rights laws, including the laws against employment discrimination.

*Id.* (emphasis added).

Plaintiff's requested loadstar fees should therefore be granted in full.

### D.   Total Attorneys' Fees and Costs Sought

Plaintiff has made substantial cuts in the fees sought. The submitted fees are reasonable and should be awarded in full. In addition, the out-of-pocket costs that have bee incurred by Claimant for the litigation should be awarded. Claimant therefore seeks an award of:

| | |
|---|---|
| $ 440,491.00 | For attorneys' fees to Hardwick Collier LLC. |
| $   3,210.50 | For attorneys' fees to Hill Wallack LLC |
| $  16,490.13 | For unreimbursed costs of litigation to Hardwick Collier LLC |
| $ 460,191.63 | TOTAL |

### III.   CONCLUSION

For the foregoing reasons plaintiff respectfully requests an award of $ 460,191.63 for total fees and costs.

Plaintiff has endeavored to anticipate the objections of defendants in this petition for attorneys' fees and costs. However, plaintiff respectfully requests the opportunity to respond to any objections raised by defendants and to amend the fee petition to include fees for that response.

Respectfully submitted,

**HARDWICK COLLIER, LLC**
Attorneys for Plaintiff, Julie Diaz

By: */s/ Virginia L. Hardwick, Esq.*
Virginia L. Hardwick, Esq.

Dated:  September 11, 2013

**HARDWICK COLLIER, LLC**
**BY:   VIRGINIA HARDWICK, ESQ.  (Attorney I.D. No. 202649)**
     **TIFFANIE C. BENFER, ESQ. (Attorney I.D. No. 202096)**
179 North Broad Street
Doylestown, PA. 18901                    Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE DIAZ** | : | No. 12-cv-00433 |
| 49 E. Saucon Street, | : | |
| Hellertown, PA 18055 | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Jury Trial Demanded |
| **SAUCON VALLEY MANOR, INC.** | : | |
| 1177 6th Street | : | |
| Whitehall, PA 18052 | : | |
| | : | |
|     and | : | |
| | : | |
| **NIMITA KAPOORATIYEH** | : | |
| **A/K/A NEMITA ATIYEH** | : | |
| **A/K/A NEMO AIYAH** | : | |
| 1177 6th Street | : | |
| Whitehall, PA 18052 | : | |
| | : | |
|     Defendants. | : | |

### VERIFICATION OF VIRGINIA L. HARDWICK IN SUPPORT OF
### PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

     I, Virginia L. Hardwick, hereby verify that the following facts are true and correct

and based on my personal knowledge and belief:

     1.    I am an attorney licensed to practice law in the Commonwealth of

Pennsylvania  (2006) and the States of New Jersey (1985) and New York (1985).

2.      I submit this Verification in support of the application of Plaintiff, Julie Diaz, for attorneys' fees and costs. The total sought is $460,191.63, which includes fees of $440,491.00 billed by Hardwick Collier; $3,210.50 billed by Hill Wallack; and costs of $16,490.13.

**The Fee Agreement and Time Records Briefly Explained**

3.      Julie Diaz first consulted Tiffanie Benfer in the fall of 2010. At that time, Ms. Benfer was an associate in the law firm Hill Wallack. Ms. Benfer conducted an initial investigation and filed an EEOC charge on Ms. Diaz's behalf while Ms. Benfer was employed by Hill Wallack. The time sheets showing Ms. Benfer's work from the fall of 2010 through July 2011 are attached hereto as Exhibit A.

4.      The Hill Wallack time sheets show $6,143.00 in professional time and $143.89 in costs. The professional time entries on the Hill Wallack time sheet that have been marked with a star have been "no charged", reducing the fee sought for Hill Wallack's work to $3,210.50.

5.      Hardwick Collier has already reimbursed Hill Wallack for its costs.

6.      When the final fee award is paid, Hardwick Collier will pay Hill Wallack for the fees incurred on a quantum meruit basis.

7.      When Ms. Benfer joined Hardwick Collier in July 2011, Ms. Diaz became a client of Hardwick Collier. At that point, the matter was still pending in the EEOC.

8.      Ms. Diaz retained Hill Wallack and then Hardwick Collier to represent her on a contingent basis.

9.   In view of the loss of her job and her modest income while employed, Ms. Diaz would not have been able to hire a lawyer on an hourly basis. Our retainer agreement provided for payment of attorneys' fees by contingency.

10.   To this day, our firm has not received any payment of fees for legal services from Ms. Diaz.

11.   This firm has also advanced all out of pocket costs required to pursue the litigation on Ms. Diaz's behalf.

12.   The professionals in our firm record time contemporaneously through a web-based timekeeping program called Rocket Matter.

13.   I feel confident that all of the time recorded was actually worked, and I am certain that some time was inadvertently not recorded.

14.   Expenses are recorded in Rocket Matter as bills are paid to outside vendors.

15.   When we use our firm photocopier to make copies we bill for that at 11 cents per page, which is lower than the rate generally charged by outside copy services. We do not generally record or charge for documents that are printed on our office printer (rather than photocopied). Because much of the document production in this matter was produced electronically, and relevant documents were then printed, many documents were printed without being billed for.

16.   Attached hereto as Exhibit B is the detailed record of time and costs for this matter as generated through Rocket Matter. In preparation for this fee petition, as detailed below, I made the following changes to the time entries:

a.   I corrected some typographical errors for the sake of clarity.

3

b. For numerous entries, I deleted dollar figure and entered "No Charge." Items that were "no charged" include work of an administrative or secretarial nature. I also "no charged" work that in my judgment was duplicative, and work that was for the educational benefit of the timekeepers, but not strictly necessary for the litigation.

c. I also "no charged" legal research and brief writing relating to the claim for retaliation under the ADA and PRHA, in light of the Court's decision of August 27, 2013.

d. I exercised billing discretion to "no charge" some of the hours spent responding to the summary judgment motion and to prepare jury instructions.

e. We added two entries for time that was inadvertently not recorded contemporaneously. First, we added an entry for Tiffanie Benfer's time in taking the deposition of Malissa Stroble on November 7, 2012. Second, we added an entry for Joyce Collier's time in moderating a jury focus group on June 22, 2013.

17.     Attached hereto as Exhibit C is an Excel spreadsheet prepared by a paralegal in my firm showing that the value of the charges cut from the Hardwick Collier bill was $64,797.

**Ms. Diaz was the Prevailing Party on All Claims**

18.     Ms. Diaz was the prevailing party in this litigation on her claims under the FMLA and the ADA against Saucon Valley and Nimita Kapor-Atiyah.

4

19.     The jury rendered a verdict for Ms. Diaz on her claim of FMLA interference, but not on her claim of FMLA retaliation.  Ms. Diaz would not have recovered any greater amount if she had recovered on both FMLA claims.  She was thus the prevailing party on the FMLA claim.

20.     Bringing the FMLA retaliation claim to trial did not require any additional expenditure of attorney time or effort.

21.     From the time Ms. Diaz was fired, defendants took the unwavering position that she was fired for reasons unrelated to her disability of alcoholism.  Defendants also consistently took the position that they acted appropriately with regard to the FMLA.

22.     Thus, defendants took the position that Ms. Diaz was fired because she was a no call/no show and/or because of an incident of public drunkenness.

23.     The jury resoundingly rejected that position, awarding Ms. Diaz lost wages, compensatory damages of $25,000 and punitive damages of $75,000.

24.     Counsel for defendants has advised us that as a result of this litigation, Saucon Valley and its affiliated company, Whitehall Manor, are making or have made major changes in their handling of human resources issues.  This litigation has therefore had a salutary collateral effect of increasing the likelihood that all of defendants' employees will be treated properly under the law.

### Defendants' Vigorous Defense and Rejection of Early Opportunities for Resolution

25.     Saucon Valley Manor and Ms. Kapoor Atiyeh mounted a vigorous defense throughout this litigation.

26.     On November 5, 2010, Ms. Benfer forwarded a courtesy copy of the EEOC charge to Saucon Valley. She received no response. (For ease in presentation to the Court, I have included facts that are in the personal knowledge of Ms. Benfer in this Verification. My knowledge of these facts is based on discussions with Ms. Benfer and review of the file. If the Court prefers a separate Verification from Ms. Benfer as to these facts, we will be pleased to provide it.)

27.     Ms. Benfer was informed that defendants declined mediation before the EEOC.

28.     Defendants' position statement, filed with the EEOC on April 12, 2011, reflected defendants' intention to vigorously defend. In that position statement, counsel for defendants stated that he had "fully investigated" and that Ms. Diaz's claims were "unfounded," a "mischaracterization of events," and "without merit." (Position statement at 1)

29.     The defendants' position statement began the theme that was continued throughout the litigation, arguing that Ms. Diaz was fired because of the "alcohol-related arrest." (Position statement at 2) Defendants argued at length that Ms. Diaz could not establish that she had a disability under the ADA. They argued that "given Diaz's alcoholism and the behavioral problems associated with alcoholism, it is highly probable that placing her in a position that required food preparation would create a direct threat to the safety of herself, her coworkers and the residents." (Position statement at 4)

30.     Defendants also denied in the position statement that Ms. Fox ever received a request for a leave of absence from Ms. Diaz. (Position statement at 5)

31.    Defendants contended that Ms. Diaz failed to meet Saucon Valley's behavioral standards, and characterized her behavior as "outrageous." (Position statement at 5).

32.    Plaintiff filed a federal court complaint in this matter on January 27, 2012.

33.    Press coverage of the complaint on February 14, 2012, quoted Ms. Kapoor Atieyeh as saying that the charges in the lawsuit were false and stating (incorrectly) that the EEOC had already cleared Saucon Valley of wrongdoing.  The same article quoted an email from defendants' counsel stating that defendants "look forward to vigorously defending the case in court."

34.    At the Rule 16 conference before the Hon. Gene J.K. Pratter, on May 10, 2012, Judge Pratter asked Ms. Benfer for a settlement demand.  Ms. Benfer provided a demand of $50,000.  Defendants offered $8,000.

35.    As of May 10, 2012, this firm's recorded attorneys' fees were approximately $20,000.

36.    From May 10, 2012 until July 5, 2013, two weeks before trial, defendants never made another settlement offer, despite numerous overtures from plaintiff's counsel.

37.    Instead, the defendants mounted the vigorous defense they had previously promised, leaving plaintiff's counsel no choice but to litigate vigorously in response.

38.    When new counsel entered the case two weeks before trial, defendants finally made a settlement offer of $100,000, inclusive of fees.

7

**Legal Fees Expended: Challenges in Addressing Defendants' Delay and Resistance in Discovery.**

39.     Ms. Benfer, who bills at a lower hourly rate than I do, handled all of the initial discovery.

40.     Defendants failed time and again to meet their obligations to provide full and fair discovery.

41.     Defendants' initial disclosure did not comply with Fed. R. Civ. P. 26(a)(1) because it did not indicate the subject of knowledge of each witness and did not provide the last known address for Malissa Stroble, a former employee. Plaintiff was required to make oral and then written requests that this information be provided.

42.     On May 25, 2012, Plaintiff served interrogatories and document requests on defendants. Defendants did not respond until July 19, 2012, and only after a written demand that the responses be provided. (See 7/10/12 time entry)

43.     The responses to written discovery that defendants did provide were very inadequate and included numerous boilerplate objections. For example, defendants objected to the request for emails and did not produce a single email.

44.     In August and September 2012, Ms. Benfer sent four letters to counsel for defendants in an attempt to obtain responsive written discovery. Time spent on that correspondence is reflected in time entries on August 8, 2012 (2.5 hours); August 14, 2012 (time billed only by Ms. Frey); August 22, 2012 (.4 hours). Comparison of this firm's correspondence file with the letters sent indicates that Ms. Benfer did not bill for all of the hours she spent writing these letters. No time is billed for Ms. Benfer's letter of September 4, 2012.

8

45.     On September 27, 2012, Ms. Benfer served a supplemental interrogatory seeking the identity of every employee who had been disciplined for failing to show up to work.  Thus, plaintiff was seeking highly relevant information about comparators. Ms. Benfer had to follow up numerous times to obtain this information.  Defendants did not provide an answer to this interrogatory until March 6, 2013.

46.     At the deposition of Malissa Stroble on November 7, 2012, Ms. Stroble testified that Saucon Valley Manor had an archive closet on the third floor in which it kept previous versions of handbooks, payroll reports, and schedules.  Counsel for plaintiff made numerous requests that these archived files be searched.

47.     On November 8, 2012, Ms. Benfer wrote to counsel for defendants listing categories of document that had not yet been produced, including the 2009 handbook, the work schedule kept by Ms. Fox, vacation request forms, and documentation signed by Ms. Diaz after the death of her father.  Ms. Benfer asked that the documents be provided before Ms. Diaz's deposition on November 20, 2012.  She wrote again on November 16, 2012, and this time said that she would have no choice but to file a motion to compel.

48.     In addition to communicating about these requests with counsel, the failure to produce these documents was discussed at the depositions of Ms. Kapoor-Atiyeh and Ms. Hirsch.  Defendants repeatedly insisted that the all documents had been produced.

49.     In fact, Mr. Baker and Ms. Kapoor Atiyeh adamantly insisted that a thorough search had already been conducted and that no further responsive documents existed.  Kapoor Atiyeh dep. at 41- 44.

50.    In the week before trial, after defendants engaged new counsel, those files were finally searched and hundreds of pages of responsive documents were produced at the eleventh hour.  Among the important documents produced at the last minute were the 2009 handbook and the schedules maintained by Ms. Fox.  These documents became key exhibits at trial.

**Legal Fees Expended:  Additional Work to address Issues Concerning Alcoholism**

51.    Defendants took the position that Ms. Diaz did not have a disability under the ADAAA, and until the eve of trial defendants did not concede that alcoholism was a protected disability.  This position required additional effort to prove disability.

52.    Ms. Benfer and Ms. Frey spent considerable time tracking down plaintiff's medical records. (See time entries for 6/1/12; 6/12/12; 6/13/12; 6/14/12; 6/22/12; 6/26/12; 6/27/12; 6/28/12; 7/11/12; 7/16/12; 7/17/12; 7/19/12; 8/14/12; 8/15/12; 8/22; 12).  To the extent possible, this work was delegated to Ms. Frey, who has a lower hourly billing rate.

53.    Time was also expended to research the treatment of alcoholism under the ADAAA . (*see, e.g.,* time entries for 12/9/11; 5/2/12; 5/29/12)

**Legal Fees Expended: Depositions**

54.    In addition to time spent reviewing documents and interviewing Ms. Diaz to learn the facts of the case, Ms. Benfer did extensive preparation for depositions.

55.    In November and December 2012, Ms. Benfer took the depositions of four of defendants' witnesses: Ms. Hirsch, Ms. Kapoor Atiyeh, Ms. Fox, and Ms. Stroble.

56.    Ms. Benfer's preparation for depositions ended up being essential to the eventual outcome at trial, since deposition testimony was frequently used to prove

10

plaintiff's case, and because much of plaintiff's case had to be proved through the testimony of the defendants and their agents. Three of the deposed witnesses testified at trial and the parties used a stipulation of Ms. Stroble's testimony.

57.    Ms. Benfer began deposition preparation on June 25, 2012 (7 hours), as she was preparing written discovery. That preparation continued on August 3, 2012 (7.3 hours).

58.    Preparation for depositions of defendants' witnesses continued on October 24, 2012 (6.6 hours); October 26, 2012 (5.5 hours); November 2, 2012 (4 hours); November 5, 2012 (4 hours); November 6, 2012 (5 hours); November 7, 2012 (1.5 hours); November 19, 2012 (4.4 hours); December 3, 2012 (6.5 hours); and December 4, 2012 (3 hours).  [TOTAL = 54.8 HOURS]

59.    Ms. Benfer also spent four hours preparing Ms. Diaz for deposition on November 2, 2012, and two hours on November 19, 2012.

60.    Ms. Benfer spent 8.5 hours defending the deposition of Ms. Diaz on November 20; 5.5 hours taking the deposition of Malissa Stroble on November 7, 2012; 3 hours taking the deposition of Ms. Fox on December 4, 2012; and 6 hours taking the depositions of Ms. Hirsch and Ms. Kapoor Atiyeh on December 5, 2012.

61.    The total cost of transcripts for the initial round of depositions in 2012 was $ 1,968.65.

**Legal Fees Expended: Responding to Defendants' Summary Judgment Motion.**

62.    Defendants filed a motion for summary judgment on December 28, 2012. This motion took our law firm by surprise because counsel for defendants had

previously acknowledged to Ms. Benfer that there was no basis for filing a motion for summary judgment.

63.    Ms. Benfer had suggested to defendants' counsel at the close of discovery that the parties should discuss settlement, but defendants did not respond to that suggestion.

64.    As of December 27, 2012, this firm's recorded attorneys' fees were approximately $75,000.

65.    Defendants' initial motion was procedurally deficient because it failed to list disputed and undisputed factual issues, as required by Judge Pratter's procedures. After plaintiff filed a motion to strike, the Court (Hon. Pratter) permitted defendants to re-file in a manner that conformed with the Court's rules.

66.    Because a motion for summary judgment is a make-or-break proposition for a plaintiff, and because many plaintiffs lose at the summary judgment stage, we were required to respond thoroughly.

67.    Responding to the defendants' motion for summary judgment required us to thoroughly review the record and for supporting citations, as well as to conduct legal research.

68.    By my calculations, we expended 146.7 attorney hours in responding to the defendants' motion for summary judgment.

69.    In the exercise of billing discretion, I have "no charged" 18.5 hours of my time in drafting the summary judgment brief between January 20 and January 24, 2013 to account for the learning curve as I became familiar with the facts of the case.  I have

also "no charged" 5.0 hours of Ms. Benfer's time on January 29, 2013 for editing the brief.

70.     As this Court is aware, plaintiff prevailed on <u>every</u> aspect of the summary judgment motion.

### Legal Fees Expended: Defendants' Failure to Provide Complete and Accurate Answers to Written Discovery Requires Re-Opening of Discovery and Depositions

71.     In early March 2013, I learned from Marc Weinstein, a colleague in the plaintiff's employment bar, that he had filed an FMLA complaint in federal court against Whitehall Manor ("Zielinski Complaint).

72.     When defendants answered interrogatories, they had falsely stated that there were no pending FMLA or ADA complaints against Saucon Valley or Whitehall Manor, their sister company.

73.     On March 11, 2013, we submitted a letter to the Court seeking to reopen discovery on this issue.

74.     This Court granted our request to reopen discovery.

75.     Ms. Benfer and I prepared for the depositions, with time billed on March 27, 2013 (6.8 hours); April 4, 2013 (4.5 hours); April 10, 2013 (3.0 hours); April 12, 2013 (1.7 hours and 2.5 hours); and April 15, 2013 (1.5 hours).  Total preparation time therefore was 18.5 hours.

76.     I took the depositions of Ms. Kapoor-Atiyeh and Ms. Hirsch on April 16, 2013.  Ms. Benfer also attended.  Although Ms. Benfer's attendance was extremely helpful, we have not charged for her time that day.

77.     The cost of the deposition transcripts for April 16, 2013 was $521.25.

78.     The second round of depositions was necessary only because of the false answers in defendants' initial answers to interrogatories.

79.     At Ms. Kapoor-Atiyeh's re-convened deposition, she admitted she knew about the Zielinski complaint, she admitted that she understood that interrogatory answers were under oath, and she said she was unable to explain the omission, stating, "I don't know why it wasn't put in there, so I apologize for that." Atiyeh Tr. at 182 – 88 (Attached hereto as Exhibit D)

80.     The deposition testimony was extremely useful at trial. Although plaintiff was not permitted to submit direct evidence of other complaints against defendants, the depositions about those complaints led to the discovery of highly relevant evidence. For example, plaintiff learned about another Saucon Valley employee who had a heart attack and as to whom Saucon Valley went to great lengths to provide FMLA paperwork. This evidence was important at trial in arguing to the jury that Ms. Diaz was treated differently because of her disability of alcoholism

81.     I believe that our careful preparation for all of the depositions in this case was essential to the ultimate success of the case. All of defendants' witnesses were called to testify on behalf of the company in support of defendants' position that Ms. Diaz was fired because of the incident of public drunkenness and because she was a no call/no show. It was through meticulous and detailed analysis of the defendants' document production and careful examination at deposition that we were able to obtain the admissions from these witnesses that later became essential at trial.

14

**Legal Fees Expended:  Special Challenges**

82.    This case involved some special challenges that required additional preparation before trial.

83.    From our legal research and discussions with numerous colleagues in the plaintiffs' employment bar, we were unable to find one example of a plaintiff with an active addiction disability who prevailed at trial.

84.    We found numerous examples of plaintiffs with addiction disability who had been unsuccessful in bringing their claims under the ADA.

85.    It became apparent to us that in bringing this case to trial, we would need to deal with juror prejudice against a plaintiff who had an active addiction issue during the time that she was working.

86.    Even though Ms. Diaz was an exemplary employee, we predicted (correctly) that the defendants would attempt to persuade the jury that because of her alcoholism she must not have really been a good or trustworthy employee. We also predicted (correctly) that defendants would engage in personal attacks on Ms. Diaz's character.

**Jury Focus Group**

87.    In order to prepare for this additional challenge at trial, we decided to present the case to two local juror focus groups to determine how much of an issue jurors would have with Ms. Diaz's disability of alcoholism.

88.    Neither our firm nor Ms. Diaz had the financial resources to hire a professional jury consultant. Our research indicated that this would cost over $10,000

for the most basic focus group (not including attorney time for preparation and attendance).

89.    Instead, we advertised for local focus group participants and held two focus groups.

90.    The costs to run the focus groups included $430.50 for room rental at a Days' Inn; $700.00 to pay a videographer to videotape the presentations and deliberations; $1,080.00 to pay the focus group participants; and $226.24 for incidentals such as refreshments for the focus group participants.

91.    The administration of the focus groups was largely done by the firm's paralegals. Time for this task was billed on 4/24/13 (.5 hours); 6/3/13 (1.3 and .5 hours); 6/4/13 (3.3 hours, include trial preparation); 6/5/13 (1 hour); 6/6/13 (1.5 hours); 6/10/13 (2.1 hours, .5 hours), 6/18/13 (1.0 hour), 6/20/13 (.2 hours); 6/21/13 (.5 hours); 6/22/13 (9 hours for 2 paralegals to attend and administer focus group); 6/27/13 (10.5 hours for two paralegals to attend and administer focus group). Total administrative hours for the focus group was therefore 31.9 hours, for a total cost of $3,030.50. I also spent my own time on administrative tasks relating to the focus groups, as did Ms. Benfer and Ms. Collier. I have "no charged" the attorney time spent on these administrative tasks. The administrative and out of pocket costs for our firm to organize the focus groups was therefore about $4100, substantially less than hiring a jury consultant.

92.    Professional time to prepare for and present a mock trial to the focus group included the following:

16

   a. Ms. Benfer prepared the plaintiff's case, billing time as follows: June
      4, 2013 (3 hours); June 21, 2013 (10.0 hours, includes other trial
      preparation).

   b. I prepared the defendants' case, billing time as follows: June 21, 2013
      (10.5 hours, includes other trial preparation).

   c. Ms. Collier prepared to moderate and present jury instructions, billing
      time as follows:  June 20, 2013 (2.3 hours); June 21, 2013 (2.7 hours).

93.    The first focus group was conducted on Saturday, June 22, 2013.  Time is
billed that day for by all professional staff in our office for 4.5 hours.  My time for that
day is 6.2 hours, because I watched and made notes on the DVD of deliberations.

94.    A second jury focus group was conducted on the evening of June 27,
2013.  Time billed for that focus group was Tiffanie Benfer (4.5 hours); Virginia
Hardwick (5.2 hours); Joyce Collier (5.2 hours); Holly Frey (5.5 hours); and Alexandra
Hensinger (5.0 hours)

95.    The input of the focus groups was invaluable in helping us understand
how to present Ms. Diaz's story to the jury.

96.    Ms. Benfer found that presenting the plaintiff's case to the focus group
was excellent preparation for presenting her opening argument at trial.

97.    I found that preparing and presenting the defendants' case to the focus
group was extremely helpful in anticipating the defendants' arguments at trial and
preparing cross examination of Ms. Kapoor Atiyeh and Ms. Hirsch to meet those
arguments.

98.   The focus group deliberations assisted us in evaluating defendants' settlement offer.

99.   By my calculations, the total cost of the two focus groups, including attorney preparation and attendance was $26,707.24.

### Preparation of Ms. Diaz for Trial

100.   Ms. Diaz has a difficult personal history that made her particularly frightened to testify at trial, and which required careful and lengthy preparation for trial.

101.   Obviously, there was no way to try a case about discrimination against an alcoholic without having the plaintiff testify about difficult and very private matters.

102.   Ms. Benfer and I met with Ms. Diaz weekly for six weeks before trial so that we could slowly build trust and learn the factual details that would be needed to successfully try the case.

103.   Thus, Ms. Benfer and I both met with Ms. Diaz on June 6, 2013; on June 13, 2013; on June 20, 2013; on June 27, 2013; on July 9, 2013; and on July 15, 2013.

104.   In addition, the work with Ms. Diaz on the issues resulting from her life history was important for us to understand the underpinnings of her alcoholism and her deep desire to work and be self sufficient, all of which was part of her emotional distress damages.

105.   We also retained the services of psychologist and trial consultant Louise Lipman to assist us in preparing Ms. Diaz to testify comfortably about highly sensitive and embarrassing subjects.

106.   Ms. Lipman's CV is attached hereto as Exhibit E.On July 1, 2013, Tiffanie Benfer, Joyce Collier and I all met with Ms. Diaz and with Louise Lipman to prepare for

18

trial. Consistent with the decision throughout this fee application not to seek fees for the assistance of Joyce Collier at trial, I have "no charged" the time of Joyce Collier on July 1. I have also exercised billing discretion to not charge for my own time (9 hours) that day.

107.   Louise Lipman's fee for a full day's work was $1,531.

## Legal Fees Expended: Trial Preparation

### In limine motions

108.   Ms. Benfer did research on a motion concerning a defense of "direct threat." Because defendants had raised that argument in their EEOC position statement, we had reason to believe it would arise at trial. Although it turned out that the issue was not raised at trial, this is one of many examples of the need to prepare for a contingency that did not arise. Ms. Benfer's time on this issue included time on May 20, 2013 (3.5 hours), May 24, 2013 (6.0 hours) and Ms. Frey 's time included time on May 30 (1.7 hours).

109.   As to the other in limine motions, and plaintiff's opposition to defendants' motions, this Court reviewed the papers and can make its own evaluation of the quality of plaintiff's counsel's work.

### Preparation of Cross Examination

110.   The nature of plaintiff's proofs required much of plaintiff's case to be made through the testimony of Ms. Kapoor Atiyeh, Ms. Hirsch and Ms. Fox.

111.   None of these witnesses were likely to voluntarily give testimony favorable to Ms. Diaz.

112.   Ms. Kapoor Atiyeh was a particularly difficult witness in that she was individually named as a defendant, she was the owner of (or married to the owner of) Saucon Valley, she was intelligent, and she was not forthcoming.  She was a particularly important witness because the crucial issue in this litigation was her intent.

113.   To prepare for examination of defendants' witnesses, Ms. Benfer and I engaged in mock dry runs of some of the most crucial parts of the examinations.  Thus, on July 11 and July 14, 2013, Ms. Benfer played the part of Ms. Kapoor Atiyeh while I practiced her examination; on July 17, 2013, I played the part of Ms. Fox while Ms. Benfer practiced her examination.  The other professionals in our firm observed and gave valuable feedback, but we have not charged for their time.

114.   I believe that this extensive preparation for the witnesses' likely responses was crucial in framing effective examinations for trial.

### Defendants' Last Minute Change of Counsel

115.   Because of Mr. Baker's personal circumstances, counsel for plaintiffs undertook to do more than the usual share of joint pretrial preparation.  For example, we prepared the initial drafts of the jury instructions.  Nevertheless, I have exercised billing discretion and "no charged" for many of the hours spent preparing jury instructions.

116.   On July 5, 2013, I received a telephone call from Alan Fellheimer, advising me that he was new counsel for defendants.

117.   The substitution of defendants' counsel increased our work in many ways. As a courtesy, we provided new counsel with many documents.

118.   New counsel pursued new theories of the case, which required new and different preparation. For example, new counsel brought in new witnesses to argue that Ms. Diaz's performance was not good and that she was not a "qualified" individual.

119.   An another example, previous counsel had agreed to stipulate that Ms. Diaz had told Ms. Fox in June 2010 that she would need a 30-day leave of absence. New counsel refused that requested stipulation, requiring last minute review of evidence to make this proof.

120.   In addition, in the week or two before trial, new counsel produced hundreds of pages of documents. While we commend the new counsel for making this production, however belatedly, the new production required us to rework examinations that had already been drafted. For example, the 2009 handbook was produced days before trial after many requests. A cross examination of Ms. Kapoor Atiyeh had already been written based on the 2005 and 2010 handbooks, and that had to be scrapped.

**Legal Fees Expended: Trial**

121.   Tiffanie Benfer, Holly Frey and I all attended the trial. Our time is billed for all five days of trial.

122.   Joyce Collier and Alexandra Hensinger attended the trial as well. They were extremely helpful, but we have not charged for their time.

123.   Holly Frey, Julie Diaz and I all live too far from Philadelphia to commute comfortably, especially considering the long days of trial. (We live approximately 60 miles, 50 miles, and 35 miles from the courthouse respectively.) Because there are no highways from Doylestown to Philadelphia, that can be a particularly time-consuming ride, especially during rush hour.

124. Hence, we booked three hotel rooms for four nights of trial. The average per night cost of hotel rooms with tax was $186.48, for a total cost of $2,237.73. For Holly Frey and for me, this cost was less than the travel time would have been, even if reduced to one-half of our usual hourly rates. For Ms. Diaz, the expense of the hotel room was important to allow her to attend trial without the stress of added travel.

125. Meals during the five days of trial cost a total of $792.00. We worked through most of the meals during trial.

126. We paid $5,096.30 for trial transcripts. The fees for expedited trial transcripts turned out to be a necessary expense. On the last day of trial, the transcripts were used to resolve differences of opinion with counsel for defendants about the record and which deposition excerpts were part of the record.

**Legal Fees Expended: Post-Trial Proceedings**

127. After trial, the parties engaged in post-trial briefing before the entry of the judgment.

128. Plaintiff was successful in obtaining prejudgment interest and liquidated damages.

129. Although Plaintiff was not successful on the claim for ADA and PHRA retaliation, that claim would not have added to plaintiff's damages since the jury already awarded damages for ADA and PHRA discrimination. Nonetheless, I have "no charged" all portions of drafting that brief that relate to the claim for retaliation under the ADA and PHRA.

**Legal Fees Expended: Drafting the Fee Petition**

130.   Additional legal fees will be assessed for the preparation of this fee petition. As I draft this Verification, I am not certain what the total will be, but I verify that my time for this task has been accurately recorded.

131.   I do not know whether defendants will oppose this fee petition. If defendants file an opposition, I respectfully request the opportunity to respond, and if necessary to submit a supplemental fee petition.

**Hourly Rates Sought and Qualifications of Legal Professionals**

*Virginia L. Hardwick*

132.   I seek an hourly rate for my time of $400/hour. It is my understanding and belief, based on conversations with numerous plaintiffs' employment attorneys that this is the fair and reasonable market rate for an experienced attorney in the greater Philadelphia area.

133.   In 2012, I prevailed at an AAA arbitration of a single-plaintiff wage payment case in Pennsylvania and subsequently submitted an application for fees. I was awarded fees at a rate of $400/hour.

134.   Although my office is located in Bucks County, my practice in Pennsylvania is largely conducted in the U.S. District Court for the Eastern District of Pennsylvania. Accordingly, the relevant market is the greater Philadelphia area. In addition, much of my work is conducted in the state and federal courts of New Jersey. It is my experience that the prevailing rates in that market are as high as they are in the Philadelphia area.

135.   My usual hourly rate for clients who pay me by the hour and pay me immediately is $350.  I would not charge less than $400 per hour for a client whose payment was contingent on success and whose payment could be delayed indefinitely until the conclusion of the matter.

136.   To support the hourly rate of $400, I also refer to the supporting Verification of Scott Pollins, President of the National Employment Lawyers Association for the Eastern District of Pennsylvania, and to case law in which reasonable rates have been considered.

137.   I also provide the following biographical information for the Court's consideration.

138.   I am a 1984 graduate of N.Y.U. School of Law.  I was a Note and Comment Editor of the N.Y.U. Law Review, and I was published in the Law Review.

139.   From 1984 – 1985, I was a law clerk to the Honorable John J. Gibbons, Third Circuit Court of Appeals.

140.   From 1985 through 1991, I was an associate at Crummy, Del Deo Dolan, Griffinger & Vecchione in Newark, New Jersey.  This law firm is now knows as Gibbons, P.C.  My work included commercial litigation, intellectual property litigation and employment litigation.

141.   From 1991 through 1999, I took a break from active full time practice of law while raising my children.  During those years I taught Legal Research & Writing and Appellate Advocacy at Seton Hall Law School; did brief writing on an Of Counsel basis for the law firm Robinson, Lapidus & Livelli; and served on the Westfield, New Jersey Board of Education.

24

142.   From 1999 through 2004, I served as an Associate Clinical Professor at Seton Hall Law School. I supervised students representing low-income clients, conducted dozens of bench trials with my students, and taught trial practice skills.

143.   In 2005, after moving to Pennsylvania, I worked for Robert Sugarman & Associates and began working in the field of plaintiff-side employment litigation.

144.   In 2006, I became an associate at Hill Wallack, and continued to focus on plaintiff-side employment litigation. I was made a partner in January 2009.

145.   In January 2010, I opened my own law practice. I continue to focus most of my work on plaintiff-side employment litigation.

146.   The litigation practice handled by my two partners and me is varied and includes complex and difficult litigation.

147.   We have numerous matters involving discrimination claims pending or settled in the United States District Court for the Eastern District of Pennsylvania. In one such matter, the court recently denied defendants' motion for summary judgment. *Fleck v. Wilmac Corp.*, 2012 WL 1033472 (E.D.Pa. 2012).

148.   I am an active member of the National Employment Lawyers Association (NELA), in the New Jersey and Eastern Pennsylvania chapters.

149.   I am very active in the American Bar Association Labor and Employment Law Section. I am now a conference co-chair for the Annual Labor and Employment Conference Planning Committee, a CLE which attracts about 1300 participants.

150.   I am often asked to present and write papers on topics relating to employment law.

151.   I am a faculty member for the National Institute for Trial Advocacy (NITA) and I regularly teach weekend programs for attorneys on deposition skills.

152.   I have been named a Pennsylvania "Super Lawyer" for 2012 and 2013 by Thomson Reuters.

153.   I am a Fellow of the American Bar Foundation.

### Tiffanie C. Benfer

154.   My partner Tiffanie Benfer's time is charged at $300/hour. This is the usual hourly rate at Hardwick Collier for hourly clients whose payment is not contingent on the outcome of the matter.

155.   In 2012, after our successful AAA arbitration, Ms. Benfer's fees were awarded at the rate of $300/hour.

156.   Tiffanie is a 2003 graduate of the University of Baltimore School of Law, where she graduated Magna Cum Laude and received the Excellence in Clinical Education Award.

157.   She was admitted to the bar of Maryland in 2003 and to the Bar of Pennsylvania in 2006.

158.   She was a law clerk to the Honorable Timothy E. Meredith the Maryland Court of Special Appeals and Honorable Clifton J. Gordy of the Circuit Court for Baltimore City.

159.   Tiffanie joined Hill Wallack as an associate in 2006 and has been practicing plaintiff's employment litigation since that time.

160.   She joined Hardwick Collier as a partner in July 2011.

161.  Tiffanie is an active member of the Labor and Employment Law Section of the ABA and the sections Employment Rights and Responsibilities Committee. She is currently the co-chair of the Publications/Newsletter Sub-Committee for the Employment Rights and Responsibilities Committee.

162.  She has presented CLE programs for both the Employment Rights and Responsibilities Committee and the Bucks County Bar Association.

163.  Tiffanie has been named a "Rising Star" for 2012 and "Super Lawyer" 2013 by Thomson Reuters.

*Joyce Collier*

164.  My partner Joyce Collier's time is charged at $400/hour. This is the usual hourly rate at Hardwick Collier for hourly clients whose payment is not contingent on the outcome of the matter.

165.  Ms. Collier graduated with high honors in 1988 from Rutgers School of Law after receiving the Most Promising Civil Litigator Award and the Stratton Moot Court Award. After serving as a Law Clerk to the Honorable Robert L. Clifford of the New Jersey Supreme Court, she began her litigation career as an associate at the firm of Hangley Connolly Epstein Chicco Foxman & Ewing in Philadelphia, and by 1995 became a Shareholder of the firm of Connolly Epstein Chicco Foxman Oxholm & Ewing. From 1996 through 1998, she served as Co-Chair of the Employment Department, along with William Ewing

166.  From 1999 until 2000, Ms. Collier was of Counsel to the Philadelphia law firm of Hangley Aronchick Segal & Pudlin. From 2001 until joining Hardwick Collier, she was a sole practitioner in Montgomery County, specializing in employment law. She

has served as an Adjunct Law Professor at Rutgers School of Law Camden, teaching disability law

167.   She is a Fellow of the Academy of Advocacy of Temple University School of Law and 2001 graduate of the Trial Lawyers College, located in Dubois, Wyoming.

168.   Ms. Collier also served as the Executive Director for the Legal Clinic for the Disabled and continues provides legal services to various disability organizations, including the Legal Clinic, Magee Rehabilitation Hospital and the Pennsylvania School for the Deaf. She has been a frequent speaker on employment law issues for the Pennsylvania Bar Institute, and will be presenting at the 7th Annual American Bar Association Conference in November 2013 on the issue of "Who Is A Qualified Individual With a Disability Under the ADAAA."

169.   Ms. Collier has been named a Pennsylvania "Super Lawyer" for 2012 and 2013 by Thomson Reuters.

### *Holly Frey – Paralegal*

170.   Holly Frey is an experienced paralegal, whose time is billed at $95 per hour. This is the usual hourly rate billed at Hardwick Collier for paralegal time for hourly clients whose payment is not contingent on the outcome of the matter.

171.   In 2012, after our successful AAA arbitration, Ms. Frey's fees were awarded at the rate of $95/hour.

172.   Ms. Frey has been working in the field of Plaintiff's employment litigation since she joined Hill Wallack in 2007. She has been with Hardwick Collier since January 2010.

173.   Ms. Frey is also a law student, and has completed her second year at Widener Law School.  At Widener, she has made the Dean's List each semester, and at the end of her second year of law school, she is ranked number 1 in the evening division. She has been selected to the Law Review and has served as a research assistant to two professors.

### *Alexandra Hensinger - Paralegal*

174.   Alexandra Hensinger is an experienced paralegal, whose time is billed at $95 per hour.  This is the usual hourly rate billed at Hardwick Collier for paralegal time for hourly clients whose payment is not contingent on the outcome of the matter.

175.   Ms. Hensinger is a 2001 graduate of Sarah Lawrence.  In May 2012 she completed the paralegal certification program at Villanova University with straight A's.

176.   She has been employed by Hardwick Collier since September 2012.

The foregoing facts are true to the best of my knowledge and information.  I understand that if any of the foregoing statements made by me are willfully false, I am subject to the penalties provided for under 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

Respectfully submitted,

BY: 

Virginia L. Hardwick, Esquire
Attorney for Plaintiff

29

# EXHIBIT A

Billed and Unbilled Recap Of Time Detail - [015658-00001 - Diaz, Julie vs. Saucon Valley Manor, Inc.]    Page 1
Client:015658 - Diaz, Julie   10/5/2011 12:51:11 PM

| | Date | Initials | Name (Index Number) | Hours | Amount | Description | Matter Number | Index |
|---|---|---|---|---|---|---|---|---|
| | 09/01/2010 | TCB | Tiffanie Conway Benfer | 2.00 | 500.00 | Research Alcoholism and ADA in prep for new client meeting. | 015658-00001 | 1804482 |
| | 09/01/2010 | MMV | Michele Osbeck | 0.90 | 112.50 | Telephone call from potential client regarding possible case.  Telephone calls to and from client regarding appointment for consultation. | 015658-00001 | 1804762 |
| ✳ | 09/07/2010 | MMV | Michele Osbeck | 0.30 | 37.50 | Conference with JRT/TCB regarding appointment with new client.  Prepared fee agreement. | 015658-00001 | 1806204 |
| | 09/07/2010 | TCB | Tiffanie Conway Benfer | 2.00 | 500.00 | Meeting with client. | 015658-00001 | 1804487 |
| ✳ | 09/10/2010 | MMV | Michele Osbeck | 0.40 | 50.00 | Conferences with BT regarding opening file.  Assist in opening file. | 015658-00001 | 1809553 |
| | 09/15/2010 | TCB | Tiffanie Conway Benfer | 3.00 | 750.00 | Drafted fact pattern/eeoc charge of discrimination. | 015658-00001 | 1809482 |
| | 09/23/2010 | TCB | Tiffanie Conway Benfer | 1.50 | 375.00 | EEOC complaint - failure to accomodate. | 015658-00001 | 1814591 |
| ✳ | 09/24/2010 | MMV | Michele Osbeck | 0.10 | 12.50 | Conference with BT regarding JRT signing fee agreement. | 015658-00001 | 1814416 |
| ✳ | 09/27/2010 | MMV | Michele Osbeck | 0.40 | 50.00 | Conference with BT regarding Notice of Determination from client.  Reviewed Notice of Determination. | 015658-00001 | 1814498 |
| | 09/27/2010 | TCB | Tiffanie Conway Benfer | 0.50 | 125.00 | Finished draft of facts. | 015658-00001 | 1814593 |
| ✳ | 09/29/2010 | MMV | Michele Osbeck | 0.20 | 25.00 | Email from TCB regarding fact pattern.  Conference with TCB regarding EEOC complaint. | 015658-00001 | 1817744 |
| | 09/30/2010 | MMV | Michele Osbeck | 2.70 | 337.50 | Reviewed fact pattern.  Prepared Charge of Discrimination.  Conferences with TCB regarding disability. | 015658-00001 | 1817882 |
| ✳ | 10/07/2010 | MMV | Michele Osbeck | 2.20 | 275.00 | Continued preparing Charge/EEOC complaint. | 015658-00001 | 1820836 |
| ✳ | 10/14/2010 | MMV | Michele Osbeck | 0.10 | 12.50 | Email from TCB regarding fee agreement to client. | 015658-00001 | 1824327 |
| ✳ | 10/15/2010 | MMV | Michele Osbeck | 3.50 | 437.50 | Conference with BT regarding forwarding fee agreement to client.  Finalize EEOC complaint.  Letter to client forwarding complaint for signature. | 015658-00001 | 1824402 |
| | 10/20/2010 | MMV | Michele Osbeck | 0.30 | 37.50 | Telephone call from client regarding changes to EEOC complaint. | 015658-00001 | 1831210 |
| | 10/21/2010 | MMV | Michele Osbeck | 1.80 | 167.50 | Reviewed documents from client and revised EEOC complaint.  Conference with client to review EEOC complaint and procedures. | 015658-00001 | 1831229 |
| | 10/23/2010 | BAH | Elizabeth A. Hessenthaler | 0.50 | 57.50 | Reviewed file.  Letter to client re: medical records | 015658-00001 | 1831507 |
| ✳ | 10/28/2010 | MMV | Michele Osbeck | 0.10 | 12.50 | Telephone calls from client regarding medical information. | 015658-00001 | 1831413 |
| ✳ | 11/05/2010 | MMV | Michele Osbeck | 1.30 | 162.50 | Letters to EEOC and Defendant forwarding EEOC complaint. | 015658-00001 | 1843131 |
| | 11/17/2010 | BAH | Elizabeth A. Hessenthaler | 0.60 | 69.00 | Scanned medical authorizations.  Letters to Keystone Center, CVS, Giant Pharmacy, Delaware Valley Family medical and Dr. Alecia | 015658-00001 | 1842731 |
| | 11/18/2010 | MMV | Michele Osbeck | 0.20 | 25.00 | Telephone call from client regarding medical release forms.  Memo to EAH. | 015658-00001 | 1843289 |
| ✳ | 12/07/2010 | JR | Joanne Rathgeber | 0.50 | 175.00 | Review medical records. | 015658-00001 | 1854234 |
| ✳ | 12/07/2010 | JR | Joanne Rathgeber | 0.40 | 140.00 | IOC re medical records. | 015658-00001 | 1854241 |
| ✳ | 12/07/2010 | TCB | Tiffanie Conway Benfer | 0.10 | 25.00 | Research how LTC and SSI claims can impact ADA claims. | 015658-00001 | 1854281 |

Billed and Unbilled Recap Of Time Detail - [016658-00001 - Diaz, Julie Vs. Saucon Valley Manor, Inc.]    Page 2
Client:015658 - Diaz, Julie   10/5/2011 12:51:11 PM

| Date | Initials | Name / Invoice Number | Hours | Amount | Description | Matter Number | Index |
|---|---|---|---|---|---|---|---|
| 01/05/2011 | JR | Joanne Rathgeber | 0.30 | 105.00 | IOC. | 016658-00001 | 1863122 |
| 05/13/2011 | MMV | Michele Osbeck | 0.10 | 12.50 | Interoffice conference regarding requesting position statement. | 015658-00001 | 1931087 |
| 05/31/2011 | BAH | Elizabeth A. Hessenthaler | 0.50 | 57.50 | Review medicals for updating | 015658-00001 | 1936673 |
| 05/31/2011 | TCB | Tiffanie Conway Benfer | 0.30 | 76.50 | Discussed w/ EH client's medical records. | 016658-00001 | 1937761 |
| 06/27/2011 | MMV | Michele Osbeck | 0.10 | 12.50 | Interoffice conference regarding position statement. | 016658-00001 | 1953716 |
| 06/30/2011 | MMV | Michele Osbeck | 3.90 | 487.50 | Interoffice conference regarding position statement and rebuttal. Started preparing rebuttal. Interoffice conference regarding rebuttal. Research on DUI not in scope of employment. | 016658-00001 | 1953761 |
| 07/01/2011 | MMV | Michele Osbeck | 1.50 | 187.50 | Continued researching DUI outside scope of employment. | 016658-00001 | 1959947 |
| 07/05/2011 | MMV | Michele Osbeck | 2.20 | 275.00 | Continued researching cases for preparing rebuttal. Continued preparing rebuttal. | 016658-00001 | 1959962 |
| 07/08/2011 | MMV | Michele Osbeck | 3.50 | 437.50 | Continued research and preparing rebuttal. Telephone call to client regarding information to prepare rebuttal. Conference with JRT regarding case going to TCB. | 016658-00001 | 1959978 |
| | | UNBILLED TOTALS: WORK: | 37.70 | 6,143.00 | 34 records | | |
| | | UNBILLED TOTALS: BILL: | 37.70 | 6,143.00 | | | |
| | | GRAND TOTALS: WORK: | 37.70 | 6,143.00 | 34 records | | |
| | | GRAND TOTALS: BILL: | 37.70 | 6,143.00 | | | |

Billed and Unbilled Recap Of Cost Detail - [015658-00001 - Diaz, Julie vs. Saucon Valley Manor, Inc.]    Page 1

Client:015658 - Diaz, Julie  10/5/2011 12:51:11 PM

| Date | Initials | Name/Invoice Number | Code | Quantity | Rate | Amount | Description | Cost Index |
|---|---|---|---|---|---|---|---|---|
| 10/16/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 04 | 1.00<br>1.00 | 0.44<br>0.44 | 0.44<br>0.44 | Postage charges/Certified Mail | 3897995 |
| 10/16/2010<br>07/15/2011 | TCB | Tiffanie Conway Benfer<br>Invoice=316160 | 04 | 1.00<br>1.00 | 1.22<br>1.22 | 1.22<br>1.22 | Postage charges/Certified Mail | 3897996 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 4.00<br>4.00 | 0.20<br>0.20 | 0.80<br>0.80 | Photocopies | 3709222 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709223 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 2.00<br>2.00 | 0.20<br>0.20 | 0.40<br>0.40 | Photocopies | 3709224 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709225 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 2.00<br>2.00 | 0.20<br>0.20 | 0.40<br>0.40 | Photocopies | 3709226 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709227 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709228 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709229 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709230 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 9.00<br>9.00 | 0.20<br>0.20 | 1.80<br>1.80 | Photocopies | 3709231 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709232 |
| 10/15/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3709233 |
| 10/21/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3727217 |
| 10/21/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3727218 |
| 10/21/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 9.00<br>9.00 | 0.20<br>0.20 | 1.80<br>1.80 | Photocopies | 3727219 |
| 10/21/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3727220 |
| 10/25/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 04 | 1.00<br>1.00 | 0.44<br>0.44 | 0.44<br>0.44 | Postage charges/Certified Mail | 3713854 |
| 10/25/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3727221 |
| 10/25/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3727222 |
| 10/25/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3727223 |
| 11/01/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3734793 |
| 11/05/2010<br>07/15/2011 | TCB | Tiffanie Conway Benfer<br>Invoice=316160 | 04 | 1.00<br>1.00 | 3.32<br>3.32 | 3.32<br>3.32 | Postage charges/Certified Mail | 3729726 |
| 11/05/2010<br>07/15/2011 | JR | Joanne Rathgeber<br>Invoice=316160 | 02 | 1.00<br>1.00 | 0.20<br>0.20 | 0.20<br>0.20 | Photocopies | 3738772 |
| 11/05/2010<br>07/15/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738773 |

Billed and Unbilled Recap Of Cost Detail - [015668-00001 - Diaz, Julie vs. Saucon Valley Manor, Inc.]
Client:015668 - Diaz, Julie    10/5/2011 12:51:11 PM

| Date | Initials | Name/Invoice Number | Code | Quantity | Rate | Amount | Description | Cost Index |
|---|---|---|---|---|---|---|---|---|
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/05/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738774 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/05/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738775 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/05/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738776 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/05/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738777 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/05/2010 | JR | Joanne Rathgeber | 02 | 32.00 | 0.20 | 6.40 | Photocopies | 3738778 |
| 07/15/2011 | | Invoice=316160 | | 32.00 | 0.20 | 6.40 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 2.00 | 0.20 | 0.40 | Photocopies | 3738779 |
| 07/15/2011 | | Invoice=316160 | | 2.00 | 0.20 | 0.40 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 2.00 | 0.20 | 0.40 | Photocopies | 3738780 |
| 07/15/2011 | | Invoice=316160 | | 2.00 | 0.20 | 0.40 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738781 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738782 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738783 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 2.00 | 0.20 | 0.40 | Photocopies | 3738784 |
| 07/15/2011 | | Invoice=316160 | | 2.00 | 0.20 | 0.40 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 2.00 | 0.20 | 0.40 | Photocopies | 3738785 |
| 07/15/2011 | | Invoice=316160 | | 2.00 | 0.20 | 0.40 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738786 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3738787 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/08/2010 | JR | Joanne Rathgeber | 02 | 2.00 | 0.20 | 0.40 | Photocopies | 3738788 |
| 07/15/2011 | | Invoice=316160 | | 2.00 | 0.20 | 0.40 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 04 | 1.00 | 2.20 | 2.20 | Postage charges/Certified Mail | 3747364 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 2.20 | 2.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753231 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753234 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753236 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 6.00 | 0.20 | 1.20 | Photocopies | 3753238 |
| 07/15/2011 | | Invoice=316160 | | 6.00 | 0.20 | 1.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 6.00 | 0.20 | 1.20 | Photocopies | 3753240 |
| 07/15/2011 | | Invoice=316160 | | 6.00 | 0.20 | 1.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753242 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753244 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753246 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3753248 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |

Billed and Unbilled Recap Of Cost Detail - 015658-00001 - Diaz, Julie vs. Seticon Valley Manor, Inc.  Page 3
Client:015658 - Diaz, Julie   10/5/2011 12:51:11 PM

| Date | Initials | Name/Invoice Number | Code | Quantity | Rate | Amount | Description | Cost Index |
|------|----------|---------------------|------|----------|------|--------|-------------|------------|
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3763250 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 11/22/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3763252 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 12/06/2010 | JR | Joanne Rathgeber | 02 | 3.00 | 0.20 | 0.60 | Photocopies | 3768660 |
| 07/15/2011 | | Invoice=316160 | | 3.00 | 0.20 | 0.60 | | |
| 12/13/2010 | JR | Joanne Rathgeber | 22 | 1.00 | 50.00 | 50.00 | Obtain Medical Records - Vendor: CVS PHARMACY | 3762146 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 50.00 | 50.00 | | |
| | | Voucher=297185 Paid | | | | | Vendor=CVS PHARMACY Balance= .00 Amount= 50.00 | |
| | | | | | | | Check #6566 12/13/2010 | |
| 12/13/2010 | JR | Joanne Rathgeber | 22 | 1.00 | 32.31 | 32.31 | Obtain Medical Records - Vendor: HEALTH PORT | 3762147 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 32.31 | 32.31 | TECHNOLOGIES, LLC | |
| | | Voucher=297167 Paid | | | | | Vendor=HEALTH PORT TECHNOLOGIES, LLC Balance= .00 Amount= | |
| | | | | | | | 32.31 | |
| | | | | | | | Check #6597 12/13/2010 | |
| 12/13/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3776829 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 12/13/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3776830 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 12/28/2010 | JR | Joanne Rathgeber | 04 | 1.00 | 0.88 | 0.88 | Postage charges/Certified Mail | 3760424 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.88 | 0.88 | | |
| 12/28/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3790253 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 12/28/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3790254 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 12/28/2010 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3790255 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 01/03/2011 | JR | Joanne Rathgeber | 22 | 1.00 | 25.00 | 25.00 | Obtain Medical Records - Vendor: STOP & SHOP | 3762429 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 25.00 | 25.00 | SUPERMARKET CO., LLC | |
| | | Voucher=297982 Paid | | | | | Vendor=STOP & SHOP SUPERMARKET CO., LLC Balance= .00 | |
| | | | | | | | Amount= 25.00 | |
| | | | | | | | Check #6631 01/03/2011 | |
| 01/03/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3798749 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 01/03/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3798750 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 01/03/2011 | JR | Joanne Rathgeber | 04 | 1.00 | 0.44 | 0.44 | Postage charges/Certified Mail | 3799379 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.44 | 0.44 | | |
| 02/07/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3837070 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 04/07/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3904245 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 05/16/2011 | JR | Joanne Rathgeber | 04 | 1.00 | 0.44 | 0.44 | Postage charges/Certified Mail | 3942251 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.44 | 0.44 | | |
| 05/16/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3959293 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 05/16/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3959294 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 05/16/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3959295 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 05/16/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 3959296 |
| 07/15/2011 | | Invoice=316160 | | 1.00 | 0.20 | 0.20 | | |
| 07/06/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 4001001 |

Billed and Unbilled Recap Of Cost Detail - [015658-00001 - Diaz, Julie vs. Saucon Valley Manor, Inc.]

Client:015658 - Diaz, Julie   10/5/2011 12:51:11 PM

| Date | Initials | Name/Invoice Number | Code | Quantity | Rate | Amount | Description | Cost Index |
|---|---|---|---|---|---|---|---|---|
| 07/08/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 4001002 |
| 07/08/2011 | JR | Joanne Rathgeber | 02 | 2.00 | 0.20 | 0.40 | Photocopies | 4001003 |
| 07/11/2011 | JR | Joanne Rathgeber | 02 | 1.00 | 0.20 | 0.20 | Photocopies | 4005847 |
| | | UNBILLED TOTALS:  WORK | | | | 1.00 | 4 records | |
| | | UNBILLED TOTALS:  BILL: | | | | 1.00 | | |
| | | BILLED TOTALS:    WORK: | | | | 142.69 | 73 records | |
| | | BILLED TOTALS:    BILL: | | | | 142.69 | | |
| | | GRAND TOTAL:     WORK: | | | | 143.69 | 77 records | |
| | | GRAND TOTAL:     BILL: | | | | 143.69 | | |

**EXHIBIT B**

# Hardwick Collier, LLC

Employment Law and Litigation

179 North Broad St.

Doylestown, PA 18901

Phone: (215) 230-1912   |   Fax: (215) 230-1913

Account Statement

Prepared for Julie Diaz

Re: Diaz, Julie v. Saucon Valley Manor, Inc.

| | |
|---|---|
| Previous Balance | $0.00 |
| Current Charges | $456,981.13 |
| New Balance | $456,981.13 |
| | |
| Adjustments | $0.00 |
| | |
| Payments | $0.00 |
| Now Due | $456,981.13 |
| Trust Account | $0.00 |

# Hardwick Collier, LLC

Employment Law and Litigation

179 North Broad St.

Doylestown, PA 18901

Phone: (215) 230-1912   |   Fax: (215) 230-1913

## INVOICE

Julie Diaz
49 E. Saucon Street
Hellertown, PA 18055
United States

Invoice Date: September 11, 2013
Invoice Number: 10521
Invoice Amount: $456,981.13

## Matter: Diaz, Julie v. Saucon Valley Manor, Inc.

**Attorney's Fees**

| Date | Description | Atty | Hours | Amount |
|---|---|---|---|---|
| 7/5/2011 | Telephone call with J. Diaz about Def. Position Statement | T.C.B. | .30 | $97.50 |
| 7/7/2011 | letter to EEOC; emailed to Frances Watson | H.C.F. | .40 | $38.00 |
| 7/13/2011 | Diaz- Drafting Response to Saucon Valley's Position Statement | T.C.B. | .30 | $97.50 |
| 7/14/2011 | Diaz-Initial Draft Rebuttal Statement; letter to F. Watson regarding request for the right to sue; sent letter out and emailed F. Watson. | T.C.B. | .90 | $292.50 |
| 7/14/2011 | conf Tiff re strategy on rebuttal | V.L.H. | .30 | $120.00 |
| 8/10/2011 | reviewed file and discussion with TCB re: facts; right to sue | H.C.F. | .70 | $66.50 |
| 8/11/2011 | reviewed file and call to EEOC re: status of right to sue | H.C.F. | .40 | $38.00 |
| 8/16/2011 | Discussed status at Case Review Mtg. | T.C.B. | .20 | $65.00 |
| 8/30/2011 | reviewed file; discussion with TCB re: S/L | H.C.F. | .30 | $28.50 |
| 9/20/2011 | Telephone Conversation with client | T.C.B. | .90 | $292.50 |
| 9/20/2011 | reviewed file/facts/defendant's position statement/ID possible witnesses | T.C.B. | 1.30 | $422.50 |
| 9/21/2011 | memo to file re: telephone conversation with client on 9/20/11 | T.C.B. | .40 | $130.00 |
| 9/21/2011 | Researched contact info on Teresa Zoba | T.C.B. | .20 | $65.00 |
| 9/23/2011 | drafted fee agreements for transfer of file from HW | H.C.F. | .30 | No Charge |
| 11/3/2011 | email to Watson at EEOC re: right to sue; email to TCB | H.C.F. | .30 | $28.50 |
| 11/11/2011 | TC with the client; follow up discussion with JC and HF about clients behavior | T.C.B. | .70 | $227.50 |
| 11/11/2011 | Contacted client to update her on the right to sue | T.C.B. | .10 | $32.50 |

| | | | | |
|---|---|---|---|---|
| 11/15/2011 | letter to client with copies of all EEOC documents; discussion with TCB | H.C.F. | .70 | $66.50 |
| 11/17/2011 | dicussion with TCB re: complaint and doctor's records | H.C.F. | .30 | $28.50 |
| 12/9/2011 | Drafting Complaint; Researching ADAAA and Alcoholism; Substantial limit major life activity by alcoholism | T.C.B. | 6.70 | $2,177.50 |
| 12/12/2011 | Researching the three types of ADA claims under the ADAAA; telephone conversation with client; reviewed more facts particularly what happened the day her father died; and the July 16th park incident | T.C.B. | 7.40 | $2,405.00 |
| 1/4/2012 | Drafted letter to client to accompany draft of complaint for her to review and approve | T.C.B. | .20 | $65.00 |
| 1/4/2012 | discussion with TCB re: complaint and filing; status - records from inpatient | H.C.F. | .40 | $38.00 |
| 1/4/2012 | Edited Complaint-Final Review before sending it to the client | T.C.B. | .70 | $227.50 |
| 1/11/2012 | t/call to client re: receipt and review of Complaint | H.C.F. | .10 | $9.50 |
| 1/18/2012 | Edited the Complaint | T.C.B. | .90 | $292.50 |
| 1/18/2012 | Research Whitehall Manor Business Status; Reviewing Handbook | T.C.B. | 1.00 | $325.00 |
| 1/19/2012 | Finished Reviewing Company handbook; | T.C.B. | .50 | $162.50 |
| 1/20/2012 | reviewed federal complaint; revised and completed civil cover sheets for filing | H.C.F. | 1.60 | $152.00 |
| 1/25/2012 | review and edit complaint | J.L.C. | 2.30 | $920.00 |
| 1/25/2012 | Reviewed complaint with JC; discussed other possible claims | T.C.B. | .50 | $162.50 |
| 1/25/2012 | review complaint; research cases on Rehab Act; corr. w/Lamar re: bringing Rehab cases; research on medicare payments to nursing home | J.L.C. | 2.80 | $1,120.00 |
| 1/26/2012 | Final Edits to Complaint; added an additional count and supporting facts | T.C.B. | 3.00 | $975.00 |
| 1/26/2012 | revised Diaz complaint; completed and copied filing docs; letter to court; scanned and copied to CD | H.C.F. | 1.80 | $171.00 |
| 1/30/2012 | updated Diaz pleadings | H.C.F. | .70 | No Charge |
| 2/1/2012 | Researched Judge Gene Pratter-Judge assigned to the case | T.C.B. | .50 | No Charge |
| 2/1/2012 | completed notice of waiver and waivers of service for complaint; letter to OC; sent certified mail | H.C.F. | 1.40 | $133.00 |
| 2/1/2012 | Reviewed letter to counsel to accompany waiver | T.C.B. | .10 | $32.50 |
| 2/7/2012 | FOIA letter to EEOC | H.C.F. | .40 | $38.00 |
| 2/14/2012 | Telephone interview with reporter; reviewed addresses in complaint | T.C.B. | .30 | No Charge |
| 2/16/2012 | Reviewed article about the case in local Easton paper | T.C.B. | .20 | No Charge |
| 2/22/2012 | review complaint | V.L.H. | .40 | No Charge |
| 3/5/2012 | t/call with paralegal for OC re: waivers of service and filing; emailed pdf | H.C.F. | .40 | No Charge |
| 3/28/2012 | t/call with Baker re: Rehabilitation Act Count in Complaint; t/call with TCB | H.C.F. | .40 | $38.00 |
| 3/29/2012 | research Civil Rules for Amendment; drafted | H.C.F. | 2.20 | $209.00 |

| | | | | |
|---|---|---|---|---|
| | amended complaint and cert. of service; letter to court with copy of amended complaint; drafted entry of appearance for JLC; discussion with TCB and JLC | | | |
| 3/29/2012 | amend complaint; review revisions w/TB | J.L.C. | 2.40 | $960.00 |
| 3/30/2012 | t/call TCB re: Amended Complaint and entry of appearance | H.C.F. | .20 | $19.00 |
| 4/12/2012 | Reviewed Defendant's e-filings from today | T.C.B. | .10 | $32.50 |
| 4/12/2012 | review answer | V.L.H. | .30 | $120.00 |
| 4/13/2012 | Reviewed Defendants' Answer | T.C.B. | .40 | $130.00 |
| 4/16/2012 | discussion with TCB re: status and upcoming discovery | H.C.F. | .40 | $38.00 |
| 4/25/2012 | Reviewed file and drafted 26a disclosure | T.C.B. | 1.20 | $390.00 |
| 4/27/2012 | Discussion with Holly about Criminal Record Search | T.C.B. | .20 | $65.00 |
| 5/1/2012 | Letter to client updating her on status of case | T.C.B. | .30 | $97.50 |
| 5/2/2012 | t/call with TCB re: Diaz and Rule 16 conf. | H.C.F. | .20 | No Charge |
| 5/2/2012 | legal research; reviewed ADA case law and FMLA Statute with regard to in treatment program for alcoholism | T.C.B. | 1.50 | $487.50 |
| 5/2/2012 | Reviewed the Defendants Joint Discovery plan and drafted changes/additions; forwarded to Defense counsel | T.C.B. | 1.00 | $325.00 |
| 5/3/2012 | t/call with TCB re: Diaz rule 16 conf. | H.C.F. | .20 | $19.00 |
| 5/4/2012 | t/call with TCB re: Diaz discovery plan; t/call to Costello re: discovery plan and emails | H.C.F. | .40 | $38.00 |
| 5/4/2012 | Reviewed Counsel's questions about my edits to the Discovery plan and responded | T.C.B. | .20 | $65.00 |
| 5/7/2012 | formatted rule 26(a) disclosures; drafted Rule 16 conference reported and faxed to chambers; emailed Disclosures to OC | H.C.F. | 1.00 | $95.00 |
| 5/7/2012 | Signed Joint Discovery Plan; Reviewed and Signed 26(a) Disclosure; Reviewed and Signed Conf. Report | T.C.B. | .40 | No Charge |
| 5/7/2012 | Reviewed Defendant's 26(a) Disclosures | T.C.B. | .20 | $65.00 |
| 5/8/2012 | t/call with client re: financial docs; updated pleadings | H.C.F. | .70 | No Charge |
| 5/8/2012 | Reviewing clients documents to work on damage calculations; outlining issues to cover at the Rule 16 conf. | T.C.B. | 2.50 | $812.50 |
| 5/8/2012 | Email to J. Baker regarding deficiency with Defendant's 26(a) Disclosure | T.C.B. | .10 | $32.50 |
| 5/8/2012 | Telephone Conversation with client about lost pay | T.C.B. | .50 | $162.50 |
| 5/8/2012 | Discussion with VLH about Rule 16 and settlement discussions | T.C.B. | .10 | $32.50 |
| 5/8/2012 | conf Tiff re settlement strategy | V.L.H. | .10 | $40.00 |
| 5/9/2012 | discussion with Keane and TCB re: criminal record; t/call with client and pulled driving record; scanned and copied financial documents to server; reviewed financial docs and damages with TCB for Rule 16 conference | H.C.F. | 2.40 | $228.00 |

| | | | | |
|---|---|---|---|---|
| 5/9/2012 | Prep for Rule 16 Conf. Research; Damages calculations; reviewed paystubs and w-2 for 2010 through 2012 Criminal Record Research | T.C.B. | 4.00 | $1,300.00 |
| 5/10/2012 | t/call with TCB re: Diaz settlement and Rule 16 | H.C.F. | .20 | No Charge |
| 5/10/2012 | Attended Rule 16 Conf.; travel time | T.C.B. | 3.00 | $975.00 |
| 5/14/2012 | Reviewed the Eastern District's Pilot Project Discovery Outline | T.C.B. | .50 | No Charge |
| 5/16/2012 | discussion with TCB re: status; scheduling order | H.C.F. | .30 | No Charge |
| 5/17/2012 | Reviewed Judge Pratter's Scheduling Order | T.C.B. | .20 | $65.00 |
| 5/21/2012 | Drafting written Discovery | T.C.B. | 2.50 | $812.50 |
| 5/22/2012 | researched amount of federal interrogatories per defendant; discussion with TCB | H.C.F. | .40 | $38.00 |
| 5/22/2012 | Drafting written Discovery | T.C.B. | 4.50 | $1,462.50 |
| 5/24/2012 | revised and formatted discovery requests; discussion with TCB re: requests | H.C.F. | 2.10 | No Charge |
| 5/24/2012 | Finished first Draft of Written Discovery | T.C.B. | 2.50 | $812.50 |
| 5/25/2012 | revised and reformatted discovery requests; emailed to OC | H.C.F. | 1.40 | No Charge |
| 5/25/2012 | discussion with TCB re: requests for admissions - separate defendant discovery | H.C.F. | .40 | $38.00 |
| 5/29/2012 | research into alcoholism as disability under ADA, discussion with TCB re: accomodation and employers perception of disability | H.C.F. | 1.20 | $114.00 |
| 5/29/2012 | Research Prima Facia ADAA and FMLA claims to make sure we have all elements covered | T.C.B. | 6.00 | $1,950.00 |
| 5/30/2012 | Research ADA Retaliation Claim | T.C.B. | .70 | No Charge |
| 5/31/2012 | discussion with TCB re: ADA retaliation claim and research regarding alcoholism as disability | H.C.F. | .40 | No Charge |
| 6/1/2012 | updated pleadings; discussion with TCB re: research | H.C.F. | .80 | No Charge |
| 6/1/2012 | discussion with TCB re: medical records from rehab; reviewed file | H.C.F. | .70 | $66.50 |
| 6/12/2012 | reviewed medical file | H.C.F. | .40 | $38.00 |
| 6/13/2012 | reviewed discovery requests to determine documents requested | H.C.F. | .60 | $57.00 |
| 6/13/2012 | discussion with TCB; call to Keystone Center re: records | H.C.F. | .50 | $47.50 |
| 6/14/2012 | Typing up Interrogatories and Request to Produce to be answered. | H.C.F. | 2.00 | No Charge |
| 6/14/2012 | reviewed Keystone records; left message at Keystone | H.C.F. | .40 | $38.00 |
| 6/15/2012 | Drafting responses to Defendants' written discovery | T.C.B. | 5.00 | $1,625.00 |
| 6/21/2012 | type interrogatories; organize file - Emily | H.C.F. | 1.50 | No Charge |
| 6/21/2012 | Telephone conversation with client to review written discovery request; drafting responses to Def. written discovery request | T.C.B. | 2.50 | $812.50 |
| 6/21/2012 | letter to Northampton D&A with subpoena; drafted subpoena | H.C.F. | 1.20 | $114.00 |
| 6/22/2012 | Answering written discovery; reviewing responsive documents | T.C.B. | 3.00 | $975.00 |
| 6/22/2012 | interrogatories - Emily | H.C.F. | 1.00 | No Charge |
| 6/22/2012 | discussion with TCB re: medical authorizations; | H.C.F. | .70 | $66.50 |

| | | | | |
|---|---|---|---|---|
| | subpoena and email from Northampton County; reviewed file | | | |
| 6/22/2012 | Drafted letter to client about documents I need from her and releases that I need | T.C.B. | .20 | $65.00 |
| 6/22/2012 | Telephone conversation with Ms. Carr at the North Hampton Drug and Alcohol Program about subpoena | T.C.B. | .30 | $97.50 |
| 6/25/2012 | Outlining Depositions for Fox and Stroble; Answered Defendant's RTP | T.C.B. | 7.00 | $2,275.00 |
| 6/25/2012 | Reviewed clients documents received in mail today | T.C.B. | .30 | $97.50 |
| 6/26/2012 | Finished updating outline and notes from telephone conversation with client last week | T.C.B. | 1.50 | $487.50 |
| 6/26/2012 | scanned and bates stamped documents for production; discussion with TCB re: medical records | H.C.F. | 1.20 | No Charge |
| 6/26/2012 | Finished pulling documents for document production | T.C.B. | .50 | $162.50 |
| 6/27/2012 | Telephone conversation with client - discussed ARD records about inpatient treatment | T.C.B. | .70 | $227.50 |
| 6/27/2012 | discussion with TCB re: medical authorization and witness | H.C.F. | .40 | $38.00 |
| 6/28/2012 | discussion with TCB re: medical authorizations | H.C.F. | .20 | $19.00 |
| 6/29/2012 | revised answers to discovery; letter to client with answers to review; drafted verification | H.C.F. | 1.60 | $152.00 |
| 6/29/2012 | Finished up answers to written discovery to send draft to client; letter to client with instructions about written discovery | T.C.B. | 3.00 | $975.00 |
| 7/5/2012 | discussion with TCB and VLH re: status; document production | H.C.F. | .50 | $47.50 |
| 7/6/2012 | copy and bates stamp document production | H.C.F. | .70 | No Charge |
| 7/9/2012 | drafted Stipulation of Protective Order | H.C.F. | 4.00 | $380.00 |
| 7/10/2012 | Letter to Baker regarding overdue written discovery and 26(a) disclosure | T.C.B. | .40 | $130.00 |
| 7/11/2012 | t/call to Riverside re: records; faxed authorization; formatted letter to Baker and emailed | H.C.F. | .90 | No Charge |
| 7/16/2012 | t/call with Riverside re: documents; discussion with TCB | H.C.F. | .30 | $28.50 |
| 7/17/2012 | reviewed medical records from Riverside; made notations for TCB | H.C.F. | .80 | $76.00 |
| 7/19/2012 | Reviewed client's medical records from outpatient treatment | T.C.B. | .50 | $162.50 |
| 7/20/2012 | printed doc production and discovery responses; updated pleadings; bindered and reviewed doc production | H.C.F. | 1.70 | No Charge |
| 7/20/2012 | Spoke with client about sending back the signed verification for written discovery responses | T.C.B. | .10 | $32.50 |
| 7/20/2012 | Email to J. Baker about Stipulation of Confid Agreement | T.C.B. | .10 | $32.50 |
| 7/20/2012 | Began Reviewing Defendant Written Discovery Responses | T.C.B. | 1.50 | $487.50 |
| 7/23/2012 | email to TCB re: Diaz verification; discussion re: discovery and confidentiality order | H.C.F. | .20 | $19.00 |

| 7/24/2012 | discussion with TCB re: discovery requests and confidentiality order | H.C.F. | .40 | $38.00 |
| 7/25/2012 | letter to Baker with discovery responses; scanned and saved responses; bates stamped doc production; emailed all to Baker | H.C.F. | 1.50 | No Charge |
| 7/25/2012 | Redacted employer ID from all written discovery; drafted letter to J. Baker asking for Stipulation of Confidentiality Agreement; Edited Interrogatories responses based on recent conversation with the client | T.C.B. | 2.00 | $650.00 |
| 8/2/2012 | Finished Reviewing Defendants' Written Discovery Responses, Adding Information to time Line according to written discovery; Outlining Supplemental Discovery and Issues to Discuss with J. Diaz | T.C.B. | 4.50 | $1,462.50 |
| 8/3/2012 | Document Review- Outlining questions for Depositions of Defendants; Telephone Conversation with the client | T.C.B. | 7.30 | $2,372.50 |
| 8/3/2012 | discussion with TCB re: Keystone records; affidavits to EEOC and witnesses; t/call to Keystone re: fax confirmation; completed authorization | H.C.F. | .80 | $76.00 |
| 8/8/2012 | Letter to Baker Outlining Insufficiency in Def. Discovery Responses | T.C.B. | 2.50 | $812.50 |
| 8/8/2012 | formatted letter to Baker | H.C.F. | .30 | No Charge |
| 8/8/2012 | Created cast of Characters; Updated timeline; Worked on outline of things to cover with client on the 14th | T.C.B. | 1.00 | $325.00 |
| 8/13/2012 | Reviewed what I need to cover with the client Julie tomorrow at our meeting | T.C.B. | .60 | $195.00 |
| 8/14/2012 | formatted and sent letter to Baker; discussion with TCB re: medical records | H.C.F. | .80 | No Charge |
| 8/14/2012 | Meeting with client to review Def. Document Production; supplemented timeline and questions for deps | T.C.B. | 5.50 | $1,787.50 |
| 8/14/2012 | Drafted letter to Keystone about missing fax coversheet | T.C.B. | .40 | $130.00 |
| 8/15/2012 | formatted letter to KeyStone with authorization re: faxed letter to empoyer; discussion with TCB | H.C.F. | .80 | $76.00 |
| 8/22/2012 | discussion with TCB re: fax confirmation from Keystone; copied documents; discussed letters to Baker | H.C.F. | .60 | $57.00 |
| 8/22/2012 | Reviewed letter from Def counsel about discovery request; reviewed documents reference in letter and drafted response. | T.C.B. | .60 | $195.00 |
| 8/22/2012 | Reviewed document from Keystone we received today; drafted letter to counsel to send with supplemental doc production of fax coversheet | T.C.B. | .40 | $130.00 |
| 8/23/2012 | letters to Baker with document production and attachment; bates stamped document | H.C.F. | 1.10 | $104.50 |
| 8/31/2012 | formatted and mailed letter to Baker re: depositions; discussion re: discovery responses with TCB | H.C.F. | .60 | No Charge |

| | | | | |
|---|---|---|---|---|
| 9/14/2012 | Email to J.Baker Confirming Deposition Dates | T.C.B. | .20 | $65.00 |
| 9/17/2012 | drafted dep notices for Hirsch, Fox and Atiyeh with letter to Baker | H.C.F. | 1.10 | $104.50 |
| 9/24/2012 | updated pleadings; discussion re: deps with TCB; got CR | H.C.F. | .90 | No Charge |
| 9/27/2012 | drafted supplemental RTP, Rogs and cert. of service; emailed all to Baker | H.C.F. | 1.40 | $133.00 |
| 10/1/2012 | updated pleadings | H.C.F. | .70 | No Charge |
| 10/3/2012 | Review email for J. Baker about dates for Deps; called M. Stroble to try to schedule dep; Called client to confirm the date of her deposition and date to meet to prepare her for deposition | T.C.B. | .30 | $97.50 |
| 10/4/2012 | updated file | H.C.F. | .40 | No Charge |
| 10/11/2012 | Email J. Baker about letter sent Aug 23rd letter with discovery questions that he has never responded to | T.C.B. | .20 | $65.00 |
| 10/11/2012 | Email J. Baker about M. Stroble's deposition on November 7th | T.C.B. | .10 | $32.50 |
| 10/11/2012 | Spoke with M. Stroble about scheduling her deposition | T.C.B. | .10 | $32.50 |
| 10/11/2012 | Email to holly to send subpeona to M. Stroble with the updated address | T.C.B. | .10 | $32.50 |
| 10/15/2012 | drafted subpoena Stroble; call to CR | H.C.F. | .70 | $66.50 |
| 10/16/2012 | discussion with TCB re: Stroble subpoena; deposition schedule | H.C.F. | .40 | $38.00 |
| 10/17/2012 | Drafted subpoena for M. Stroble | T.C.B. | .10 | $32.50 |
| 10/19/2012 | Updated Stroble subpoena; organized file | A.H. | .10 | $9.50 |
| 10/22/2012 | Dep Prep for C. Fox | T.C.B. | 1.30 | $422.50 |
| 10/22/2012 | discussion with TCB re: Stroble subpoena and upcoming deps | H.C.F. | .30 | $28.50 |
| 10/23/2012 | revised Stroble subpoena; letter to Stroble; copied Baker | H.C.F. | .60 | $57.00 |
| 10/23/2012 | Mailed Stroble Subpoena | A.H. | .20 | $19.00 |
| 10/24/2012 | Outlining Fox Deposition Outline,Pulling documents for Deposition,email to Defense counsel requesting 2009 Handbook we never received, emailed to Defense counsel requesting two more depositions on November 7th, outlining issues to discuss with Julie during our Dep Prep on the 30th. | T.C.B. | 6.60 | $2,145.00 |
| 10/26/2012 | Dep Prep for C. Fox | T.C.B. | 5.50 | $1,787.50 |
| 11/2/2012 | Dep Prep | T.C.B. | 4.00 | $1,300.00 |
| 11/5/2012 | Dep prep with client | T.C.B. | 4.00 | $1,300.00 |
| 11/5/2012 | Dep Prep Fox | T.C.B. | 4.00 | $1,300.00 |
| 11/5/2012 | met with TCB and client; reviewed documents; call to CR | H.C.F. | .60 | $57.00 |
| 11/5/2012 | Made copies and organized docs for Diaz dep | A.H. | .80 | $76.00 |
| 11/6/2012 | Dep Prep Outlining | T.C.B. | 5.00 | $1,625.00 |
| 11/7/2012 | Dep Prep Outlining | T.C.B. | 1.50 | $487.50 |
| 11/7/2012 | Deposed Malissa Stroble; travel time to Allentown | T.C.B. | 5.50 | $1,787.50 |
| 11/7/2012 | Text messages to client Initial thoughts regarding Stroble Dep | T.C.B. | .10 | $32.50 |
| 11/8/2012 | Drafted/prepped email correspondence to opposing | A.H. | .20 | $19.00 |

| | | | | |
|---|---|---|---|---|
| | counsel | | | |
| 11/8/2012 | Telephone Conversation with client Debrief on M. Stroble deposition | T.C.B. | .30 | $97.50 |
| 11/8/2012 | Letter to J. Baker follow up regarding documents Defendants still need to produce | T.C.B. | .20 | $65.00 |
| 11/8/2012 | Deposition notices for 3 deps we rescheduled for early december | T.C.B. | .20 | $65.00 |
| 11/9/2012 | typed up atty notes; made copies for upcoming depositions; updated pleadings and correspondence | A.H. | .80 | No Charge |
| 11/11/2012 | Drafting Supplemental Interrogatories | T.C.B. | 4.50 | $1,462.50 |
| 11/12/2012 | updated pleadings file | H.C.F. | .60 | No Charge |
| 11/12/2012 | letter to client re: amended dep date | H.C.F. | .40 | $38.00 |
| 11/15/2012 | discussion with TCB re: follow up with Baker | H.C.F. | .20 | $19.00 |
| 11/16/2012 | updated pleadings | H.C.F. | .40 | No Charge |
| 11/16/2012 | letter to Baker re: overdue documents; t/call with Stroble | H.C.F. | .80 | $76.00 |
| 11/19/2012 | reviewed stipulation for protective order; verified case law | H.C.F. | .70 | $66.50 |
| 11/19/2012 | Dep Prep with Client for Deposition on November 20th | T.C.B. | 2.00 | $650.00 |
| 11/19/2012 | Dep PRep for C. Fox; Reviewed documents for J. Diaz's Dep tomorrow; Reviewed and edited stipulation and forwarded it to John Baker | T.C.B. | 4.40 | $1,430.00 |
| 11/19/2012 | Copied docs for dep. | A.H. | .20 | $19.00 |
| 11/20/2012 | Defending Julie's Deposition and travel time | T.C.B. | 8.50 | $2,762.50 |
| 11/20/2012 | t/call with TCB re: protective order; printed order | H.C.F. | .20 | $19.00 |
| 11/21/2012 | discussion with TCB re: Diaz dep | H.C.F. | .30 | $28.50 |
| 11/26/2012 | updated pleadings | H.C.F. | .60 | No Charge |
| 11/26/2012 | filed protective order | H.C.F. | .50 | No Charge |
| 11/27/2012 | bates stamped and marked confidential docs for production | H.C.F. | .70 | $66.50 |
| 12/3/2012 | Dep Prep for Hirsh and Nimita | T.C.B. | 6.50 | $2,112.50 |
| 12/4/2012 | Revamped Dep outlines for C. Hirsch and Nimita Kapoor's Depositions | T.C.B. | 3.00 | $975.00 |
| 12/4/2012 | discussion with TCB re: deposition of Fox and documents needed | H.C.F. | .50 | $47.50 |
| 12/4/2012 | meet with Tiffanie re deposition strategies | V.L.H. | .40 | $160.00 |
| 12/4/2012 | Dep Prep for C. Fox deposition | T.C.B. | .80 | $260.00 |
| 12/4/2012 | Fox's Deposition | T.C.B. | 3.00 | $975.00 |
| 12/4/2012 | Strategizing with VLH and JC about Deps on 12-5-12 | T.C.B. | .40 | $130.00 |
| 12/5/2012 | deposition of Carolyn Hirsch | H.C.F. | 3.00 | No Charge |
| 12/5/2012 | Dep Prep and Deps for Hirsch and Nimita Kapoor-Follow-up notes/ strategizing etc | T.C.B. | 6.00 | $1,950.00 |
| 12/21/2012 | organized dep materials & both plain./def. doc production | A.H. | .30 | $28.50 |
| 12/26/2012 | Summarizing Belcak Deposition in preparation for Trial; started letter to John Baker regarding documents Defendant has not produced | T.C.B. | 7.50 | $2,437.50 |
| 12/27/2012 | Finished Summarizing Cindy Belcak's Deposition; Summarized first half of Hirsch Depositions; Id | T.C.B. | 7.00 | $2,275.00 |

| | discrepancies between the two depositions. | | | |
|---|---|---|---|---|
| 12/27/2012 | Email Correpondence with J. Baker about missing notes used to write Cindy Fox's Affidavit for the EEOC | T.C.B. | .20 | $65.00 |
| 12/28/2012 | t/call with JLC re: SJ Motion; email to TCB | H.C.F. | .40 | No Charge |
| 12/28/2012 | Finished Summarizing C. Hirsch's Deposition; Created outline for July 2010 based on Dep testimony that identifies who knew what and when about Julie's need for Rehab and going into Rehab ID Dep transcript page and inconsistencies | T.C.B. | 8.00 | $2,600.00 |
| 12/29/2012 | review SJ papers; email Tiff re SJ strategy | V.L.H. | 1.00 | $400.00 |
| 12/29/2012 | Reviewed SJ; Email discussion with VLH strategizing response; Emails discussions with HF about deadline to respond | T.C.B. | 1.00 | $325.00 |
| 12/31/2012 | discussion with TCB re: SJ Motion; drafted Order and Cert.; Formatted Brief and Table of Contents | H.C.F. | 1.00 | $95.00 |
| 12/31/2012 | Summarized JD dep transcript | A.H. | 2.50 | $237.50 |
| 12/31/2012 | dep summary for stroble dep; search for 7/16/10 citation | H.C.F. | 3.50 | $332.50 |
| 12/31/2012 | conf Tiff re SJ strategy | V.L.H. | .20 | $80.00 |
| 12/31/2012 | Discussion with VLH Strategized response to SJ | T.C.B. | .20 | $65.00 |
| 12/31/2012 | Summaring "Nemo's" deposition; identifying inconsistencies in her deposition testimony with Carolyn Hirsch and Cindy Fox Deposition Testimony | T.C.B. | 5.50 | $1,787.50 |
| 1/1/2013 | Drafting Response to Def. SJ | T.C.B. | 2.00 | $650.00 |
| 1/1/2013 | draft language for brief on SJ standard; email Tiff re same | V.L.H. | .40 | $160.00 |
| 1/2/2013 | Cont'd to summarize JD dep transcript | A.H. | 3.00 | $285.00 |
| 1/2/2013 | t/calls with TCB re: dep summaries and SJ Response | H.C.F. | .30 | $28.50 |
| 1/2/2013 | finished Stroble dep summary | H.C.F. | 3.50 | $332.50 |
| 1/2/2013 | Outlining SJ response and began drafting response to Def. SJ | T.C.B. | 5.50 | $1,787.50 |
| 1/3/2013 | Drafting Response to Def. SJ | T.C.B. | 5.00 | $1,625.00 |
| 1/3/2013 | cont'd to summarize JD dep transcript; prepared correspondence to J. Pratter | A.H. | .60 | $57.00 |
| 1/4/2013 | Drafting Response to Def. SJ | T.C.B. | 6.00 | $1,950.00 |
| 1/4/2013 | Finished summary of JD dep transcript; faxed/emailed correspondence to J. Pratter and Baker | A.H. | 1.50 | $142.50 |
| 1/5/2013 | Drafting Response to Def. SJ | T.C.B. | 3.50 | $1,137.50 |
| 1/6/2013 | Drafting Response to Def. SJ | T.C.B. | 5.00 | $1,625.00 |
| 1/7/2013 | discussion with TCB re: Diaz and dep citations | H.C.F. | .40 | $38.00 |
| 1/7/2013 | Drafting Response to Def. SJ | T.C.B. | 9.50 | $3,087.50 |
| 1/8/2013 | pull summary judgement research; copy and provide to GH and TB | J.L.C. | .60 | $240.00 |
| 1/8/2013 | Answering Def. SJ | T.C.B. | 7.50 | $2,437.50 |
| 1/9/2013 | Edited cites in brief | A.H. | 3.00 | $285.00 |
| 1/9/2013 | discussion with TCB re: fact section of memo and cites to record | H.C.F. | .50 | $47.50 |
| 1/9/2013 | Drafting Response to Def. SJ | T.C.B. | 7.00 | $2,275.00 |

| Date | Description | Initials | Hours | Amount |
|---|---|---|---|---|
| 1/9/2013 | check Pratter rules re SJ motion; email Tiff | V.L.H. | .20 | $80.00 |
| 1/10/2013 | discuss motion to strike | J.L.C. | .40 | No Charge |
| 1/10/2013 | revised and faxed letter to Judge Pratter; emailed letter to Baker | H.C.F. | .40 | No Charge |
| 1/10/2013 | Drafting Response to Def. SJ and Editing SJ Response; Letter to the court requesting clarification as to when Pre-Trial Memo is Due; Reviewed Motion to Dismiss SJ | T.C.B. | 9.00 | $2,925.00 |
| 1/10/2013 | Edited cites in brief; started responses to facts in amended MSJ | A.H. | 5.50 | $522.50 |
| 1/10/2013 | drafted and formatted motion to strike, order, memo, and cert; discussion with TCB and VLH re: motion; filed with court | H.C.F. | 1.90 | $180.50 |
| 1/10/2013 | revised facts section of memo in oppostion to SJ into numbered paragraphs; discussion with TCB | H.C.F. | 1.20 | $114.00 |
| 1/10/2013 | conf Tiff and Holly re motion to strike; review motion | V.L.H. | .40 | $160.00 |
| 1/11/2013 | Worked on responses to facts in Def. amended MSJ | A.H. | 5.00 | $475.00 |
| 1/11/2013 | Editing SJ Response | T.C.B. | 7.30 | $2,372.50 |
| 1/12/2013 | Editing Response to SJ | T.C.B. | 1.00 | $325.00 |
| 1/13/2013 | Editing Response to SJ | T.C.B. | 2.00 | $650.00 |
| 1/13/2013 | review order from court re SJ motion; conf Tiff re strategy | V.L.H. | .50 | $200.00 |
| 1/14/2013 | Updated pleadings; drafted client correspondence; checked cites in brief | A.H. | 3.50 | $332.50 |
| 1/14/2013 | Edited SJ Response/Added to Last Pretext Arguements | T.C.B. | 1.50 | $487.50 |
| 1/14/2013 | reviewed and revised oppos. to SJ Brief | H.C.F. | 3.50 | $332.50 |
| 1/15/2013 | Answering Def. recitation of facts attached to Amended SJ | T.C.B. | 3.20 | $1,040.00 |
| 1/16/2013 | reviewed and revised opposition to SJ Motion brief | H.C.F. | 2.00 | $190.00 |
| 1/16/2013 | Finished drafting answer to Defendants recitation of facts; made additions to the SJ Reponse | T.C.B. | 6.70 | $2,177.50 |
| 1/17/2013 | reviewed and revised plaintiff's response to SJ Motion facts | H.C.F. | 1.50 | $142.50 |
| 1/17/2013 | Edited Brief- ADA Argument | T.C.B. | .30 | $97.50 |
| 1/20/2013 | read defendants' SJ papers and outline response | V.L.H. | 1.60 | No Charge |
| 1/21/2013 | discussion with TCB re: deadline and status of opposition brief to SJ | H.C.F. | .30 | $28.50 |
| 1/22/2013 | review and edit SJ brief; review SJ record | V.L.H. | 5.50 | No Charge |
| 1/23/2013 | Edit and revise SJ brief; review record | V.L.H. | 2.50 | No Charge |
| 1/23/2013 | draft and revise fact section of SJ brief | V.L.H. | 1.30 | No Charge |
| 1/24/2013 | Review record; draft and revise SJ brief | V.L.H. | 6.00 | No Charge |
| 1/24/2013 | revise SJ brief | V.L.H. | 1.60 | No Charge |
| 1/24/2013 | t/call with Pratter's secretary re: magistrate judge; discussion with TCB | H.C.F. | .30 | $28.50 |
| 1/24/2013 | Case Law Research FMLA  Satisfying notification requirement; employers policy that contradict FMLA DOL regs | T.C.B. | 1.50 | $487.50 |
| 1/25/2013 | reviewed and revised facts section of Oppos. to SJ | H.C.F. | 1.20 | $114.00 |
| 1/25/2013 | Reviewing VLH's Edits to the Brief; began filling in | T.C.B. | 4.00 | $1,300.00 |

| | holes in brief | | | |
|---|---|---|---|---|
| 1/28/2013 | revised Order for SJ Motion; revised and formatted table of contents | H.C.F. | 1.50 | $142.50 |
| 1/28/2013 | Edited Brief in response to Def. SJ | T.C.B. | 7.00 | $2,275.00 |
| 1/29/2013 | Editing Brief in Response to SJ; Edited Response to Def Numbered Fact Paragraphs | T.C.B. | 5.00 | No Charge |
| 1/29/2013 | reviewed Oppos. to SJ Brief; revised exhibits, revised table of contents; review facts for exhibits; added cites to brief | H.C.F. | 3.50 | $332.50 |
| 1/29/2013 | edited plaintiff responses to facts in amended MSJ per TB | A.H. | .50 | $47.50 |
| 1/29/2013 | edit SJ brief | V.L.H. | 6.50 | $2,600.00 |
| 1/30/2013 | pulled and copied exhibits for oppos to SJ Motion; revised exhibits list and table of contents; reviewed brief | H.C.F. | 3.00 | $285.00 |
| 1/30/2013 | edit and finalize summary judgment brief | V.L.H. | 6.80 | $2,720.00 |
| 1/30/2013 | review/revise SJ brief | J.L.C. | 2.80 | $1,120.00 |
| 1/31/2013 | Organized and prepped response to SJ docs for postage to J. Pratter; dropped off at FedEx for binding; emailed VH correspondence to JB | A.H. | .60 | $57.00 |
| 1/31/2013 | copied dep transcripts for exhibits to oppos. papers for SJ; revised TOC and exhibits; reviewed Memo; filed ECF | H.C.F. | 4.50 | $427.50 |
| 1/31/2013 | review and revise brief | J.L.C. | 3.80 | $1,520.00 |
| 1/31/2013 | Final edits of SJ brief; review and revise TOC; review and edit response to statement of facts; review and revise order and cert of service; review and check exhibits | V.L.H. | 5.30 | $2,120.00 |
| 2/3/2013 | draft memo re trial preparation strategy; review Julie Diaz deposition transcript re damage analysis | V.L.H. | 1.60 | $640.00 |
| 2/4/2013 | Drafting Pre Trial Memo | T.C.B. | 4.00 | $1,300.00 |
| 2/5/2013 | Met with client to discuss current status of the case and what our plans were in the next 8 weeks in preparation for trial | T.C.B. | 1.60 | $520.00 |
| 2/5/2013 | Working on Pre-trial memo | T.C.B. | 3.00 | $975.00 |
| 2/5/2013 | meet with client and TCB re trial prep and strategy | V.L.H. | 1.50 | $600.00 |
| 2/11/2013 | discussion with TCB re: status of pre-trial memo and SJ Motion | H.C.F. | .30 | $28.50 |
| 2/11/2013 | Pre-Trial Memo/ Outlining Issues to Cover with Louise | T.C.B. | 8.00 | $2,600.00 |
| 2/12/2013 | Pre-Trial Memo- Evidence that we want to exclude; Damage sheet; legal research re Interference Argument; pulling case law to support failure to follow DOL Regs can constitute Interference | T.C.B. | 2.00 | $650.00 |
| 2/12/2013 | Research DOL Regs for FMLA | T.C.B. | .80 | $260.00 |
| 2/13/2013 | Contacted J. Rice's Chambers about obtaining a date certain, Left message J. Baker; reviewed with VLH J. Rice's schedule | T.C.B. | .30 | $97.50 |
| 2/13/2013 | letter to client confirming meeting with Louise Lipman on March 3rd | T.C.B. | .20 | $65.00 |
| 2/13/2013 | Pulling quotes from SJ and compiling them | T.C.B. | .50 | $162.50 |

| Date | Description | Initials | Hours | Amount |
|---|---|---|---|---|
| | according each witness in preparation for trial | | | |
| 2/13/2013 | conf TCB re strategy and Rice; tel calls John Baker; file memo re Baker | V.L.H. | 1.20 | $480.00 |
| 2/13/2013 | Email to J. Baker about Outstanding Discovery | T.C.B. | .10 | $32.50 |
| 2/14/2013 | discussion with TCB re: Diaz and status; drafted Consent to magistrate | H.C.F. | 1.10 | $104.50 |
| 2/19/2013 | Discussion with VLH and JC about rescheduling Louise Lipman for late April | T.C.B. | .10 | $32.50 |
| 2/19/2013 | Called client cancelled meeting with Louise Lipman | T.C.B. | .10 | $32.50 |
| 2/19/2013 | Telephone conversation with J. Rice's chambers scheduling telephone conf for 2/20/13 to discuss deadlines for trial etc.; called Defendant's counsel to confirm date and time; called Chambers back with date and time. | T.C.B. | .40 | $130.00 |
| 2/20/2013 | Telephone Conf. with Judge Rice and J.Baker regarding trial schedule | T.C.B. | .20 | $65.00 |
| 2/20/2013 | Pulling quotes from SJ and all deleted text from SJ to create document for trial | T.C.B. | 3.00 | $975.00 |
| 2/21/2013 | Letter to Client about telephone conf. with J. Rice on 2/20/13 | T.C.B. | .20 | $65.00 |
| 2/21/2013 | Reviewed email from J. Rice's law clerk | T.C.B. | .10 | $32.50 |
| 2/21/2013 | review Rice procedures and memo re voir dire questions | V.L.H. | .40 | $160.00 |
| 2/21/2013 | Reviewed Judge Rice's Scheduling Order | T.C.B. | .20 | $65.00 |
| 2/21/2013 | Reviewed Judge Rice's Rules for Jury Questions/Voir Dire/Jury Instructions | T.C.B. | 1.00 | $325.00 |
| 2/22/2013 | reviewed scheduling order; discussion with TCB; converted Rice orders to pdf | H.C.F. | .80 | No Charge |
| 2/22/2013 | Email to J. Baker about Outstanding Discovery | T.C.B. | .20 | $65.00 |
| 2/26/2013 | Reviewed email from J. Baker about suppl. Rog and responded | T.C.B. | .10 | $32.50 |
| 2/28/2013 | organized file | H.C.F. | .50 | No Charge |
| 3/5/2013 | updated pleadings | H.C.F. | .50 | No Charge |
| 3/6/2013 | Reviewed email from Marc Weinstein about his FMLA case against Defendants; looked at Def. answers in our discovery; discussed with VLH and JC recent development | T.C.B. | .80 | $260.00 |
| 3/6/2013 | Initial Review of Def. Answer to Supplemental Discovery; Check discovery binder for certifications; email to J. Baker asking for verifications. | T.C.B. | .90 | $292.50 |
| 3/7/2013 | discussion with TCB re: Diaz; reviewed sanctions | H.C.F. | .60 | $57.00 |
| 3/7/2013 | draft and revise motion to compel; research re Saucon and Whitehall | V.L.H. | 2.70 | $1,080.00 |
| 3/8/2013 | Reviewed letter from J. Baker and Responded via email. | T.C.B. | .20 | $65.00 |
| 3/8/2013 | conf Tiff re corresp from Baker; emails re possible motion; review and revise motion papers | V.L.H. | .60 | $240.00 |
| 3/11/2013 | reviewed letter to Judge Rice; revised; copies of exhibits | H.C.F. | .90 | $85.50 |
| 3/11/2013 | Reviewed the Letter to Judge Rice about | T.C.B. | .40 | $130.00 |

| | Defendant's answer to Interrogatories | | | |
|---|---|---|---|---|
| 3/11/2013 | Research Retaliation Claim- to determine if we will respond to Judge Rice's Order | T.C.B. | .90 | $292.50 |
| 3/11/2013 | pulled corporate information | H.C.F. | .40 | $38.00 |
| 3/11/2013 | tel call OC and court; research re corporations; review and revise letter to court; review exhibits | V.L.H. | 3.00 | $1,200.00 |
| 3/11/2013 | finalize letter to judge; email Morrison and Baker | V.L.H. | .60 | $240.00 |
| 3/12/2013 | Updated pleadings & file | A.H. | .20 | No Charge |
| 3/12/2013 | Reviewed Def. Response to Letter VLH sent to Judge Rice Yesterday | T.C.B. | .30 | $97.50 |
| 3/13/2013 | Edited List Of Plaintiff's Documents for Def.; Drafting Motions In Limine | T.C.B. | 4.00 | $1,300.00 |
| 3/13/2013 | Compiled list of exhibits for pre-trial memo | A.H. | .50 | $47.50 |
| 3/13/2013 | discussion with TCB re: rules for 26(a) and witnesses at trial | H.C.F. | .30 | $28.50 |
| 3/14/2013 | Researched and Drafted Praecipe to Withdrawl Retaliation Claims | T.C.B. | .50 | No Charge |
| 3/14/2013 | conf Tiffanie re strategy on trial issues; prepare for telephone conference with Judge Rice; tel call Court | V.L.H. | 1.20 | $480.00 |
| 3/14/2013 | Prep for Telephone Conf. with Judge Rice | T.C.B. | .50 | $162.50 |
| 3/14/2013 | Telephone Conf. with Judge Rice/VLH and George Morrison | T.C.B. | .20 | $65.00 |
| 3/14/2013 | Sent G. Morrison email confirming what was agreed upon during telephone conf. with Judge Rice | T.C.B. | .40 | $130.00 |
| 3/14/2013 | Called client and updated her about Telephone Conf. with Judge Rice | T.C.B. | .20 | $65.00 |
| 3/14/2013 | Discussion with VLH Pre Conf. call with J. Rice | T.C.B. | .20 | $65.00 |
| 3/14/2013 | Discussion with VLH after conf call with J. Rice | T.C.B. | .10 | $32.50 |
| 3/14/2013 | Created list of things that need to be done in the next three weeks in light of Conf. call with J. Rice | T.C.B. | .20 | $65.00 |
| 3/14/2013 | Telephone Conversation with G. Morrison Discussed Rule 33 -authority that supports my position that Interrogatories have to an sworn affidavit | T.C.B. | .20 | $65.00 |
| 3/15/2013 | revised and filed praecipe to withdraw claims | H.C.F. | .80 | No Charge |
| 3/15/2013 | Trial Prep Direct Examinations; looking at docs for ; Contacted Treating Physician | T.C.B. | 3.50 | $1,137.50 |
| 3/18/2013 | updated pleadings | H.C.F. | .50 | No Charge |
| 3/20/2013 | t/call with Keystone Center re documents; discussion with TCB re: rogs and responses | H.C.F. | .70 | $66.50 |
| 3/21/2013 | legal research re ADA retaliation claim | V.L.H. | .70 | No Charge |
| 3/21/2013 | Telephone Conversation with  George Morrison about supplemental Doc production on other complaint against Def. | T.C.B. | .20 | $65.00 |
| 3/25/2013 | legal research and draft brief to Judge Rice re ADA retaliation | V.L.H. | 4.30 | No Charge |
| 3/25/2013 | Email to J. Baker memorializing my telephone conv. with G. Morrison about document production | T.C.B. | .40 | $130.00 |
| 3/26/2013 | draft and finalize letter brief to Court re retaliation claim; tel call to George Morrison re same | V.L.H. | 2.50 | No Charge |
| 3/26/2013 | Reviewed letter to Judge Rice and G. Morrison | T.C.B. | .40 | No Charge |

|  |  |  |  |  |
|---|---|---|---|---|
|  | about Retaliation Claim |  |  |  |
| 3/26/2013 | Email to G. Morrison about Discovery dates for the follow-up depositions | T.C.B. | .20 | $65.00 |
| 3/27/2013 | Prep for Supplemental Depositions; Reviewing doc from other pending cases against def.; Pulling testimony from Atiyeh's Dep for Trial outline | T.C.B. | 6.80 | $2,210.00 |
| 3/27/2013 | discussion with TCB re: trial prep; scanned documents | H.C.F. | .60 | $57.00 |
| 3/28/2013 | Conf. with VLH about Discovery Issues | T.C.B. | .80 | $260.00 |
| 3/28/2013 | Researching and Drafting Jury Instructions | T.C.B. | 2.00 | $650.00 |
| 3/28/2013 | letter to Baker re: 26(a) disclosures | H.C.F. | .40 | $38.00 |
| 3/28/2013 | conf Tiff re discovery issues; outline trial testimony | V.L.H. | .80 | $320.00 |
| 4/1/2013 | Telephone Conf. with J. Baker; G. Morrison and VLH about supplemental discovery | T.C.B. | .30 | $97.50 |
| 4/1/2013 | Follow-up discussion with VLH about conf. with J. Baker and G. Morrison | T.C.B. | .10 | $32.50 |
| 4/3/2013 | review document production and prepare for Atiyeh deposition | V.L.H. | 6.50 | $2,600.00 |
| 4/4/2013 | preparation for Atiyeh deposition; draft Atiyeh trial examination | V.L.H. | 4.50 | $1,800.00 |
| 4/4/2013 | emails and tel calls John re depositions and trial adjournment; conf Tiff | V.L.H. | .50 | $200.00 |
| 4/4/2013 | tel call Baker; tel call court re trial adjournment | V.L.H. | .40 | $160.00 |
| 4/5/2013 | Telephone Conf. with Judge Rice, J. Baker, VLA about rescheduling trial date | T.C.B. | .20 | $65.00 |
| 4/5/2013 | Telephone conversation with George Morrsion - he is going to reproduce Defendant's document production with Bate Stamp Nos. | T.C.B. | .10 | $32.50 |
| 4/5/2013 | Reviewed J. Baker's email regarding extending trial; letter to judge regarding retaliation claims; discussion with VLH pushing the trial off for 45 days. | T.C.B. | .40 | No Charge |
| 4/5/2013 | Telephone Conf. with J. Baker about his request to push Trial date back to July 2013 | T.C.B. | .20 | $65.00 |
| 4/5/2013 | discussion with TCB re: scheduling order, etc. | H.C.F. | .40 | $38.00 |
| 4/5/2013 | Meeting with Marc Weinstein about his case against SV and Strategized about our case | T.C.B. | 2.50 | $812.50 |
| 4/5/2013 | Updated Pleadings & Matter Calendar | A.H. | .30 | $28.50 |
| 4/5/2013 | meet with Marc Weinstein and TCB | V.L.H. | 2.50 | $1,000.00 |
| 4/5/2013 | prepare for Atiyeh deps | V.L.H. | .60 | $240.00 |
| 4/8/2013 | t/call to CR for deps; discussion with TCB re: strategy | H.C.F. | .40 | $38.00 |
| 4/9/2013 | Memo to file re: meeting with Marc. W. on 3/5; added notes to motions in limine and theme of case | T.C.B. | .90 | $292.50 |
| 4/9/2013 | Telephone conversation with client about recent events- Trial postponed; deps next week | T.C.B. | .30 | $97.50 |
| 4/10/2013 | Reviewing Suppl Discovery Responses and Document Production | T.C.B. | 1.50 | $487.50 |
| 4/10/2013 | review record; draft cross examination and deposition prep | V.L.H. | 3.00 | $1,200.00 |
| 4/10/2013 | Reviewed Defendant doc production | A.H. | .50 | $47.50 |

| 4/12/2013 | Telephone conv. with G. Kounoupis and follow-up email to G. Kounoupis regarding Anna O'Tool Matter | T.C.B. | .40 | No Charge |
|-----------|-----------|--------|------|-----------|
| 4/12/2013 | review recently produced documents; prepare for deposition | V.L.H. | 1.70 | $680.00 |
| 4/12/2013 | prepare for Atiyeh and Hirsch deps; Atiyeh cross examination | V.L.H. | 2.50 | $1,000.00 |
| 4/15/2013 | emails re dep schedule; prepare for Atiyeh dep | V.L.H. | 1.50 | $600.00 |
| 4/15/2013 | Compiled documents for Atiyeh Deposition | A.H. | .80 | $76.00 |
| 4/16/2013 | Travel time to Saucon Valley; Deposition of Nimita Atiyeh and Caroyln Hirsch | T.C.B. | 6.80 | No Charge |
| 4/16/2013 | Updated pleadings and correspondence | A.H. | .20 | $19.00 |
| 4/16/2013 | prepare for depositions of Atiyeh and Hirsch; travel; take depositions | V.L.H. | 7.00 | $2,800.00 |
| 4/17/2013 | discussion with VLH and TCB re: depositions and amending 26 (a) Disclosures; drafted amendment; redacted W2 form | H.C.F. | 1.40 | $133.00 |
| 4/17/2013 | Researched Atiyeh accountant | A.H. | .20 | $19.00 |
| 4/18/2013 | bates stamped document; letter to Baker re: supplemental production; organized file | H.C.F. | 1.20 | $114.00 |
| 4/18/2013 | Letter to Defense counsel regard Corp Accountant and revision to Plaintiffs 26(a) disclosures | T.C.B. | .30 | $97.50 |
| 4/19/2013 | Hirsch trial cross examination | V.L.H. | .40 | $160.00 |
| 4/22/2013 | Research/Notes for Jury Instructions | A.H. | .40 | No Charge |
| 4/22/2013 | draft summation | V.L.H. | 1.20 | $480.00 |
| 4/23/2013 | Drafting Pre-trial memo | T.C.B. | 1.50 | $487.50 |
| 4/24/2013 | order and review focus group materials | V.L.H. | .50 | No Charge |
| 4/24/2013 | Drafting Pre-trial memo; Reviewing documents to ID for trial | T.C.B. | 4.00 | $1,300.00 |
| 4/24/2013 | discussion with TCB re: focus groups and Diaz strategy | H.C.F. | .50 | $47.50 |
| 4/25/2013 | Drafting Fox's cross examination for Trial | T.C.B. | 2.00 | $650.00 |
| 4/26/2013 | Trial Prep Direct Examination of Cindy Fox; conf VLH re trial themes | T.C.B. | 3.50 | $1,137.50 |
| 4/26/2013 | outline summation; conf Tiff re strategy issues on re-opened discovery | V.L.H. | .80 | $320.00 |
| 4/29/2013 | legal research re jury instructions | V.L.H. | .70 | No Charge |
| 4/29/2013 | Reviewing Fox's deposition testimony and drafting Fox's Cross Examination; | T.C.B. | 5.00 | $1,625.00 |
| 4/29/2013 | Reviewed Atiyeh's most recent Deposition Testimony; email to VLH proposing adding another Def. Estate Planning Attorney to 26(a) | T.C.B. | .70 | $227.50 |
| 4/29/2013 | review Atiyeh deposition transcript | V.L.H. | 1.80 | $720.00 |
| 4/30/2013 | Researching and Drafting Motions In Limine | T.C.B. | 5.80 | $1,885.00 |
| 4/30/2013 | Reviewing Jury Instructions | T.C.B. | .50 | $162.50 |
| 4/30/2013 | discussion with TCB re: jury instructions and deadlines | H.C.F. | .40 | $38.00 |
| 5/2/2013 | Drafted motion in limine to exclude DUI and edited motion in limine for the July 16th incident | T.C.B. | 3.00 | $975.00 |
| 5/12/2013 | draft summation | V.L.H. | 2.00 | $800.00 |
| 5/14/2013 | Research to supplement  Jury Instructions | T.C.B. | 4.80 | No Charge |

| 5/14/2013 | conf TCB re to do items and focus group | V.L.H. | .20 | $80.00 |
| 5/15/2013 | Drafting Jury Instructions | T.C.B. | 5.50 | No Charge |
| 5/15/2013 | Focus group research and planning | V.L.H. | 2.50 | No Charge |
| 5/16/2013 | revised jury instructions | H.C.F. | .50 | No Charge |
| 5/16/2013 | pulled research for trial notebook; drafted research documented; bindered all research | H.C.F. | 3.00 | $285.00 |
| 5/17/2013 | t/calls to northampton county court, Bethlehem police department, etc. for Nydia criminal docket, docket search criminal docket | H.C.F. | 1.50 | $142.50 |
| 5/20/2013 | Reviewing Rules of Evidence; Research for Motions In Limine to Prevent Def. from Arguing Leave of Absence was unreasonable and Diaz was a Direct threat as a Defense | T.C.B. | 3.50 | $1,137.50 |
| 5/20/2013 | discussion with VLH about Diaz witness criminal docket; letter to Criminal Div. Northampton County re: certified copy of docket | H.C.F. | .50 | $47.50 |
| 5/20/2013 | reviewed, revised and formatted jury instructions | H.C.F. | 3.00 | $285.00 |
| 5/20/2013 | draft summation and examinations; conf Holly re criminal records | V.L.H. | 3.80 | $1,520.00 |
| 5/21/2013 | revised jury instructions | H.C.F. | 1.00 | No Charge |
| 5/22/2013 | revised jury instructions doc 3 | H.C.F. | .50 | No Charge |
| 5/24/2013 | revised motions in limine; drafted orders | H.C.F. | 3.50 | $332.50 |
| 5/24/2013 | Motions In Limine and Research- Affirmative Def. Direct Threat; Edited Pre-Trial Memo | T.C.B. | 6.00 | $1,950.00 |
| 5/28/2013 | Researching and Drafting Proposed Jury Instructions | T.C.B. | 6.50 | $2,112.50 |
| 5/29/2013 | Reviewed documents with VLH for Friday deadline; discussed the certified copy of the court docket and how to use it at trial | T.C.B. | .50 | $162.50 |
| 5/29/2013 | Drafting FMLA Jury Instructions | T.C.B. | .70 | $227.50 |
| 5/30/2013 | pulled Third Circuit research for "direct threat" and Fed. R. Evid. 403 language | H.C.F. | 1.70 | $161.50 |
| 5/30/2013 | updated case law in motions in limine; pulled deposition citations | H.C.F. | 1.20 | $114.00 |
| 5/30/2013 | t/call with client; discussion with VLH and email to TCB | H.C.F. | .40 | $38.00 |
| 5/30/2013 | Trial Prep- Working on Case Themes for Voir Dire and strategy for psychological damages | T.C.B. | 2.50 | $812.50 |
| 5/30/2013 | review and compile documents re trial exhibits | V.L.H. | 3.00 | $1,200.00 |
| 5/31/2013 | Trial prep reviewed exhibits for Trial; Reviewed Defendant's Exhibit List | T.C.B. | 4.00 | $1,300.00 |
| 5/31/2013 | Organized/labeled Plaintiff's trial exhibits; scanned, merged & emailed exhibits to OC; drafted correspondence to OC; organized Def exhibits into binder | A.H. | 1.50 | $142.50 |
| 5/31/2013 | pulled and copied exhibits for trial | H.C.F. | 2.00 | $190.00 |
| 5/31/2013 | trial prep; review and prepare exhibits | V.L.H. | 1.40 | $560.00 |
| 5/31/2013 | review dep transcripts; prepare exhibits for trial | V.L.H. | 4.80 | $1,920.00 |
| 6/2/2013 | review and revise in limine motions | V.L.H. | 1.40 | $560.00 |
| 6/3/2013 | Editing Motions In Limine to Specifically Address Documents Identified by Defendants in their List of Trial Exhibits | T.C.B. | 6.00 | $1,950.00 |

| 6/3/2013 | Meeting to Discuss Jury Focus Group | T.C.B. | 1.30 | No Charge |
| 6/3/2013 | team meeting re focus group plans | V.L.H. | 1.20 | No Charge |
| 6/3/2013 | meet to discuss focus group; research on focus group and jury questionnaire EDPA | J.L.C. | 1.50 | No Charge |
| 6/3/2013 | Firm meeting re: Focus Group | A.H. | 1.30 | $123.50 |
| 6/3/2013 | Drafted focus group flyer | A.H. | .50 | $47.50 |
| 6/3/2013 | review defendants' exhibits; further trial preparation and outline of testimony; in limine motions | V.L.H. | 5.20 | $2,080.00 |
| 6/4/2013 | Drafted script for callers for Jury Research Project | T.C.B. | .50 | No Charge |
| 6/4/2013 | Completed Trial Exhibit Binder; created plaintiff doc production index & updated docs; updated correspondence & research files; edited focus group flyer; revised focus group phone script; shipped trial exhibit binder | A.H. | 3.30 | $313.50 |
| 6/4/2013 | Reviewing Def. List of Exhibits and Drafting Plaintiff's statement of facts for Jury Research Project | T.C.B. | 3.00 | $975.00 |
| 6/4/2013 | organized trial research | H.C.F. | .50 | $47.50 |
| 6/4/2013 | review exhibits; prepare for trial; tel call Amanda Farahany re trial strategy | V.L.H. | 8.20 | $3,280.00 |
| 6/4/2013 | Edited Motion In limine - Added 2005 Handbook | T.C.B. | 1.00 | $325.00 |
| 6/5/2013 | Reviewed Script for callers for Jury Research Project | T.C.B. | .20 | No Charge |
| 6/5/2013 | Drafting Opening | T.C.B. | 4.00 | $1,300.00 |
| 6/5/2013 | formatted and typed verdict form | H.C.F. | .80 | No Charge |
| 6/5/2013 | Reserved hotel room & videographer for focus group; screened focus group participant calls & organized caller data | A.H. | 1.00 | $95.00 |
| 6/5/2013 | screening calls for potential focus group members | H.C.F. | .60 | $57.00 |
| 6/5/2013 | research evidence rules and determine objections for defense exhibits; research Rice trial procedures; tel call Nancy Ezold; | V.L.H. | 5.00 | $2,000.00 |
| 6/6/2013 | Met w/ TCB & VLH re focus group participants; called participants to confirm & organized their data; reserved hotel meeting space & videographer for second date; drafted focus group confirmation letter & directions; updated correspondence | A.H. | 1.50 | $142.50 |
| 6/6/2013 | Trial Prep with client - Discussed Economic Impact of Losing her Job | T.C.B. | 2.50 | $812.50 |
| 6/6/2013 | Drafting Opening | T.C.B. | 2.00 | $650.00 |
| 6/6/2013 | conf Ali and Tiffanie re focus group | V.L.H. | .40 | No Charge |
| 6/6/2013 | trial prep with Julie | V.L.H. | 2.50 | $1,000.00 |
| 6/6/2013 | strategize, write and revise in limine motions; conferences with Tiffanie re trial strategy | V.L.H. | 4.10 | $1,640.00 |
| 6/7/2013 | reviewed motions in limine; copied exhibits; revised and filed four motions with ECF | H.C.F. | 4.00 | $380.00 |
| 6/7/2013 | Organized deposition transcripts | A.H. | .30 | $28.50 |
| 6/7/2013 | draft and revise in limine motions | V.L.H. | 5.60 | $2,240.00 |
| 6/7/2013 | Reviewed Motions in Limine & pulled/organized exhibits; updated pleadings | A.H. | 1.50 | $142.50 |
| 6/7/2013 | review defendants' motions in limine; emails Tiff | V.L.H. | .90 | $360.00 |

| | and Holly | | | |
|---|---|---|---|---|
| 6/8/2013 | outline responses to in limine motions | V.L.H. | 1.20 | $480.00 |
| 6/8/2013 | draft summation | V.L.H. | .70 | $280.00 |
| 6/10/2013 | Drafted Response to Defendants' Motion In Limine to Keep Out Evidence about Ms. Figueroa's Arrest etc. | T.C.B. | 7.50 | $2,437.50 |
| 6/10/2013 | Screened focus group calls; revised & printed focus group flyers; met w/ VLH & TCB re: selection of focus group participants; sent confirmation letters to participants | A.H. | 2.10 | $199.50 |
| 6/10/2013 | printed and saved motions | H.C.F. | .40 | $38.00 |
| 6/10/2013 | screening calls for potential focus group members | H.C.F. | .50 | $47.50 |
| 6/10/2013 | draft response to in limine motion re other complaints | V.L.H. | 4.60 | $1,840.00 |
| 6/11/2013 | review Nimita's dep transcripts for in limine motions; draft cross examination of Nimita | V.L.H. | 3.70 | $1,480.00 |
| 6/11/2013 | reviewed, revised oppos. to motion in limine; drafted order and cert | H.C.F. | 1.40 | $133.00 |
| 6/11/2013 | researched financial records for Saucon Valley; pulled Accurint reports for Saucon Valley and Nimita | H.C.F. | 1.40 | $133.00 |
| 6/11/2013 | research into Pa statutory law re: summary offenses and non-traffic violations | H.C.F. | 1.00 | $95.00 |
| 6/11/2013 | Updated pleadings; researched M. Feldman contact info; drafted M. Feldman correspondence; client telephone call | A.H. | .80 | $76.00 |
| 6/11/2013 | Edited Motion In Limine - Response to Nydia Figueora's Testimony and Newspaper Article | T.C.B. | 1.00 | $325.00 |
| 6/11/2013 | Prep for trial prep with client this week. Outlined issues to cover at our weekly session; Additions to Pre- Trial Memo | T.C.B. | 3.00 | $975.00 |
| 6/11/2013 | Drafted letter to Marc Feldman | T.C.B. | .20 | $65.00 |
| 6/11/2013 | Left a voicemail message for Julie's Brother | T.C.B. | .10 | $32.50 |
| 6/12/2013 | Editing Motion in limine to include stipulation argument and comparator case law | T.C.B. | 3.50 | $1,137.50 |
| 6/12/2013 | draft and edit in limine motion response; conf Tiff re motions | V.L.H. | 4.70 | $1,880.00 |
| 6/12/2013 | tel call Julie's brother re possible testimony on emotional distress; memo to file | V.L.H. | .70 | $280.00 |
| 6/13/2013 | copied exhibits for oppos. to Figueroa motion in limine; revised | H.C.F. | 1.70 | $161.50 |
| 6/13/2013 | Trial Prep with client | T.C.B. | 2.00 | $650.00 |
| 6/13/2013 | Reviewed VLH Notes from her interview with David Hudson | T.C.B. | .10 | $32.50 |
| 6/13/2013 | Reviewed Motion In limine - Re: Evidence about other employees that went out on FMLA and provided VLH feedback | T.C.B. | .40 | $130.00 |
| 6/13/2013 | draft and revise responses on in limine motions; conf Ali re to do items for trial prep | V.L.H. | 4.30 | $1,720.00 |
| 6/13/2013 | meet with client and Tiff re trial prep | V.L.H. | 1.20 | $480.00 |
| 6/14/2013 | copied exhibits for opposition briefs to motions in | H.C.F. | 3.50 | $332.50 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | limine; drafted orders and certs of service; revised and reviewed all; filed electronically with court |  |  |  |
| 6/14/2013 | Editing Motion in limine regarding comparator - other employee arrested | T.C.B. | 2.50 | $812.50 |
| 6/14/2013 | draft and revise response on in limine motions | V.L.H. | 5.20 | $2,080.00 |
| 6/14/2013 | review responses to in limine motions filed by defendants | V.L.H. | .60 | $240.00 |
| 6/14/2013 | Drafted correspondence to J. Rice; sent copies of Motions in Limine to J. Rice; updated and organized pleadings | A.H. | .60 | $57.00 |
| 6/14/2013 | Initial Review of Defendants' Responses to Plaintiff's Motions In Limine | T.C.B. | .70 | $227.50 |
| 6/17/2013 | Drafting Opening and Editing Jury Instructions simultaneously | T.C.B. | 4.00 | $1,300.00 |
| 6/18/2013 | Drafting Opening; discussed with VLH incorporating Regs into C. Hirsch examination and jury instructions | T.C.B. | 7.00 | $2,275.00 |
| 6/18/2013 | Typed up forms for focus group | A.H. | 1.50 | No Charge |
| 6/18/2013 | legal research re jury instructions; draft and revise instructions | V.L.H. | 2.60 | No Charge |
| 6/18/2013 | meeting re: focus group | H.C.F. | 1.00 | $95.00 |
| 6/18/2013 | review defendants' responses on in limine motions and review record re same; draft cross examinations of Atiyeh and Hirsch | V.L.H. | 5.20 | $2,080.00 |
| 6/19/2013 | Typed/Revised forms for focus group | A.H. | .40 | No Charge |
| 6/20/2013 | Editing Jury Instructions for FMLA Claims; Editing Opening | T.C.B. | 7.00 | $2,275.00 |
| 6/20/2013 | outline defendants' likely arguments and cross examination points in response | V.L.H. | 2.80 | $1,120.00 |
| 6/20/2013 | draft and revise verdict sheet and ADA jury instructions | V.L.H. | 3.20 | No Charge |
| 6/20/2013 | Researched rates & booked hotel rooms for trial | A.H. | .30 | No Charge |
| 6/20/2013 | Met w/ TCB for practice presentation for jury research project; provided feedback | A.H. | .80 | No Charge |
| 6/20/2013 | discussion with TCB re: focus group | H.C.F. | .50 | No Charge |
| 6/20/2013 | prepare for jury focus group | J.L.C. | 2.30 | $920.00 |
| 6/20/2013 | Screened phone calls for potential jury research project participants | A.H. | .20 | $19.00 |
| 6/20/2013 | meet with Julie and Lorenzio for trial preparation | V.L.H. | 1.50 | $600.00 |
| 6/21/2013 | reviewed jury instructions for focus groups | H.C.F. | .50 | No Charge |
| 6/21/2013 | write introd and neutral facts for jury focus group | J.L.C. | 2.70 | $1,080.00 |
| 6/21/2013 | drafted and filed ECF - Plaintiff's Pretrial Disclosures | H.C.F. | 1.20 | $114.00 |
| 6/21/2013 | meeting re: focus group preparation | H.C.F. | .50 | $47.50 |
| 6/21/2013 | Trial Prep | T.C.B. | 10.00 | $3,250.00 |
| 6/21/2013 | Trial preparation -- evaluate and outline defendants' likely arguments; review documents | V.L.H. | 10.50 | $4,200.00 |
| 6/22/2013 | Jury research group | H.C.F. | 4.50 | $427.50 |
| 6/22/2013 | Jury Focus Group | T.C.B. | 4.50 | $1,462.50 |
| 6/22/2013 | Jury Research Group | A.H. | 4.50 | $427.50 |
| 6/22/2013 | Attend and present defendants' case for jury research | V.L.H. | 6.20 | $2,480.00 |

| | | | | |
|---|---|---|---|---|
| | group; review DVD's of presentations and deliberations; notes re changes | | | |
| 6/22/2013 | Jury focus group | J.L.C. | 4.50 | $1,800.00 |
| 6/24/2013 | Trial Prep - reviewed intake docs and reviewed comments about opening | T.C.B. | 4.50 | $1,462.50 |
| 6/24/2013 | Prepared materials for next jury research group; updated participant list; organized materials from completed session; provided feedback on responses from last session | A.H. | 1.80 | $171.00 |
| 6/24/2013 | conf Tiff re trial strategy | V.L.H. | .40 | $160.00 |
| 6/24/2013 | revise Atiyeh cross | V.L.H. | .40 | $160.00 |
| 6/25/2013 | copied and scanned orders; focus group prep | H.C.F. | .30 | No Charge |
| 6/25/2013 | Reviewed/revised TCB's presentation for jury research group | A.H. | 1.30 | No Charge |
| 6/25/2013 | Compiled/merged defendant trial exhibits for TCB | A.H. | .20 | $19.00 |
| 6/25/2013 | Drafted Memo for Trial Consultant | T.C.B. | 2.50 | $812.50 |
| 6/25/2013 | review court decision on motions in limine; draft and revise proposed stipulations | V.L.H. | 1.30 | $520.00 |
| 6/25/2013 | Reviewed Stipulations with VLH to submit to Def. Counsel | T.C.B. | 1.10 | $357.50 |
| 6/25/2013 | Trial Prep - Editing Pre- Trial Memo- Testimony for Witnesses ID, editing Fact Pattern; Opening comparing facts in opening to proposed stipulations | T.C.B. | 5.00 | $1,625.00 |
| 6/25/2013 | trial preparation -- review depositions for cross examinations, revise proposed stipulations; meet with Tiff re trial strategy | V.L.H. | 3.10 | $1,240.00 |
| 6/26/2013 | discussion with TCB re: focus group and Figueroa issues; revised presentation | H.C.F. | .60 | No Charge |
| 6/26/2013 | Researched/reviewed trial subpoena form & related federal rules | A.H. | .30 | $28.50 |
| 6/26/2013 | trial preparation; draft stipulations; email to John Baker | V.L.H. | 7.50 | $3,000.00 |
| 6/26/2013 | Trial Prep: Drafting Jury Instructions; Email to J. Baker about trial Subpeonas Drafting Prep for Diaz to prep for Direct Examination | T.C.B. | 8.00 | $2,600.00 |
| 6/27/2013 | Jury research group | H.C.F. | 5.50 | $522.50 |
| 6/27/2013 | Jury focus group prep and presentation | V.L.H. | 5.20 | $2,080.00 |
| 6/27/2013 | Trial Prep: Drafting Jury Instructions; Trial Memo and Editing Opening | T.C.B. | 6.50 | $2,112.50 |
| 6/27/2013 | updated pleadings | H.C.F. | .60 | No Charge |
| 6/27/2013 | jury focus group | J.L.C. | 5.20 | $2,080.00 |
| 6/27/2013 | Met with TCB to review presentation for jury research group | A.H. | 1.00 | No Charge |
| 6/27/2013 | meet with client to review focus group results and prepare for trial | V.L.H. | 1.60 | $640.00 |
| 6/27/2013 | Jury Research Group | A.H. | 5.00 | $475.00 |
| 6/27/2013 | confirmation calls to jury research group participants; prepared questionnaires/forms for group | A.H. | .60 | $57.00 |
| 6/27/2013 | Jury Focus Group | T.C.B. | 4.50 | $1,462.50 |
| 6/27/2013 | Met with Client to Prep for Trial - Reviewed focus | T.C.B. | 1.30 | $422.50 |

|  | group with her |  |  |  |
|---|---|---|---|---|
| 6/27/2013 | trial prep; Nimita cross; review exhibits | V.L.H. | 4.50 | $1,800.00 |
| 6/28/2013 | review videotaped deliberations and focus group results | V.L.H. | 2.50 | No Charge |
| 6/28/2013 | reviewed first focus group video | H.C.F. | .70 | No Charge |
| 6/28/2013 | Trial Prep Pre-Trial Memo Edits and Case Law Binder | T.C.B. | 6.50 | $2,112.50 |
| 6/28/2013 | discussion with TCB and VLH re: financials of Saucon; research into financial info | H.C.F. | .70 | $66.50 |
| 7/1/2013 | prepare client for trial | J.L.C. | 8.20 | No Charge |
| 7/1/2013 | Meet with Julie, TCB and Louise for trial prep | V.L.H. | 9.00 | No Charge |
| 7/1/2013 | Trial Prep with Julie, VLH and Trial Consultant | T.C.B. | 9.00 | $2,925.00 |
| 7/1/2013 | Prepared trial exhibit PDF | A.H. | .60 | $57.00 |
| 7/2/2013 | Trial preparation; draft and revise pretrial memorandum and jury instructions; conferences with Tiff re strategy; legal research re evidentiary objections and jury instructions; numerous emails Tiff and John Baker | V.L.H. | 10.50 | $4,200.00 |
| 7/2/2013 | research and citations for pretrial memo; discussion with TCB re: instructions; organized rebuttal docs; discussion with TCB re: Saucon rates; discussion with TCB re: trial subpoenas | H.C.F. | 1.50 | No Charge |
| 7/2/2013 | Trial Prep Editing and Dratfing Jury Instructions; Research ADAAA for Jury Instructions | T.C.B. | 8.50 | $2,762.50 |
| 7/3/2013 | revised and formatted jury instructions; revised and formatted pretrial memo and added stipulations; reviewed and revised verdict form; formatted letter to Rice and faxed | H.C.F. | 5.00 | No Charge |
| 7/3/2013 | Trial Prep Editing Jury Instructions and Verdict Sheet | T.C.B. | 8.00 | No Charge |
| 7/3/2013 | Researched defendants on issues of ownership and value of Saucon Valley | A.H. | 1.50 | $142.50 |
| 7/3/2013 | Trial preparation; revise and finalize pretrial memorandum; revise jury instructions; tel call John Baker; revise verdict sheet | V.L.H. | 9.40 | $3,760.00 |
| 7/5/2013 | telephone calls Alan Fellheimer; emails Fellheimer; pull documents requested by Fellheimer and email; emails Tiffanie and tel call Julie re settlement offer | V.L.H. | 1.30 | $520.00 |
| 7/5/2013 | review defendants' pre-trial memorandum; tel call TCB re strategy; legal research; trial preparation | V.L.H. | 2.40 | $960.00 |
| 7/6/2013 | trial preparation; draft Atiyeh cross; revise verdict sheet; tel call David | V.L.H. | 3.80 | $1,520.00 |
| 7/7/2013 | draft summation | V.L.H. | 1.20 | $480.00 |
| 7/8/2013 | revised jury instructions; formatted one document for jury instructions; formatted verdict form and proposed statement of facts for voir dire; reviewed all and filed with the Court | H.C.F. | 2.70 | No Charge |
| 7/8/2013 | finalize jury instructions | V.L.H. | 1.80 | $720.00 |
| 7/8/2013 | Correspondence to trial witnesses | A.H. | .30 | $28.50 |
| 7/8/2013 | Organized trial research | A.H. | .80 | $76.00 |
| 7/8/2013 | conf Tiff re Fellheimer phone call and strategy; draft | V.L.H. | 1.30 | $520.00 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | talking points re adjournment request; tel call court adjournment request |  |  |  |
| 7/8/2013 | draft Nimita cross examination | V.L.H. | 3.30 | $1,320.00 |
| 7/8/2013 | Reviewing/Editing Jury Instructions and Verdict Form | T.C.B. | 2.50 | $812.50 |
| 7/8/2013 | Drafting  Julie and Nydia's Direct Examination | T.C.B. | 4.00 | $1,300.00 |
| 7/9/2013 | formatted and filed supplemental jury instructions to include in limine instructions | H.C.F. | .80 | No Charge |
| 7/9/2013 | Drafting Cindy Fox's Direct Examination | T.C.B. | 2.30 | $747.50 |
| 7/9/2013 | letter to Judge Rice re: supplemental jury instructions; faxed to Court | H.C.F. | .40 | No Charge |
| 7/9/2013 | Trial Prep - Met with Julie and VLH to go through her direct | T.C.B. | 3.50 | $1,137.50 |
| 7/9/2013 | research on jury questionnaire; report to VH & TB; review notes from consultation | J.L.C. | .90 | No Charge |
| 7/9/2013 | draft Nimita cross examination | V.L.H. | 2.30 | $920.00 |
| 7/9/2013 | meet with Tiff and Julie to prepare trial testimony | V.L.H. | 3.50 | $1,400.00 |
| 7/9/2013 | trial preparation; review documents for Nimita examination | V.L.H. | .80 | $320.00 |
| 7/9/2013 | letter to court and supplemental jury instructions | V.L.H. | .60 | $240.00 |
| 7/9/2013 | Editing Outline for Julie's Direct Examination | T.C.B. | 1.50 | $487.50 |
| 7/10/2013 | Created seating chart for jury selection | A.H. | .20 | No Charge |
| 7/10/2013 | revised subpoena and letter to serve via certified mail to Stroble; copy to Fellheimer; emailed copy of Minnich subpoena to Fellheimer | H.C.F. | .60 | $57.00 |
| 7/10/2013 | reviewed FMLA policies from 2005 and 2009 with TCB | H.C.F. | .50 | $47.50 |
| 7/10/2013 | reviewed case law index; compared to jury instructions; pulled case law from jury instructions for binder | H.C.F. | 1.00 | $95.00 |
| 7/10/2013 | Organized research binder | A.H. | 1.30 | $123.50 |
| 7/10/2013 | trial preparation; Atiyeh cross examination; telephone call Alan Fellheimer; review defendants' document production; draft voir dire | V.L.H. | 9.20 | $3,680.00 |
| 7/10/2013 | Edited Voir Dire and sent it Def. Counsel; Drafting C. Fox's Direct Examination | T.C.B. | 9.00 | $2,925.00 |
| 7/11/2013 | firm meeting: review Atiyeh cross | H.C.F. | 2.00 | No Charge |
| 7/11/2013 | download program to run exhibits for trial and convert to readable text | H.C.F. | .50 | No Charge |
| 7/11/2013 | cross exam; trial prep | J.L.C. | 2.20 | No Charge |
| 7/11/2013 | Firm meeting re: Atiyeh cross exam | A.H. | 2.00 | No Charge |
| 7/11/2013 | Trial Prep worked with VLH on her Direct of Aityeh; Worked on outline of  Fox' Direct | T.C.B. | 8.00 | $2,600.00 |
| 7/11/2013 | drafted motion to strike proposed jury instruction 16; filed with Court | H.C.F. | 1.00 | $95.00 |
| 7/11/2013 | Organized Defendants' Updated Trial Exhibits | A.H. | 1.80 | $171.00 |
| 7/11/2013 | draft Atiyeh cross exam; dry run of cross with Tiff, Joyce, Holly and Ali | V.L.H. | 5.50 | $2,200.00 |
| 7/11/2013 | conf Tiff re strategy | V.L.H. | .40 | $160.00 |
| 7/11/2013 | file organization in preparation for trial | V.L.H. | 2.10 | $840.00 |
| 7/11/2013 | revise Atiyeh cross | V.L.H. | 1.30 | $520.00 |

| Date | Description | Initials | Hours | Amount |
|---|---|---|---|---|
| 7/12/2013 | set up technology for trial with Court IT personnel | H.C.F. | 2.00 | $190.00 |
| 7/12/2013 | travel to Philadelphia for tech set up in courtroom; conf with Tiff re strategy on exhibits | V.L.H. | 4.00 | No Charge |
| 7/12/2013 | revised amended pretrial order and document production; discussion with TCB and VLH re: time sheets and call offs | H.C.F. | .50 | No Charge |
| 7/12/2013 | revised trial exhibits; downloaded to laptop for trial | H.C.F. | .80 | $76.00 |
| 7/12/2013 | Updated trial research binder | A.H. | .60 | $57.00 |
| 7/12/2013 | Assembled trial exhibits for Atiyeh | A.H. | .70 | $66.50 |
| 7/12/2013 | draft Nimita cross; tel call David Hudson; draft Hudson direct; tel calls Alan re discovery issues; review defendants' newly produced documents; review defendants supplemental pretrial memo; conf Tiff re strategy on new documents and witnesses | V.L.H. | 6.60 | $2,640.00 |
| 7/13/2013 | Trial Prep -Fox's Direct Examination; Stroble's Direct Examination | T.C.B. | 4.00 | $1,300.00 |
| 7/13/2013 | trial preparation; review newly produced documents; emails Tiff; draft David's direct | V.L.H. | 5.10 | $2,040.00 |
| 7/14/2013 | compared Def. jury instructions with ours; trial prep - reviewed Atiyeh Cross and TCB opening | H.C.F. | 4.50 | No Charge |
| 7/14/2013 | Trial Prep - reviewed documents produced and Def. amended Pre trial memo; Prep of Atieyh's cross and Opening | T.C.B. | 6.00 | $1,950.00 |
| 7/14/2013 | trial preparation; rehearse Atiyeh cross and direct examination; revise Atiyeh cross; review defendants' proposed jury instructions; review defendants' proposed verdict sheet | V.L.H. | 6.80 | $2,720.00 |
| 7/15/2013 | revised and formatted joint voir dire; filed with Court via ECF | H.C.F. | 1.50 | No Charge |
| 7/15/2013 | research FRCP 26(a)(3) and 37 for TCB regarding late disclosures and ability to produce at trial | H.C.F. | 1.60 | $152.00 |
| 7/15/2013 | updated exhibits on trial laptop; reviewed exhibits | H.C.F. | 1.10 | $104.50 |
| 7/15/2013 | Trial Prep - reviewed def. proposed verdict sheet and made comments on what we need to object to; Discussed with VLH what we address at pre-trial conf. tomorrow; Met with client to prep; worked on opening | T.C.B. | 10.00 | $3,250.00 |
| 7/15/2013 | assist w/opening; write damage piece for closing | J.L.C. | .90 | No Charge |
| 7/15/2013 | Created trial exhibit status chart; copied & organized exhibits for Atiyeh cross-exam, updated exhibits in cross-exam outline | A.H. | 1.20 | $114.00 |
| 7/15/2013 | created spreadsheet re: Julie's work schedule, assigned hours vs. actual hours worked | A.H. | 1.50 | $142.50 |
| 7/15/2013 | Trial preparation: review opening with Tiff; meet with Julie Diaz to prepare her to testify; review personnel records for discrepancies; emails to Fellheimer re late document production;  legal research re subpoena of accountant; meet with TCB to prepare for pretrial conference; review verdict sheet in preparation for pretrial conference | V.L.H. | 9.70 | $3,880.00 |
| 7/16/2013 | worked on Fox Cross with TCB | H.C.F. | 1.50 | No Charge |

| Date | Description | Initials | Hours | Amount |
|------|-------------|----------|-------|--------|
| 7/16/2013 | updated Diaz pleadings binder for trial; updated Diaz trial binder for TCB | H.C.F. | 1.50 | No Charge |
| 7/16/2013 | pulled research for pretrial conference call; discussion with TCB and VLH | H.C.F. | .50 | No Charge |
| 7/16/2013 | reviewed Atiyeh dep transcript for discussion of schedules search | H.C.F. | .40 | $38.00 |
| 7/16/2013 | Trial Prep Fox Direct; reviewing def. suppl doc production in the last two days; drafting Fox's Direct; pre-trial conf./prep for pre-trial conf | T.C.B. | 9.50 | $3,087.50 |
| 7/16/2013 | Trial prep:  prepare for and participate in pretrial conference; prepare examinations; telephone calls and emails with Alan; | V.L.H. | 11.50 | $4,600.00 |
| 7/17/2013 | revise jury instructions;review Fellheimer letter; research case law on retaliation and standards for notice | J.L.C. | 4.50 | No Charge |
| 7/17/2013 | formatted letter to Judge Rice re: personnel records of added witnesses; faxed to Court and emailed to Fellheimer | H.C.F. | .60 | No Charge |
| 7/17/2013 | trial prep - run through of TCB's opening | H.C.F. | .50 | No Charge |
| 7/17/2013 | printed research for JLC re: 29 CFR 825.301 | H.C.F. | .50 | No Charge |
| 7/17/2013 | formatted and revised letter to court re: Federal regulations; research into interference claim and 29 CFR 825.300 | H.C.F. | 1.50 | No Charge |
| 7/17/2013 | drafted subpoena for Nydia Figueroa; letter with subpoena; emailed to Fellheimer and sent via Fed Ex | H.C.F. | 1.00 | $95.00 |
| 7/17/2013 | reviewed case law for "appropriate notice" for FMLA and 29 CFR 825.302 | H.C.F. | .50 | $47.50 |
| 7/17/2013 | Trial Prep- Stroble Direct/Fox's Direct/ reviewing def. suppl doc production | T.C.B. | 9.70 | $3,152.50 |
| 7/17/2013 | Trial preparation: Atiyeh cross; review opening and Fox cross with Tiffanie; review new documents produced by defendants; letter to court; emails and phone call Alan | V.L.H. | 11.70 | $4,680.00 |
| 7/18/2013 | update trial binder for trial; update and organize case law binder for trial; reviewed trial opening with TCB; organized correspondence and updated for trial; packed up all documents, supplies for trial | H.C.F. | 7.50 | $712.50 |
| 7/18/2013 | Trial Prep: organizing & compiling exhibits, updating indexes, reviewing opening & witness questions with firm, communicating with courthouse; packing for trial | A.H. | 6.00 | $570.00 |
| 7/18/2013 | Trial preparation: letter to Judge Rice re jury instructions; revise Atiyeh cross; emails Allen; review certified financials; conf with Bill Ray re financial issues; conf with Tiff re Fox cross and opening; review revisions to jury instructions | V.L.H. | 10.90 | $4,360.00 |
| 7/18/2013 | Trial Prep- Editing Outlines for Examinations; adding dep cites for impeachment; Working on Opening | T.C.B. | 9.50 | $3,087.50 |
| 7/19/2013 | Trial | A.H. | 11.00 | No Charge |
| 7/19/2013 | travel to and from federal court for first day of trial; | H.C.F. | 11.50 | $1,092.50 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | attend first day; review opening with TCB; pull exhibits during trial testimony |  |  |  |
| 7/19/2013 | Trial Prep, Trial,Travel Time | T.C.B. | 10.00 | $3,250.00 |
| 7/19/2013 | Trial; travel and prep | V.L.H. | 11.00 | $4,400.00 |
| 7/20/2013 | Trial Prep- reworking Fox Direct Outline | T.C.B. | 3.00 | $975.00 |
| 7/20/2013 | trial preparation | V.L.H. | 7.00 | $2,800.00 |
| 7/21/2013 | assist with jury instructions and trial prep | J.L.C. | 3.20 | No Charge |
| 7/21/2013 | Trial preparation | V.L.H. | 11.20 | $4,480.00 |
| 7/21/2013 | pulled exhibits; organized documents; review of Fox Cross with TCB | H.C.F. | 4.00 | $380.00 |
| 7/21/2013 | Trial prep:  copying/organizing exhibits; updating indexes; packing | A.H. | 5.50 | $522.50 |
| 7/21/2013 | Trial Prep | T.C.B. | 6.00 | $1,950.00 |
| 7/22/2013 | Trial- Day 2; Including Travel: Prep for Trial the Next Day | T.C.B. | 11.50 | $3,737.50 |
| 7/22/2013 | Trial | A.H. | 12.75 | No Charge |
| 7/22/2013 | assist with trial; bring documents to court, set up file room at courthouse, organize case material | J.L.C. | 8.10 | No Charge |
| 7/22/2013 | Trial and preparation for next day | V.L.H. | 11.00 | $4,400.00 |
| 7/22/2013 | prep for trial; attend trial day 2 and pull exhibits; prep for next day | H.C.F. | 9.00 | $855.00 |
| 7/23/2013 | Trial | A.H. | 11.00 | $1,045.00 |
| 7/23/2013 | assist with trial; review all transcipts and jury instructions | J.L.C. | 8.10 | No Charge |
| 7/23/2013 | Trial and preparation for next day; draft summation | V.L.H. | 11.70 | $4,680.00 |
| 7/23/2013 | prep for trial; attend trial day 3, pull exhibits during trial | H.C.F. | 10.00 | $950.00 |
| 7/23/2013 | Trial - Day 3; Including travel time | T.C.B. | 11.00 | $3,575.00 |
| 7/23/2013 | Reviewed Changes to Jury Instructions Judge Rice Provided this evening | T.C.B. | .40 | $130.00 |
| 7/24/2013 | assist with stipulations and jury instructions; assist with trial | J.L.C. | 4.30 | No Charge |
| 7/24/2013 | Trial, including travel--assisting attorneys with documents; taking notes; keeping track of exhibits used. | A.H. | 10.75 | No Charge |
| 7/24/2013 | Trial Day 4: Prep for the Next Day | T.C.B. | 12.50 | $4,062.50 |
| 7/24/2013 | prep for Nimita cross; half day of trial and follow up with client and office | V.L.H. | 4.80 | $1,920.00 |
| 7/24/2013 | run through VLH's closing for trial | H.C.F. | 1.50 | $142.50 |
| 7/24/2013 | trial prep - research for agency third circuit jury instruction; attend trial and pull exhibits | H.C.F. | 5.00 | $475.00 |
| 7/24/2013 | reviewed deposition excerpts for inclusion to jury; email to OC with exhibit corrections | H.C.F. | 3.00 | $285.00 |
| 7/25/2013 | Trial | A.H. | 8.50 | No Charge |
| 7/25/2013 | Trial -Day 5 | T.C.B. | 10.50 | $3,412.50 |
| 7/25/2013 | Trial - day 5; pulled exhibits for closing | H.C.F. | 8.50 | $807.50 |
| 7/25/2013 | Trial; preparation for trial; last day trial | V.L.H. | 11.80 | $4,720.00 |
| 7/26/2013 | review judgment; legal research re pretrial interest and liquidated damages | V.L.H. | 1.20 | $480.00 |
| 7/29/2013 | return trial materials to office; unpack | J.L.C. | 1.20 | No Charge |
| 7/29/2013 | letter to court; letter from Fellheimer | V.L.H. | .40 | $160.00 |

| Date | Description | Initials | Hours | Amount |
|---|---|---|---|---|
| 7/30/2013 | read fee petition research; calculate time to file | J.L.C. | 1.40 | No Charge |
| 7/30/2013 | review federal rules re time for post trial motions; email and tel call OC re same; letters to Court re timing issues | V.L.H. | 1.60 | $640.00 |
| 7/30/2013 | legal research; draft post trial motion re prejudgment interest and liquidated damages | V.L.H. | 3.50 | $1,400.00 |
| 7/30/2013 | conf Tiff re fee petition; email Scott Pollins re fee affidavit | V.L.H. | .20 | $80.00 |
| 7/31/2013 | Reviewed correspondence over the past 3 years with Defense Counsel; Drafted portion of the fee petition about pre-trial settlement discussions; EEOC and Discovery | T.C.B. | 4.00 | $1,300.00 |
| 8/1/2013 | reviewed fees and updated to include deposition and other expenses | H.C.F. | .50 | $47.50 |
| 8/4/2013 | review firm billings for fee petition and adjust to "no charge" items | V.L.H. | 1.40 | $560.00 |
| 8/4/2013 | letter to Fellheimer re settlement proposal | V.L.H. | .60 | $240.00 |
| 8/5/2013 | legal research and draft brief re ADA retaliation claims | V.L.H. | 1.60 | No Charge |
| 8/5/2013 | revise letter to Fellheimer re proposed settlement | V.L.H. | .30 | $120.00 |
| 8/6/2013 | legal research and draft brief re ADA and PHRA retaliation claims | V.L.H. | 4.30 | No Charge |
| 8/6/2013 | emails to/from Alan re settlement proposals and fees; conf Tiff re response on fees | V.L.H. | .50 | $200.00 |
| 8/7/2013 | draft post-trial brief on ADA, PHRA and liquidated damages | V.L.H. | 1.40 | No Charge |
| 8/7/2013 | legal research re federal and state prejudgment interest; draft brief point re same; calculate interest | V.L.H. | 2.50 | $1,000.00 |
| 8/7/2013 | revise brief; email TCB re same | V.L.H. | .40 | $160.00 |
| 8/8/2013 | review transcript to add citations to brief; review and finalize brief | V.L.H. | 2.50 | $1,000.00 |
| 8/28/2013 | review court's decision | V.L.H. | .30 | $120.00 |
| 8/28/2013 | draft verification in support of fee petition | V.L.H. | 2.80 | $1,120.00 |
| 9/5/2013 | draft verification for fee petition | V.L.H. | 4.30 | $1,720.00 |
| 9/5/2013 | draft and revise verification | V.L.H. | 2.60 | $1,040.00 |
| 9/6/2013 | email Scott Pollins; compile documents for Scott's review for fee petition | V.L.H. | .50 | $200.00 |
| 9/6/2013 | revise fee petition | J.L.C. | 1.40 | $560.00 |
| 9/8/2013 | revise VH verification; email Pollins re verification | V.L.H. | 1.40 | $560.00 |
| 9/8/2013 | draft verification and brief for fee petition | V.L.H. | 1.20 | $480.00 |
| 9/9/2013 | legal research; draft brief in support of fee petition | V.L.H. | 5.40 | $2,160.00 |
| 9/9/2013 | emails Matos and Pollins re changes to verifications for fee petition | V.L.H. | .70 | $280.00 |
| 9/9/2013 | draft and revise brief in support of fee petition | V.L.H. | 1.60 | $640.00 |
| 9/10/2013 | draft brief in support of fee petition; revise verification; legal research; emails Carmen Matos | V.L.H. | 4.30 | $1,720.00 |
| 9/10/2013 | draft and edit fee petition brief | V.L.H. | 3.80 | $1,520.00 |
| 9/11/2013 | revise verification and brief for fee petition | V.L.H. | 2.60 | $1,040.00 |
| 9/11/2013 | Created spreadsheet for fee petition; compiled exhibits; copied, collated, and scanned brief & related documents in preparation for submission | A.H. | 2.00 | $190.00 |

| 9/11/2013 | reviewed and revised verification of VLH for fee petition and brief in support of fee petition; cite checked brief; drafted cover and table of contents | H.C.F. | 3.50 | $332.50 |
| 9/11/2013 | Edited the section about my background in the Verification; Reviewed Hill Wallack's Fees and determined what entries should be marked no charge; Added Hill Wallack's fees and cost to Verification | T.C.B. | .80 | $260.00 |
| 9/11/2013 | Reviewed/Edited Fee Petition Brief | T.C.B. | .80 | $260.00 |
| SUBTOTAL: | | | 1,715.00 | $440,491.00 |

## Costs

| 12/12/2011 | pacer fee for research retrieval | $2.40 |
| 1/26/2012 | Federal court filing fee for complaint | $350.00 |
| 2/2/2012 | certified mail fee for waivers of service of summons to OC | $7.40 |
| 4/26/2012 | fee for PA criminal record check | $10.00 |
| 5/10/2012 | parking fee for Rule 16 conference | $11.00 |
| 5/10/2012 | mileage to and from Rule 16 conference; 28 miles @ .55/mile - $15.40 | $15.40 |
| 6/21/2012 | certified mail fee for service of subpoena to Northampton D&A | $5.75 |
| 6/25/2012 | first class postage and return postage for medical authorizations to client | $2.80 |
| 10/23/2012 | deposition attendance fee and mileage for Stroble | $47.22 |
| 10/23/2012 | Certified Mail Postage: Stroble Subpoena | $5.75 |
| 11/20/2012 | deposition transcript fee for Stroble dep | $386.75 |
| 12/21/2012 | deposition transcript fees for Fox, Hirsch and Nimita | $917.75 |
| 1/21/2013 | fee for deposition transcript of Julie Diaz | $664.15 |
| 1/31/2013 | Lg. Envelope for J. Pratter's copies of reply to MSJ | $2.59 |
| 2/1/2013 | Postage to J. Pratter | $8.85 |
| 3/11/2013 | Postage - Letter & Exhibits to J. Rice | $5.60 |
| 4/12/2013 | quarterly pacer research fee | $21.60 |
| 4/16/2013 | VLH & TCB Meal (Follow up Depositions of Atiyeh & Hirsch) | $10.39 |
| 5/28/2013 | fee for deposition transcripts of Hirsch and Kappor-Atiyeh taken on 4/16/13 | $521.25 |
| 5/31/2013 | Printed 1 complete copy of Defendants' Trial Exhibits - 260 pages at .11/pg. | $28.60 |
| 6/4/2013 | Trial Exhibit Binder & Tabs | $23.57 |
| 6/4/2013 | Priority Mail Postage for Trial Exhibits to OC | $12.35 |
| 6/4/2013 | Copy of Plaintiff's trial exhibits for Defendants - 361 pages @ .11/pg | $39.71 |
| 6/10/2013 | Postage: Focus Group Confirmation Letters | $7.82 |
| 6/14/2013 | Priority Mail Postage to J. Rice | $7.45 |
| 6/17/2013 | Bar Association room rental fee for trial prep on 7/1 | $50.00 |
| 6/21/2013 | Cash Payment for Jury Research Project Participants (6/22) | $480.00 |
| 6/21/2013 | Staples:  Stationery Supplies for Jury Research Project | $34.96 |
| 6/21/2013 | Dollar Tree: Food Serving Supplies for Jury Research Project | $8.48 |
| 6/22/2013 | Days Inn Conference Room Rental for Jury Focus Group | $209.00 |
| 6/22/2013 | Giant:  Food/Beverage for Jury Research Project | $53.89 |
| 6/22/2013 | George's:  Food for Jury Research Project | $9.16 |
| 6/27/2013 | Food and beverages for Jury research group | $119.75 |
| 6/27/2013 | Payment:  Jury Research Group Participants | $600.00 |
| 6/28/2013 | rental fee for Days Inn Conference Rooms for focus group | $221.50 |

| | | |
|---|---|---|
| 7/1/2013 | Trial Consultation with Louise Lipman LCSW-R, TEP CGP | $1,531.00 |
| 7/2/2013 | Legal Media: Videographer for Jury Research Group | $700.00 |
| 7/8/2013 | Postage: Priority Mail - Proposed Jury Instructions & Verdict Sheet to J. Rice | $5.60 |
| 7/9/2013 | quarterly pacer fee for research | $2.50 |
| 7/9/2013 | Attendance and mileage fee for Stroble subpoena | $107.80 |
| 7/9/2013 | Attendance and mileage fee for Minnich subpoena | $116.84 |
| 7/10/2013 | Postage:  Certified Mail - Trial Subpoena to Malissa Stroble | $6.77 |
| 7/11/2013 | fee for service of subpoena on William Minnich, Jr. | $196.05 |
| 7/12/2013 | TCB - Parking @ courthouse for tech set up | $11.50 |
| 7/12/2013 | VLH Parking: Technology Set Up w/ Court | $16.00 |
| 7/12/2013 | VLH Travel: 70 miles round trip @ .55/mi to courthouse | $38.50 |
| 7/12/2013 | TCB Travel: 36 miles roundtrip @ .55/mi to courthouse | $19.80 |
| 7/12/2013 | 2 Complete Copies of Plaintiff's Exhibits for Judge Rice - 976 pages @ .11/pg | $107.36 |
| 7/12/2013 | Staples: Binders for trial materials & numbered exhibit dividers | $52.66 |
| 7/16/2013 | Printed New Defendant Document Production - 247 pages @ .11/page | $27.17 |
| 7/17/2013 | Fed Ex fee for overnight delivery of subpoena to Figueroa | $26.57 |
| 7/17/2013 | subpoena attendance and mileage fee for Nydia Figueroa | $107.80 |
| 7/17/2013 | Printed copies of new Defendant Document Production - 4 pages @ .11/pg | $0.44 |
| 7/17/2013 | Copies of Exhibits for Trial - 50 pages @ .11/pg | $5.50 |
| 7/18/2013 | Copies of Exhibits for Trial: 125 pages @ .11/pg | $13.75 |
| 7/18/2013 | 2 copies of Defendants' new trial exhibits, 61-77: 230 pages @ .11/pg | $25.30 |
| 7/19/2013 | VLH Travel: 60 miles round trip @ .55/mi to courthouse | $33.00 |
| 7/19/2013 | FedEx: Binder of Exhibits for Defendants | $66.78 |
| 7/19/2013 | TCB Parking @ court house | $12.50 |
| 7/19/2013 | Lunch at Trial | $45.95 |
| 7/19/2013 | VLH Parking @ Courthouse | $12.50 |
| 7/19/2013 | JLC Parking @ Courthouse | $12.50 |
| 7/19/2013 | Trial:  Fee for daily overnight transcripts | $4,400.00 |
| 7/19/2013 | TCB Travel: 36 miles roundtrip @ .55/mi to courthouse | $19.80 |
| 7/19/2013 | JLC Travel: 30 miles round trip @ .55/mi to courthouse | $16.50 |
| 7/20/2013 | Copies of Exhibits for Trial 150 @ .11/page | $11.00 |
| 7/21/2013 | VLH Travel: 30 miles @ .55/mi to courthouse | $16.50 |
| 7/21/2013 | Trial - Meal | $12.26 |
| 7/22/2013 | JLC travel round trip to courthouse 30 mi @ .55/mile | $16.50 |
| 7/22/2013 | TCB Travel: 36 miles roundtrip @ .55/mi to courthouse | $19.80 |
| 7/22/2013 | TCB Parking @ court house | $18.00 |
| 7/22/2013 | Trial - Lunch | $43.20 |
| 7/22/2013 | Trial - Dinner | $113.32 |
| 7/22/2013 | FedEx Philadelphia - printing costs | $46.44 |
| 7/22/2013 | JLC Parking @ Courthouse | $18.00 |
| 7/23/2013 | Trial - Lunch | $47.95 |
| 7/23/2013 | JLC travel round trip to courthouse 30 mi @ .55/mile | $16.50 |
| 7/23/2013 | TCB Travel: 36 miles roundtrip @ .55/mi to courthouse | $19.80 |
| 7/23/2013 | AEH: Meal - courthouse snackshop | $6.50 |
| 7/23/2013 | JLC Parking @ Courthouse | $12.50 |
| 7/23/2013 | TCB Parking @ Courthouse | $12.50 |
| 7/24/2013 | Meal | $58.24 |
| 7/24/2013 | Trial: Dinner | $147.92 |
| 7/24/2013 | FedEx: Printed Transcript | $60.08 |

| | | |
|---|---|---:|
| 7/24/2013 | JLC travel round trip to courthouse 30 mi @ .55/mile | $16.50 |
| 7/24/2013 | TCB Travel: 18 miles @ .55/mi to courthouse | $9.90 |
| 7/24/2013 | Trial: JLC Meal | $6.84 |
| 7/24/2013 | Trial - TCB Meal | $3.33 |
| 7/24/2013 | Hotel Monaco - Stay During Trial | $502.44 |
| 7/24/2013 | Meal | $1.89 |
| 7/24/2013 | Meal | $9.71 |
| 7/25/2013 | Trial - Lunch | $67.69 |
| 7/25/2013 | JLC Parking @ court house | $18.00 |
| 7/25/2013 | JLC travel round trip to courthouse 30 mi @ .55/mile | $16.50 |
| 7/25/2013 | TCB Travel: 18 miles @ .55/mi home from courthouse | $9.90 |
| 7/25/2013 | VLH Travel: 30 miles round trip @ .55/mi home from courthouse | $16.50 |
| 7/25/2013 | AEH: Beverages @ trial | $5.00 |
| 7/25/2013 | TCB Parking @ court house (7/24-7/25) | $36.00 |
| 7/26/2013 | Hotel Monaco - Stay for Trial | $1,735.29 |
| 8/28/2013 | transcript fee for last day of trial and overage for prior days | $696.30 |
| SUBTOTAL: | | $16,490.13 |

## Matter Ledgers

| | | |
|---|---|---:|
| 9/11/2013 | Balance before last invoice | $0.00 |
| 9/11/2013 | Invoice 10521 | $456,981.13 |
| SUBTOTAL: | | $456,981.13 |

## Trust Account

| | |
|---|---:|
| Available in Trust: | $0.00 |

TOTAL: $456,981.13

PREVIOUS BALANCE DUE: $0.00

CURRENT BALANCE DUE AND OWING: $456,981.13

**EXHIBIT C**

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|---|---|---|---|---|---|---|
| 9/23/11 | drafted fee agreements for transfer of file from HW | H.C.F. | 0.3 | $95.00 | No Charge | $28.50 |
| 1/30/12 | updated Diaz pleadings | H.C.F. | 0.7 | $95.00 | No Charge | $66.50 |
| 2/1/12 | Researched Judge Gene Pratter-Judge assigned to the case | T.C.B. | 0.5 | $325.00 | No Charge | $162.50 |
| 2/14/12 | Telephone interview with reporter; reviewed addresses in complaint | T.C.B. | 0.3 | $325.00 | No Charge | $97.50 |
| 2/16/12 | Reviewed article about the case in local Easton paper | T.C.B. | 0.2 | $325.00 | No Charge | $65.00 |
| 2/22/12 | review complaint | V.L.H. | 0.4 | $400.00 | No Charge | $160.00 |
| 3/5/12 | t/call with paralegal for OC re: waivers of service and filing; emailed pdf | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 5/2/12 | t/call with TCB re: Diaz and Rule 16 conf. | H.C.F. | 0.2 | $95.00 | No Charge | $19.00 |
| 5/7/12 | Signed Joint Discovery Plan; Reviewed and Signed 26(a) Disclosure; Reviewed and Signed Conf. Report | T.C.B. | 0.4 | $325.00 | No Charge | $130.00 |
| 5/8/12 | t/call with client re: financial docs.; updated pleadings | H.C.F. | 0.7 | $95.00 | No Charge | $66.50 |
| 5/10/12 | t/call with TCB re: Diaz settlement and Rule 16 | H.C.F. | 0.2 | $95.00 | No Charge | $19.00 |
| 5/14/12 | Reviewed the Eastern District's Pilot Project Discovery Outline | T.C.B. | 0.5 | $325.00 | No Charge | $162.50 |
| 5/16/12 | discussion with TCB re: status; scheduling order | H.C.F. | 0.3 | $95.00 | No Charge | $28.50 |
| 5/24/12 | revised and formatted discovery requests; discussion with TCB re: requests | H.C.F. | 2.1 | $95.00 | No Charge | $199.50 |
| 5/25/12 | revised and reformatted discovery requests; emailed to OC | H.C.F. | 1.4 | $95.00 | No Charge | $133.00 |
| 5/30/12 | Research ADA Retaliation Claim | T.C.B. | 0.7 | $325.00 | No Charge | $227.50 |
| 5/31/12 | research regarding alcoholism as disability discussion with TCB re: ADA retaliation claim and | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 6/1/12 | updated pleadings; discussion with TCB re: research | H.C.F. | 0.8 | $95.00 | No Charge | $76.00 |
| 6/14/12 | Typing up Interrogatories and Request to Produce to be answered. | H.C.F. | 2 | $95.00 | No Charge | $190.00 |
| 6/21/12 | type interrogatories; organize file - Emily | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 6/22/12 | interrogatories - Emily | H.C.F. | 1 | $95.00 | No Charge | $95.00 |

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|---|---|---|---|---|---|---|
| 6/26/12 | scanned and bates stamped documents for production; | H.C.F. | 1.2 | $95.00 | No Charge | $114.00 |
| 7/6/12 | discussion with TCB re: medical records | H.C.F. | 0.7 | $95.00 | No Charge | $66.50 |
| 7/11/12 | copy and bates stamp document production | | | | | |
| | t/call to Riverside re: records; faxed authorization; | | | | | |
| | formatted letter to Baker and emailed | H.C.F. | 0.9 | $95.00 | No Charge | $85.50 |
| 7/20/12 | printed doc production and discovery responses; updated pleadings; bindered and reviewed doc production | H.C.F. | 1.7 | $95.00 | No Charge | $161.50 |
| 7/25/12 | letter to Baker with discovery responses; scanned and saved responses; bates stamped doc production; emailed all to Baker | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 8/8/12 | formatted letter to Baker | H.C.F. | 0.3 | $95.00 | No Charge | $28.50 |
| 8/14/12 | formatted and sent letter to Baker; discussion with TCB re: medical records | H.C.F. | 0.8 | $95.00 | No Charge | $76.00 |
| 8/31/12 | formatted and mailed letter to Baker re: depositions; discussion re: discovery responses with TCB | H.C.F. | 0.6 | $95.00 | No Charge | $57.00 |
| 9/24/12 | updated pleadings; discussion re: deps with TCB; got CR | H.C.F. | 0.9 | $95.00 | No Charge | $85.50 |
| 10/1/12 | updated pleadings | H.C.F. | 0.7 | $95.00 | No Charge | $66.50 |
| 10/4/12 | updated file | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 11/9/12 | typed up atty notes; made copies for upcoming depositions; updated pleadings and correspondence | A.H. | 0.8 | $95.00 | No Charge | $76.00 |
| 11/12/12 | updated pleadings file | H.C.F. | 0.6 | $95.00 | No Charge | $57.00 |
| 11/16/12 | updated pleadings | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 11/26/12 | updated pleadings | H.C.F. | 0.6 | $95.00 | No Charge | $57.00 |
| 11/26/12 | filed protective order | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 12/5/12 | deposition of Carolyn Hirsch | H.C.F. | 3 | $95.00 | No Charge | $285.00 |
| 12/28/12 | t/call with JLC re: SJ Motion; email to TCB | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 1/10/13 | discuss motion to strike | J.L.C. | 0.4 | $400.00 | No Charge | $160.00 |

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|------|-------|-------|----------------|------|----------------|-------|
| 1/10/13 | revised and faxed letter to Judge Pratter; emailed letter to Baker | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 1/20/13 | read defendants' SJ papers and outline response | V.L.H. | 1.6 | $400.00 | No Charge | $640.00 |
| 1/22/13 | review and edit SJ brief; review SJ record | V.L.H. | 5.5 | $400.00 | No Charge | $2,200.00 |
| 1/23/13 | Edit and revise SJ brief; review record | V.L.H. | 2.5 | $400.00 | No Charge | $1,000.00 |
| 1/23/13 | draft and revise fact section of SJ brief | V.L.H. | 1.3 | $400.00 | No Charge | $520.00 |
| 1/24/13 | Review record; draft and revise SJ brief | V.L.H. | 6 | $400.00 | No Charge | $2,400.00 |
| 1/24/13 | revise SJ brief | V.L.H. | 1.6 | $400.00 | No Charge | $640.00 |
| 1/29/13 | Editing Brief in Response to SJ; Edited Response to Def Numbered Fact Paragraphs | T.C.B. | 5 | $325.00 | No Charge | $1,625.00 |
| 2/22/13 | reviewed scheduling order; discussion with TCB; converted Rice orders to pdf | H.C.F. | 0.8 | $95.00 | No Charge | $76.00 |
| 2/28/13 | organized file | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 3/5/13 | updated pleadings | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 3/12/13 | Updated pleadings & file | A.H. | 0.2 | $95.00 | No Charge | $19.00 |
| 3/14/13 | Researched and Drafted Praecipe to Withdrawl Retaliation Claims | T.C.B. | 0.5 | $325.00 | No Charge | $162.50 |
| 3/15/13 | revised and filed praecipe to withdraw claims | H.C.F. | 0.8 | $95.00 | No Charge | $76.00 |
| 3/18/13 | updated pleadings | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 3/21/13 | legal research re ADA retaliation claim | V.L.H. | 0.7 | $400.00 | No Charge | $280.00 |
| 3/25/13 | legal research and draft brief to Judge Rice re ADA retaliation | V.L.H. | 4.3 | $400.00 | No Charge | $1,720.00 |
| 3/26/13 | draft and finalize letter to Court re retaliation claim; tel call to George Morrison re same | V.L.H. | 2.5 | $400.00 | No Charge | $1,000.00 |
| 3/26/13 | Reviewed letter to Judge Rice and G. Morrison about Retaliation Claim | T.C.B. | 0.4 | $325.00 | No Charge | $130.00 |
| 4/5/13 | Reviewed J. Baker's email regarding extending trial; letter to judge regarding retaliation claims; discussion with VLH pushing the trial off for 45 days. | T.C.B. | 0.4 | $325.00 | No Charge | $130.00 |

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|---|---|---|---|---|---|---|
| 4/12/13 | Telephone conv. with G. Kounoupis and follow-up email to G. Kounoupis regarding Anna O'Tool Matter | T.C.B. | 0.4 | $325.00 | No Charge | $130.00 |
| 4/16/13 | Travel time to Saucon Valley; Deposition of Nimita Atiyeh and Carolyn Hirsch | T.C.B. | 6.8 | $325.00 | No Charge | $2,210.00 |
| 4/22/13 | Research/Notes for Jury Instructions | A.H. | 0.4 | $95.00 | No Charge | $38.00 |
| 4/24/13 | order and review focus group materials | V.L.H. | 0.5 | $400.00 | No Charge | $200.00 |
| 4/29/13 | legal research re jury instructions | V.L.H. | 0.7 | $400.00 | No Charge | $280.00 |
| 5/14/13 | Research to supplement Jury Instructions | T.C.B. | 4.8 | $325.00 | No Charge | $1,560.00 |
| 5/15/13 | Drafting Jury Instructions | T.C.B. | 5.5 | $325.00 | No Charge | $1,787.50 |
| 5/15/13 | Focus group research and planning | V.L.H. | 2.5 | $400.00 | No Charge | $1,000.00 |
| 5/16/13 | revised jury instructions | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 5/21/13 | revised jury instructions | H.C.F. | 1 | $95.00 | No Charge | $95.00 |
| 5/22/13 | revised jury instructions doc 3 | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 6/3/13 | Meeting to Discuss Jury Focus Group | T.C.B. | 1.3 | $325.00 | No Charge | $422.50 |
| 6/3/13 | team meeting re focus group plans | V.L.H. | 1.2 | $400.00 | No Charge | $480.00 |
| 6/3/13 | meet to discuss focus group; research on focus group and jury questionnaire EDPA | J.L.C. | 1.5 | $400.00 | No Charge | $600.00 |
| 6/4/13 | Drafted script for callers for Jury Research Project | T.C.B. | 0.5 | $325.00 | No Charge | $162.50 |
| 6/5/13 | Reviewed Script for callers for Jury Research Project | T.C.B. | 0.2 | $325.00 | No Charge | $65.00 |
| 6/5/13 | formatted and typed verdict form | H.C.F. | 0.8 | $95.00 | No Charge | $76.00 |
| 6/6/13 | conf Ali and Tiffanie re focus group | V.L.H. | 0.4 | $400.00 | No Charge | $160.00 |
| 6/18/13 | Typed up forms for focus group | A.H. | 1.5 | $95.00 | No Charge | $142.50 |
| 6/18/13 | legal research re jury instructions; draft and revise instructions | V.L.H. | 2.6 | $400.00 | No Charge | $1,040.00 |
| 6/19/13 | Typed/Revised forms for focus group | A.H. | 0.4 | $95.00 | No Charge | $38.00 |
| 6/20/13 | draft and revise verdict sheet and ADA jury instructions | V.L.H. | 3.2 | $400.00 | No Charge | $1,280.00 |
| 6/20/13 | Researched rates & booked hotel rooms for trial | A.H. | 0.3 | $95.00 | No Charge | $28.50 |
| 6/20/13 | Met w/ TCB for practice presentation for jury research project; provided feedback | A.H. | 0.8 | $95.00 | No Charge | $76.00 |
| 6/20/13 | discussion with TCB re: focus group | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|---|---|---|---|---|---|---|
| 6/21/13 | reviewed jury instructions for focus groups | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 6/25/13 | copied and scanned orders; focus group prep | H.C.F. | 0.3 | $95.00 | No Charge | $28.50 |
| 6/25/13 | Reviewed/revised TCB's presentation for jury research group | A.H. | 1.3 | $95.00 | No Charge | $123.50 |
| 6/26/13 | discussion with TCB re: focus group and Figueroa issues; revised presentation | H.C.F. | 0.6 | $95.00 | No Charge | $57.00 |
| 6/27/13 | updated pleadings | H.C.F. | 0.6 | $95.00 | No Charge | $57.00 |
| 6/27/13 | Met with TCB to review presentation for jury research group | A.H. | 1 | $95.00 | No Charge | $95.00 |
| 6/28/13 | review videotaped deliberations and focus group results | V.L.H. | 2.5 | $400.00 | No Charge | $1,000.00 |
| 6/28/13 | reviewed first focus group video | H.C.F. | 0.7 | $95.00 | No Charge | $66.50 |
| 7/1/13 | prepare client for trial | J.L.C. | 8.2 | $400.00 | No Charge | $3,280.00 |
| 7/1/13 | Meet with Julie, TCB and Louise for trial prep | V.L.H. | 9 | $400.00 | No Charge | $3,600.00 |
| 7/2/13 | research and citations for pretrial memo; discussion with TCB re: instructions; organized rebuttal docs; discussion with TCB re: Saucon rates; discussion with TCB re: trial subpoenas | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 7/3/13 | revised and formatted jury instructions; revised and formatted pretrial memo and added stipulations; reviewed and revised verdict form; formatted letter to Rice and faxed | H.C.F. | 5 | $95.00 | No Charge | $475.00 |
| 7/3/13 | Trial Prep Editing Jury Instructions and Verdict Sheet | T.C.B. | 8 | $325.00 | No Charge | $2,600.00 |
| 7/8/13 | revised jury instructions; formatted one document for jury instructions; formatted verdict form and proposed statement of facts for voir dire; reviewed all and filed with the Court | H.C.F. | 2.7 | $95.00 | No Charge | $256.50 |
| 7/9/13 | formatted and filed supplemental jury instructions to include in limine instructions | H.C.F. | 0.8 | $95.00 | No Charge | $76.00 |

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|------|-------|-------|----------------|------|----------------|-------|
| 7/9/13 | letter to Judge Rice re: supplemental jury instructions; faxed to Court | H.C.F. | 0.4 | $95.00 | No Charge | $38.00 |
| 7/9/13 | research on jury questionnaire; report to VH & TB; review notes from consultation | J.L.C. | 0.9 | $400.00 | No Charge | $360.00 |
| 7/10/13 | Created seating chart for jury selection | A.H | 0.2 | $95.00 | No Charge | $19.00 |
| 7/11/13 | firm meeting; review Atiyeh cross | H.C.F. | 2 | $95.00 | No Charge | $190.00 |
| 7/11/13 | download program to run exhibits for trial and convert to readable text | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 7/11/13 | cross exam; trial prep | J.L.C. | 2.2 | $400.00 | No Charge | $880.00 |
| 7/11/13 | Firm meeting re: Atiyeh cross exam | A.H. | 2 | $95.00 | No Charge | $190.00 |
| 7/12/13 | travel to Philadelphia for tech set up in courtroom; conf with Tiff re strategy on exhibits | V.L.H. | 4 | $400.00 | No Charge | $1,600.00 |
| 7/12/13 | revised amended pretrial order and document production; discussion with TCB and VLH re: time sheets and call offs | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 7/14/13 | compared Def. jury instructions with ours; trial prep - reviewed Atiyeh Cross and TCB opening | H.C.F. | 4.5 | $95.00 | No Charge | $427.50 |
| 7/15/13 | revised and formatted joint voir dire; filed with Court via ECF | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 7/15/13 | assist w/opening; write damage piece for closing | J.L.C. | 0.9 | $400.00 | No Charge | $360.00 |
| 7/16/13 | worked on Fox Cross with TCB | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 7/16/13 | updated Diaz pleadings binder for trial; updated Diaz trial binder for TCB | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 7/16/13 | pulled research for pretrial conference call; discussion with TCB and VLH | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 7/17/13 | revise jury instructions;review Fellheimer letter; research case law on retaliation and standards for notice | J.L.C. | 4.5 | $400.00 | No Charge | $1,800.00 |

Diaz v. Saucon Valley Manor, et al.

| Date | Notes | Owner | Billable units | Rate | Amount Charged | Value |
|---|---|---|---|---|---|---|
| 7/17/13 | formatted letter to Judge Rice re: personnel records of added witnesses; faxed to Court and emailed to Fellheimer | H.C.F. | 0.6 | $95.00 | No Charge | $57.00 |
| 7/17/13 | trial prep - run through of TCB's opening | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 7/17/13 | printed research for JLC re: 29 CFR 825.301 | H.C.F. | 0.5 | $95.00 | No Charge | $47.50 |
| 7/17/13 | formatted and revised letter to court re: Federal regulations; research into interference claim and 29 CFR 825.300 | H.C.F. | 1.5 | $95.00 | No Charge | $142.50 |
| 7/19/13 | Trial | A.H. | 11 | $95.00 | No Charge | $1,045.00 |
| 7/21/13 | assist with jury instructions and trial prep | J.L.C. | 3.2 | $400.00 | No Charge | $1,280.00 |
| 7/22/13 | Trial | A.H. | 12.75 | $95.00 | No Charge | $1,211.25 |
| 7/22/13 | assist with trial; bring documents to court, set up file room at courthouse, organize case material | J.L.C. | 8.1 | $400.00 | No Charge | $3,240.00 |
| 7/23/13 | assist with trial; review all transcripts and jury instructions | J.L.C. | 8.1 | $400.00 | No Charge | $3,240.00 |
| 7/24/13 | assist with stipulations and jury instructions; assist with trial | J.L.C. | 4.3 | $400.00 | No Charge | $1,720.00 |
| 7/24/13 | Trial, including travel--assisting attorneys with documents; taking notes; keeping track of exhibits used. | A.H. | 10.75 | $95.00 | No Charge | $1,021.25 |
| 7/25/13 | Trial | A.H. | 8.5 | $95.00 | No Charge | $807.50 |
| 7/29/13 | return trial materials to office; unpack | J.L.C. | 1.2 | $400.00 | No Charge | $480.00 |
| 7/30/13 | read fee petition research; calculate time to file | J.L.C. | 1.4 | $400.00 | No Charge | $560.00 |
| 8/5/13 | legal research and draft brief re ADA retaliation claims | V.L.H. | 1.6 | $400.00 | No Charge | $640.00 |
| 8/6/13 | legal research and draft brief re ADA and PHRA retaliation claims | V.L.H. | 4.3 | $400.00 | No Charge | $1,720.00 |
| 8/7/13 | draft post-trial brief on ADA, PHRA and liquidated damages | V.L.H. | 1.4 | $400.00 | No Charge | $560.00 |

**Total Value of No-Charge Work**      $64,797.00

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JULIE DIAZ
          Plaintiff   :
                      :
          vs.        :CIVIL ACTION NO. 5:12-cv-0433
                      :
SAUCON VALLEY MANOR, INC.,  :
et al.                :
          Defendant  :

**VOLUME II**

Deposition of NIMITA KAPOOR-ATIYEH, taken by and before Michelle A. Katulka, Registered Professional Reporter, at the law offices of White and Williams, LLP, 3701 Corporate Parkway, Suite 300, Center Valley, Pennsylvania, on Tuesday, **April 16, 2013**, commencing at 10:10 a.m., prevailing time.

APPEARANCES:

HARDWICK COLLIER, LLC
BY:  VIRGINIA L. HARDWICK, ESQUIRE
BY:  TIFFANIE C. BENFER, ESQUIRE
    179 North Broad Street
    Doylestown, PA 18901
    (215) 230-1912
*Representing the Plaintiff*

WHITE AND WILLIAMS, LLP
BY:  GEORGE C. MORRISON, ESQUIRE
    3701 Corporate Parkway - Suite 300
    Center Valley, PA 18034-8233
    (610) 782-4913
*Representing the Defendant*

    ------

ALSO PRESENT:

Julie Diaz

    -----

I N D E X

DEPONENT:                         PAGE:

NIMITA KAPOOR-ATIYEH

    By:  Ms. Hardwick          66

    -----

| EXHIBITS: | PAGE: |
|---|---|
| Exhibit 17 --- Saucon Valley Manor web page | 69 |
| Exhibit 18 --- Whitehall Manor web page | 69 |
| Exhibit 19 --- Defendants', Saucon Valley Manor, Inc. and Nitmita KapoorAtiyeh a/k/a Nemita Atiyeh a/k/a Nemo Aiyahk's First Supplemental Answers And Objections To Plaintiff's First Set Of Interrogatories To Defendants | 100 |
| Exhibit 20 --- Charge Of Discrimination, Anna M. O'Toole | 114 |
| Exhibit 21 --- letter dated June 8, 2011 | 114 |
| Exhibit 22 --- Response To Request For Information | 114 |
| Exhibit 23 --- Plaintiff's Amended Complaint, Zielinski v. Whitehall Manor, Inc. | 122 |
| Exhibit 24 --- handwritten memo, 5/29/09 | 133 |
| Exhibit 25 --- Affidavit of Nimita Kapoor-Atiyeh | 152 |
| Exhibit 26 --- Transcript Of Testimony, Date Of Hearing: September 3, 2009 | 160 |
| Exhibit 27 --- Defendants, Saucon Valley Manor, Inc. and Nimita KapoorAtiyeh a/k/a Nemita Atiyeh a/k/a Nemo Aiyah's Answers And Objections To Plaintiff's First Set Of Interrogatories To Defendants | 181 |
| Exhibit 28 --- Verification | 182 |

    -----

66

```
 1              -----
 2        STIPULATION OF COUNSEL
 3              -----
 4        It is stipulated by and between counsel for
 5   the respective parties that the signing,
 6   sealing, certification and filing are waived,
 7   and that all objections, except as to the form
 8   of the question, are reserved to the time of
 9   trial; each counsel reserving, however, the
10   right to advise his client or clients not to
11   answer any questions considered by counsel to be
12   improper.
13              -----
14        NIMITA KAPOOR-ATIYEH, having been duly
15   sworn, was examined and testified as follows:
16              -----
17   BY MS. HARDWICK:
18   Q.   Okay.  Good morning.
19   A.   Good morning.
20   Q.   Let me start with making sure I have your name right.
21   Sometimes we see Kapoor-Atiyeh and sometimes just Atiyeh.
22   What would you like us to call you?
23   A.   That's up to you.  My legal name is Nimita
24   Kapoor-Atiyeh.
25   Q.   Atiyeh, I apologize.
```

179

```
1   Q.   Okay.  So that's the way for us to find out, and
2   that's not -- it's not something that you're able to
3   answer?
4   A.   No.
5   Q.   All right.  So we would have to talk to your
6   accountant --
7   A.   Yeah.
8   Q.   -- about --
9   A.   Yeah.
10  Q.   -- about what the profits are?
11  A.   Yeah.
12  Q.   Okay.  Because I'd rather not have you have to pay
13  your accountant to come in for a deposition --
14  A.   I am not going to give you information I don't have.
15  Q.   And you don't even have a guess of that?
16  A.   No.
17  Q.   Even though you're the President?
18  A.   I -- I -- I just think you don't know what it takes
19  to run two buildings with residents around the clock, and
20  the acuities and the employees.  So I have enough on my
21  plate, I don't need to add more to my plate.
22  Q.   Right --
23  A.   Yeah.
24  Q.   -- okay.
25       So you're trying to keep things simple and
```

180

```
1   streamlined, and --
2   A.   My top focus is the care and welfare of my residents.
3   Q.   Okay.  When any of these Complaints that we've been
4   talking about were filed with the EEOC, Mr. Zielinski's or
5   Miss Diaz's or Miss O'Toole's, did anyone give
6   instructions to any of your employees to tell them to
7   preserve all the documents relating to those employees?
8   A.   John -- John told us to make sure we have everything.
9   Q.   Right.
10       And so -- well, let's -- we'll focus on Miss Diaz's
11  case.
12       So John told you to make sure you saved everything
13  relating to Miss Diaz?
14  A.   Yes.
15  Q.   Okay.  And when you say John told us, who is us?
16  A.   Those of us involved; Carolyn, Cindy and myself.
17  Q.   Okay.  So you know that that was specifically
18  communicated to Cindy to save everything?
19  A.   Correct.  But if something has already been
20  eliminated, Cindy -- the way Cindy works is she works on
21  what she's working on then.  So if Cindy has already
22  eliminated or thrown something away, she -- where is she
23  going to reproduce it?  We are not going to lie or mislead
24  somebody, we have what we have.
25  Q.   Do you know when that instruction was given to
```

181

```
1   preserve documents?
2   A.   I'm sure once we were contacted and served.
3   Q.   Contacted by counsel or served with a Complaint?
4   A.   I have no idea; whichever happened first.
5   Q.   And was that communication made in writing, or by the
6   phone, or something else?
7   A.   I have no idea.  I know Carolyn has her personnel
8   file all preserved, and that's what we went off of.  I
9   have nothing related that's not in the personnel file.
10       -----
11       (Discussion held off record.)
12       -----
13       (Exhibit 27, Defendants, Saucon Valley
14       Manor, Inc. and Nimita KapoorAtiyeh a/k/a Nemita
15       Atiyeh a/k/a Nemo Aiyah's Answers And Objections To
16       Plaintiff's First Set Of Interrogatories To
17       Defendants, was marked for the purpose of
18       identification on this date and is attached hereto.)
19       -----
20  BY MS. HARDWICK:
21  Q.   Miss Atiyeh, I'm showing you -- I just pronounced
22  that incorrectly.
23  A.   Atiyeh.
24  Q.   Atiyeh, thank you.
25  A.   And you can go back to Nimita or Nemo.
```

182

```
1   Q.   Thank you, Nimita is easier.
2        I'm showing you Answers to Interrogatories that we
3   received from your counsel last summer now, July 19th,
4   2012, they were dated.
5        Take a look at this and tell me if this is something
6   that you have seen before.
7   A.   I don't know.  I just saw the other interrogatories,
8   so I really don't know.
9        MS. HARDWICK:   Well, let's mark this too,
10       then as 28.
11       -----
12       (Exhibit 28, Verification, was marked for
13       the purpose of identification on this date and is
14       attached hereto.)
15       -----
16  BY MS. HARDWICK:
17  Q.   Okay.  If you take a look at Exhibit 28, the first
18  page, is that your signature?
19  A.   Yes.
20  Q.   Okay.  And I see you corrected a typo that we had,
21  the misspelling of your name.
22  A.   Yes.
23  Q.   Okay.  And this was signed on March 19th, 2013,
24  correct?
25  A.   Correct.
```

1  Q.   And do you remember signing this?
2  A.   Yes.
3  Q.   Okay.  And at the time you signed this, what it
4  states is that you verified that the facts contained in
5  Defendant's Answers and Objections to Plaintiff's First
6  Set of Interrogatories are true and correct to the best of
7  your knowledge, information and belief.
8       And before you signed this on March 19th, did you
9  look at the Answers to the First Set of Interrogatories to
10 see --
11 A.   I'm sure I did.
12 Q.   -- that they were correct?
13 A.   I'm sure I did.
14 Q.   Okay.  Well, if you look at the first page of Exhibit
15 27, that states that this is Answers and Objections to
16 Plaintiff's First Set of Interrogatories to Defendants.
17      Do you see that?
18 A.   Yes.
19 Q.   Okay.  So did you look at this document that's
20 Exhibit 27 before you signed on the Verification on
21 Exhibit 28?
22 A.   I'm sure I did.
23 Q.   Okay.  And you understood that it was important that
24 Answers to Interrogatories be accurate and correct?
25 A.   Yes.

1  Q.   Okay.  Let me direct your attention to Interrogatory
2  No. 2., which is on Page 3.  And Interrogatory No. 2. --
3  Interrogatory, I'm sure you know, is just a long word for
4  a question -- says, Identify by name, sex, last known
5  address, and telephone number every employee and/or former
6  employee at Saucon Valley Manor ... or Whitehall Manor,
7  skipping ahead, who complained of Americans with
8  Disabilities Act, Family Medical Leave Act, and there's a
9  bunch of other statutes in there.
10      Did you read Interrogatory No. 2.?
11 A.   I'm sure briefly, yeah.
12 Q.   Okay.  And at the time this interrogatory was
13 answered back in July of 2012 and at the time you
14 signed --
15 A.   In March.
16 Q.   -- the Verification in March of 2013, you knew that a
17 Complaint had been filed in Federal court by
18 Mr. Zielinski, right?
19 A.   Yeah, it was filed years ago.
20 Q.   Right, so -- and you knew about that Complaint?
21 A.   Yes.
22 Q.   Okay.  And you knew about the charges in those other
23 two cases we've talked about at the PHRC, right?
24 A.   That were dismissed and one was not followed up on.
25 Q.   Right, but you knew that those Complaints were out

1  there?
2  A.   No, I -- I completely forgot about those --
3  Q.   Okay.
4  A.   Yeah.
5  Q.   But you certainly knew about the Zielinski Complaint?
6  A.   Yes.
7  Q.   Okay.  And when you answered Interrogatory No. 2.,
8  which asks which employees who have complained about
9  violations of the ADA or the FMLA --
10 A.   Uh-huh.
11 Q.   -- why did you not provide any information concerning
12 the Zielinski Complaint?
13 A.   I have no idea.  I -- I don't know.
14 Q.   Did you purposefully not --
15 A.   No.
16 Q.   -- provide that information?
17 A.   I would never purposefully hide anything.  I don't
18 know why it wasn't put in.
19 Q.   Okay.  You read the answers, right?
20 A.   Yes.
21 Q.   You signed the Verification, right?
22 A.   Yes.
23 Q.   Okay.  And you were at that moment aware that the
24 Complaint had been filed in Federal court in the Zielinski
25 case, right?

1  A.   Yes.
2  Q.   Okay.  And, in fact, you even know that you
3  personally were discussed in kind of disparaging terms in
4  that Complaint, right?
5  A.   I don't recall.  I don't recall reading the whole
6  Complaint.
7  Q.   Well, let's take a look at it.
8  A.   It's right here, 25.
9  Q.   Okay.  You're ahead of me as usual.
10      No, that's the Affidavit.  Let's look at the
11 Complaint, which is Exhibit 23.
12      Let's just focus on the last sentence of the first
13 paragraph of that Complaint, and it's speaking about
14 Mr. Zielinski, and this is what it says, and you tell me
15 if I read it correctly.
16 A.   Yes.
17 Q.   "Several months of incessant harassment ensued until
18 he was fired - one day after Defendant's president Nimita
19 Kapoor-Atiyeh received correspondence warning of FMLA and
20 age discrimination concerns.  Kapoor-Atiyeh's alarming
21 conduct - as more fully described herein -- is consistent
22 with the abominable employment tactics for which she is
23 notorious."
24 A.   Yes.
25 Q.   You read that?

187

1    A.    Yes. He's good at adjectives; you should read his
2    letter.
3    Q.    I think what I said was you are aware that some -- I
4    can't remember what word I used -- some negative things
5    were said about you in this Complaint, right?
6    A.    Right. Those things happen when you have employees.
7    I'm not in business to please everyone.
8    Q.    Right.
9          That's the kind of language that you don't usually
10   forget that's been used about you, right?
11   A.    Those things don't bother me.
12   Q.    Well, were you unhappy about this Complaint being
13   filed?
14   A.    I -- I feel very confident that we were right in
15   terminating Jerry Zielinski.
16   Q.    Were you unhappy about this Complaint being filed?
17   A.    I think you're never happy when a Complaint is filed,
18   but when you know you're in the right, you do what's right
19   and you fight for what's right.
20   Q.    So let me go back to the question I asked you before.
21   Why didn't you reveal the existence of this Complaint when
22   you answered the interrogatories?
23   A.    I didn't, I mean, knowingly not reveal it. I don't
24   know why it wasn't put in there, so I apologize for that.
25   Q.    Okay. I don't want to step on attorney/client

188

1    privilege, but it sounds to me like you're saying that was
2    a decision made by your lawyers.
3          Is that --
4    A.    No, I'm not saying that. I'm just saying it was not
5    here, so I apologize that it wasn't there.
6    Q.    Okay. Were you hoping we wouldn't find out about it?
7    A.    I am sure you would find out about everything. I'm
8    really not concerned. The truth always comes out, and I'm
9    happy about that. I want it to come out in court in the
10   Diaz case, everything.
11   Q.    You're looking at Julie Diaz when you say that.
12   A.    Yes.
13   Q.    Are you feeling confident about how that case will be
14   resolved?
15   A.    I feel very confident that I treated Julie with the
16   utmost in fairness and the whole time she was in my
17   employment.
18   Q.    I guess a jury will decide that in --
19   A.    They will, yes.
20   Q.    Okay. When you answered these interrogatories and
21   did not reveal the existence of the Zielinski Complaint,
22   were you concerned that us knowing about that Complaint
23   and the inflammatory language in it would make you look
24   bad?
25   A.    No, I don't think one thing has anything to do with

189

1    the other. I'm sure in your legal profession many people
2    have called you names, and I don't think you would let
3    them bother you.
4    Q.    Not often.
5    A.    Okay.
6    Q.    You know, I know we danced around it, but I don't
7    know if I asked you directly, so I apologize if I did, but
8    what was your personal income in 2012?
9    A.    I told you, we didn't do our taxes yet. They will
10   probably be filed in October.
11   Q.    Okay.
12   A.    And I don't know off the top of my head. You asked
13   me some questions and I told you what I knew.
14         MS. HARDWICK:   Let's take a break and see
15   if I have anything else for you or not, okay?
16         THE WITNESS:   Okay.
17         MS. HARDWICK:   Thanks.
18         -----
19   (Recess declared.)
20         -----
21   (After recess.)
22         -----
23         MS. HARDWICK:   Okay. And I don't have
24   anything further. Thank you for your time
25   today.

190

1          THE WITNESS:   It was nice meeting you.
2          MS. HARDWICK:   You, too.
3    Nothing from you?
4          MR. MORRISON:   No. No.
5          -----
6    (Deposition was concluded at 1:20 p.m.)
7          -----

# EXHIBIT E

LODISE LIPMAN, BCSW, CP, PAT
1133 Broadway
Suite 1227
New York City, New York 10010
(917) 698-2663 // LipmanNYC1@aol.com

## EDUCATION

| 1996 | **Trainer, Educator and Practitioner of Psychodrama** |
|------|------|
| 1992 | **Certified Practitioner of Psychodrama** |
| September 1986 - | Training in Psychodrama, Sociometry and Group Psychotherapy |
| 1995 | Psychodrama Training Institute |
| | New York, New York |

| July 1990 | **Master of Social Work** |
|-----------|------|
| | Yeshiva University |
| | Major Method - Clinical Casework |
| | New York, New York |

| June 1974 | **Bachelor of Arts, English Literature and Theater** |
|-----------|------|
| | Washington Square College |
| | New York University |
| | New York, New York |

## CLINICAL EXPERIENCE

| October 1990 - 1994 | **REGENT HOSPITAL** - New York, New York |
|------|------|
| | <u>Head of Psychodrama Services - Inpatient Dual Diagnosis Unit (Psychiatric and Substance Abuse) Inpatient Chemical Dependency Unit; Chemical Dependency Unit for LGBT</u> |

| September 1991 - present | **INSTITUTE CONSULTATION CENTER** - New York, New York |
|------|------|
| | <u>Creative Recovery Program - 12 Step Psychodrama Group For People in Recovery</u> |

| September 1995 - 1998 | **COMMON BOND** - Saratoga, New York |
|------|------|
| | <u>Weekend Workshops for Personal Growth</u> |

| April 1991 - present | **PRIVATE PRACTICE WITH INDIVIDUALS, COUPLES AND GROUPS** - New York, New York |
|------|------|

## TRIAL CONSULTANT

| August 2010 - Present | **Irwin & Boesin, Denver, Colorado; Randall Kelly** |
|------|------|
| | Witness Preparation; Story & Theme Development; Jury Selection |

| October 2010 - Present | **Joe Deliso LLC, Brooklyn, NY** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development |

| January 2011- Present | **Scott Blankenship, Seattle, WA** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development |

| February 2011- Present | **Paul Nathan, San Francisco, CA** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development |

| November 2011- Present | **Hardwick & Collier LLC; Virginia Hardwick, Joyce Collier, Tiffany C. Benefer; Doylestown, PA** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development |

| January 2012- Present | **Henry F. Sherrod III, P.C., Florence, AL** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development |

| February 2012- Present | **Zane Cagle, St. Louis, MO** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development |

| October 2012- Present | **Friedman Rubin; Richard H. Friedman; Bremmerton, WA** |
|------|------|
| | Witness Preparation for Trial and Deposition; Case Theme Development; Jury Selection; Law Firm Organization |

| | |
|---|---|
| October 2012 - Present | **Fury Bailey; Francisco Duarte, Seattle, WA** <br> Witness Preparation for Trial and Deposition; Case Theme Development |
| October 2012 - Present | **Finucane & Hartzell, LLP; Leo Finucane ; Pittsford, NY** <br> Witness Preparation for Trial and Deposition; Case Theme Development |
| January 2013- Present | **John Griffith, Nashville, TN** <br> Witness Preparation for Trial and Deposition; Case Theme Development |
| January 2013- Present | **Klotz Law Firm; J. Christopher Klotzohn Griffith, Pensacola, FL** <br> Witness Preparation for Trial and Deposition; Case Theme Development |
| January 2013- Present | **Cutl Hecker Wang LLP; Mariann Wang, New York, NY** <br> Witness Preparation for Mediation; Case Theme Development |
| January 2013- Present | **Allred Maroko Goldberg, Gloria Allred, Nathan Goldberg, Los Angeles, CA** <br> Witness Preparation for Mediation; Case Theme Development |
| April  2013 - Present | **Fong Law PLL; Eric Fong; Port Orchard, WA** <br> Witness Preparation for Trial and Deposition; Case Theme Development |
| June 2013 - Present | **Law Offices of Phillip Stackhouse PLLC; Phillip Stackhouse, Jacksonville, NC** <br> Witness Preparation for Trial and Deposition; Case Theme Development |
| June 2013 - Present | **Haddad & Sherwin; Julia Sherwin; Oakland, CA** <br> Witness Preparation for Trial and Deposition; Case Theme Development; Jury Selection |

## TRAINING AND TEACHING EXPERIENCE

| | |
|---|---|
| May 2009- Present | **GERRY SPENCE'S TRIAL LAWYER COLLEGE – Dubois, Wyoming** |
| September 2006 - present | **PSYCHODRAMA & CREATIVE ARTS THERAPY INSTITUTE, NYC** |

<u>Psychodrama Training and Personal Growth</u>
<u>Psychodrama and Other Creative Arts Therapies</u>
<u>Director Training Weekends</u>
<u>Literature Review and Exam Preparation Course</u>
<u>Friday Psychodrama Open Learning Sessions</u>
<u>Monthly Saturday Psychodrama Workshops for Training and Personal Growth</u>
<u>Monthly Sunday Psychodrama Workshops for Training and Personal Growth</u>
<u>Annual Summer Psychodrama Training Residential (1996 – Present)</u>

| | |
|---|---|
| September 1992 - 2006 | **PSYCHODRAMA TRAINING INSTITUTE - New York, New York** |

1996 – 2006  Director of Training

<u>Introduction to Psychodrama</u>
<u>Psychodrama Training and Personal Growth</u>
<u>Psychodrama and Other Creative Arts Therapies</u>
<u>Director Training Weekends</u>
<u>Literature Review and Exam Preparation Course</u>
<u>Saturday Psychodrama Workshops for Training and Personal Growth</u>
<u>Annual Summer Psychodrama Training Residential (1996 – Present)</u>

| | |
|---|---|
| November 1991 | **HUNTER COLLEGE - New York, New York** <br> <u>Drama Therapy Department – Graduate Studies – Pscychodrama for Drama Therapists</u> |
| February 1992 present | **COLUMBIA UNIVERSITY - New York, New York** <br> <u>School of Social Work – Introduction to Psychodrama</u> |
| June 1996 | **NEW SCHOOL FOR SOCIAL RESEARCH - New York, New York** <br> <u>Psychology Department – Introduction to Psychodrama</u> |

November 1993 - THE TRAINING INSTITUTE - Calgary, Alberta
present           Residential Training Program

March 1995       COMMON BOND - Round Lake and Phonecia, New York; Memphis, Tennessee; Atlanta, Georgia
1998

               Weekend Training Institutes

               Residential Training Program
               Co-facilitate a five day, yearly residential training program in Psychodrama and Experiential Therapy.
               Offered to students, mental health professionals, nurses, clergy, lawyers and educators.


## CONFERENCE PRESENTATIONS

April     1993      ASGPP (American Society of Group Psychotherapy and Psychodrama) Conference - Washington, DC
                  THE 12 STEP PSYCHODRAMA MODEL

January   1994      New York Chapter ASGPP Psychodrama Conference, New York NY
                  THE 12 STEP PSYCHODRAMA MODEL

April     1995      ASGPP Annual Psychodrama Conference - Roanoke, VA
                  BRINGING PSYCHODRAMA TO THE RECOVERY COMMUNITY.

February 1996      New York Chapter ASGPP Psychodrama Conference
                  OUR PARENTS / OURSELVES

April     1996      ASGPP Annual Psychodrama Conference - Houston, TX
                  AWAKENING THE GENTLE SPIRIT

May      1996      CHILD ABUSE PREVENTION CONFERENCE - Tarrytown, New York
                  ENDING THE CYCLE: EARLY DETECTION & PREVENTION TRAINING FOR HUMAN SERVICE
                  PROFESSIONALS

February 1997      ASGPP Annual Psychodrama Conference – New York, NY
                  A CREATIVE WAY TO KNOWING: ART, SCIENCE AND THE SOUL

May      1997      NASW 29th Annual Alcoholism Institute, New York, NY
                  ACTION METHODS FOR WORKING WITH SURVIVORS OF SEXUAL ABUSE

November 1997      NADT Emotion and Distance in the Dramatic Therapies: A Collaborative Conference in the Dramatic Arts
                  Therapies – New York, NY
                  INTRODUCTION TO PSYCHODRAMA
                  STEPPING IN, STEPPING OUT

February 1998      3rd Annual New York Chapter ASGPP Psychodrama Conference – New York, NY
                  HEALING THE WOUNDED HEART
                  ARTISTIC TAPESTRIES

April     1998      ASGPP Annual Psychodrama Conference – San Francisco, CA
                  HEALING THE WOUNDED HEART
                  ARTISTIC TAPESTRIES: THE ARTISTIC, CLINICAL AND SPIRITUAL UNDERPINNINGS OF THE
                  PSYCHODRAMATIC PROCESS

April     1999      ASGPP Annual Conference – Philadelphia, PA
                  THE BODY REMEMBERS WHAT THE MIND FORGETS – Pre-Conference Training Workshop
                  INTRODUCTION TO SOCIOMETRY

April     2000      ASGPP Annual Conference – New York, NY
                  THE 12 STEP PSYCHODRAMA MODEL
                  INTRODUCTION TO SOCIOMETRY

August   2000      IAGP (International Association of Group Therapy) Conference – Jerusalem, Israel
                  INTEGRATING SOCIOMETRY INTO THE PSYCHODRAMTIC PROCESS
                  THE 12 STEP PSYCHODRAM MODEL

April     2001      ASGPP Annual Conference – Toronto, Canada
                  INTEGRATING SOCIOMETRY INTO THE PSYCHODRAMATIC PROCESS

September 2002   ASGPP Annual Conference – New York, New York
HEALING THE WOUNDED HEART

February 2003   AGPA Annual Conference – New Orleans, Louisiana
CREATING SAFETY IN PSYCHODRAMATIC GROUP PSYCHOTHERAPY: INTEGRATING
THE TRIADIC SYSTEM OF PSYCHODRAMA, SOCIOMETRY AND GROUP PSYCHOTHERAPY

May   2003   ASGPP Annual Conference – Santa Fe, New Mexico
THE 12 STEP PSYCHODRAMA MODEL: THE ROAD BACK IN

August   2003   IAGP Conference – Istanbul, Turkey
THE SCIENCE OF SOCIOMETRY AND THE ART OF PSYCHODRAMA

August   2004   BPA International Psychodrama Conference – Oxford, England
INTEGRATING SOCIOMETRY INTO THE PSYCHODRAMTIC PROCESS
INTERPRSONAL ROLE DIAGRAMS: CREATING DIALOGUE ACROSS CULTURES

April   2004 ASGPP Conference – New York, New York
INTRODUCTION TO SOCIOMETRY
THE MIND BODY CONNECTION WHEN WORKING WITH PSYCHODRAMA AND TRAUMA

February 2005   Ohel Family Services – Brooklyn, New York
INTRODUCTION TO THEORY AND METHODOLOGY OF PSYCHODRAMA

April   2005   ASGPP Annual Conference – Miami
FROM GIRLS TO GRANDMAS

February 2006   AGPA Annual Conference – San Francisco, California
HEALING THE DIVIDE BETWEEN PSYCHODRAMA & GROUP PSYCHOTHERAPY
THE TRIADIC SYSTEM OF PSYCHODRAMA, SOCIOMETRY AND GROUP PSYCHOTHERAPY

April   2006 ASGPP Annual Conference – San Francisco
THE HERO/HEROINE'S JOURNEY: CROSSING THE THRESHOLD TO WHOLENESS
A TOUCH OF GREATNESS

July   2006   IAGP Conference – San Paulo, Brazil
SOCIOMETRY AND PSYCHODRAMA: THE CONNECTING LINK BETWEEN INIDIVIDUALS AND
CULTURES

April   2007 ASGPP Annual Conference – New York, New York
EXPLORING THE BELLY OF GRIEF
THE 12 STEP PSYCHODRAMA MODEL: GUIDE TO A SPIRITUAL LIFE
THE EVOLUTIONARY JOURNEY FROM DIRT TO GOD: AN ENERGETIC EXPERIENCE

April   2008   ASGPP Annual Conference – San Antonio, Texas
INTRODUCTION TO SOCIOMETRY

July   2008   Psychodrama Institute of Istanbul annual Summer Training Institute – Turkey
SPONTANEITY & CREATIVITY: THE CORE ELEMENTS OF PSYCHODRAMATIC GROUP
PSYCHOTHERAPY

November 2008 EGPS Annual Conference – New York, New York
CLOSING PLENERY: SPONTANEITY & CREATIVITY: A PSYCHODRAMATIC TAKE ON HOW THERAPIST EVOLVE WITH THEIR
GROUPS
AN EVOLUTIONARY MAP: PSYCHODRMATIC ROLE THEORY

March 2009   ASGPP Annual Conference – St. Louis, Missouri
UN-MASKING CREATIVE BLOCKS TO EMPOWER THE ARTIST

May   2009   TRIAL LAWYERS COLLEGE – Dubois, Wyoming
STAFF TRAINING

July   2009   TRIAL LAWYERS COLLEGE – Dubois, Wyoming
PSYCHODRAMA FOR LAWYERS –THREE WEEK COLLEGE

September 2009 TRIAL LAWYERS COLLEGE – Dubois, Wyoming
PSYCHODRAMA FOR LAWYERS – THREE WEEK COLLEGE

August 2009   IAGP Conference – Rome, Italy
SOCIOMETRY AND PSYCHODRAMA: THE HEALING POWER OF THE TRIADIC SYSTEM IN CONFLICT RESOLUTION

January 2010   TRIAL LAWYERS COLLEGE  REGIONAL– Asilormar, California
DISCOVERIG THE STORY

April   2010   TRIAL LAWYERS COLLEGE REGIONAL – Tarrytown, NY
CROSS EXAMINATION

March 2010   ASGPP Annual Conference – Philadelphia, Pennsylvania

PSYCHODRAMA: THE UNIVERSAL SOCIOMETRIC HEALER

| | | |
|---|---|---|
| May 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>STAFF TRAINING |
| June 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>PSYCHODRAMA FOR LAWYERS REGIONAL |
| July 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>PSYCHODRAMA FOR LAWYERS – THREE WEEK COLLEGE |
| August 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>GRAD I |
| August 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>GRAD II |
| September 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>PSYCHODRAMA FOR LAWYERS – THREE WEEK COLLEGE |
| October 2010 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>ALIVE IN THE COURTROOM – with Joshua Karton - THE ADVANCED COURSE |
| April 2011 | | **ASGPP Annual Conference – Clearwater, Florida**<br>THE 12 STEP PSYCHODRAMA MODEL: BRIDGING THE GULF BETWEEN HOPE & REALITY IN ACTION<br>PSYCHODRAMA & TRIAL SKILLS: THE TLC METHOD |
| May 2011 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>STAFF TRAINING |
| July 2011 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>PSYCHODRAMA FOR LAWYERS –THREE WEEK COLLEGE |
| July 2011 | | **PSYCHODRAMA DIRECTING for Educators, Therapists and Lawyers – Detroit, Michigan** |
| August 2011 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>GRAD II – THE SOCIODRAMA OF THE CASEY ANTHONY TRIAL |
| October 2011 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>A JURY OF ONE'S FEARS – with Joshua Karton, Milton Grimes and Don Clarkson |
| March 2012 | | **PSYCHODRAMA DIRECTING for Educators, Therapists and Lawyers– Detroit, Michigan** |
| March 2012 | | **INNER CIRCLE OF ADVOCATES – San Antonio, Texas**<br>INTRODUCTION TO PSYCHODRAMA FOR LAWYERS |
| April 2012 | | **ASGPP Annual Conference – New York, New York**<br>OPENING PLENARY SPEAKER – SOCIOMETRY WITHOUT PSYCHODRAMA IS STERILE; PSYCHODRAMA WITHOUT SOCIOMETRY IS BLIND<br>PSYCHODRAMA & CREATIVE ARTS THERAPY: A COLLABORATION FOR HEALING TRAUMA<br>ADDING DRAMA TO PSYCHODRAMA |
| May 2012 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>STAFF TRAINING |
| June 2012 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>DEATH PENALTY SEMINAR |
| July 2012 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>PSYCHODRAMA FOR LAWYERS – THREE WEEK COLLEGE |
| August 2012 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming**<br>GRAD II – COMPASSION FATIGUE FOR LAWYERS |
| October 2012 | | **TRIAL LAWYERS COLLEGE REGIONAL– Chicago, Illinois**<br>Voir Dire |
| December 2012 | | **PSYCHODRAMA DIRECTING for Educators, Therapists and Lawyers – Detroit, Michigan**<br>INTRODUCTION TO PSYCHODRAMA |
| March 2013 | | **TRIAL LAWYERS COLLEGE REGIONAL– SEATTLE , WASHINGTON**<br>OPENING STATEMENT |
| April 2013 | | **PSYCHODRAMA DIRECTING for Educators, Therapists and Lawyers– Detroit, Michigan** |
| April 2013 | | **ASGPP Annual Conference – Arlington, VA**<br>PUTTING THE DRAMA INTO PSYCHODRAMA<br>SOCIOMETRY: THE UMBRELLA OF PSYCHODRAMA |
| May 2013 | | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming** |

| June | 2013 | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming** |
|---|---|---|
| | | DEATH PENALTY SEMINAR |

| July | 2013 | **TRIAL LAWYERS COLLEGE – Dubois, Wyoming** |
|---|---|---|
| | | PSYCHODRAMA FOR LAWYERS – THREE WEEK COLLEGE |

## MEMBERSHIP IN PROFESSIONAL ORGANIZATIONS

| 1985 - Present | **American Society of Group Psychotherapy and Psychodrama (ASGPP)** | |
|---|---|---|
| | 1995 | FELLOW OF THE ASGPP |
| | 1995 - 2003 | EXECUTIVE COUNCIL OF THE ASGPP |
| | 1997 –1998 | SECRETARY OF THE ASGPP |
| | 1998 – 2001 | PRESIDENT – ELECT OF THE ASGPP |
| | 2001 – 2004 | PRESIDENT – ASGPP |

| !993 - Present | **New York Chapter of the ASGPP** | |
|---|---|---|
| | 1993 | VICE-PRESIDENT, NEW YORK CHAPTER OF THE ASGPP |
| | 1996 - Present | PRESIDENT, NEW YORK CHAPTER OF THE ASGPP |

| 1992 - 2011 | **American Board of Examiners in Psychodrama, Sociometry and Group Psychotherapy** | |
|---|---|---|
| | 1992 | CERTIFIED PRACTITIONER (CP) |
| | 1996 | TRAINER, EDUCATOR AND PRACTITIONER (TEP) |

| 1997 - present | **American Society of Experiential Therapists (ASET)** |
|---|---|
| | BOARD OF EXAMINERS OF ASET |
| | 1997 CET II |

| 1998 - present | **American Group Psychotherapy Association** |
|---|---|
| | Member |
| | 2000 CGP |

| 1999 - present | **International Group Psychotherapy Association** |
|---|---|
| | Member |

| 2005- 2011, 2013- present | **American Board of Examiners in Psychodrama, Sociometry & Group Psychotherapy** |
|---|---|
| | Board Member |

## SPECIALIZED TRAINING

| September 1974- June 1981 | **Herbert Berghoff Acting Studio – New York, New York – Aaron Frankel** |
|---|---|
| | ACTING FOR STAGE AND SCREEN |
| | CLASSICAL THEATER – SHAKESPEARE, GREEK TRAGEDY, MOLIERE |
| | MUSICAL THEATER |

| September 1986 - June 1987 | **The River Center - New York, New York** |
|---|---|
| | COUNSELING STRATEGIES FOR EATING DISORDERS |

| February 1989 | **Long Island Jewish Hospital - Queens, New York** |
|---|---|
| | WORKING WITH CLIENTS WITH HIV & AIDS |

| May 1985 - May 1986 | **Pritikin Longevity Center - Santa Monica, California** |
|---|---|
| | COUNSLING FOR WELLNESS AND NUTIRION |

| August 1990 - August 1995 | **Westwood Institute - Taos, New Mexico – Dorothy Baldwin Satten, PhD, TEP** |
|---|---|
| | PSYCHODRAMA, SOCIOMETRY & GROUP PSYCHOTHERAPY |

| September 1996- August 2000 | **Transformational Energetics Institutes – New York, New York – Ann Bowman** |
|---|---|
| | Four year training course integrating Bioenergetics, Core Energetics, Barbara Brenan Body Work with other forms of mind-body modalities and creative arts therapies. |

| October 2002 - Present | **Psychodramatic Bodywork – Toronto, Canada - Susan Aaron** |
|---|---|
| | Training program with Susan Aaron integrating Psychodrama with various forms of eastern medicine and body work. |

| May 2009- Present | **Trial Lawyers College – Dubois Wyoming - Faculty** |
|---|---|
| | Trained to work with lawyers using psychodrama in non-clinical settings. |

**PUBLICATIONS**

Gershoni, Jacob, (ed.) ( 2003) Psychodrama in the 21st Century: Clinical and Educational Applications, Springer Publishing: NY, NY

Warrior Magazine,  (Summer 2013) Working With Trauma with Mentally Ill Clients

**HARDWICK COLLIER, LLC**
**BY:   TIFFANIE C. BENFER, ESQ. (Attorney I.D. No. 202096)**
**       VIRGINIA HARDWICK, ESQ. (Attorney I.D. No. 202649)**
179 North Broad Street
Doylestown, PA. 18901                                   Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE DIAZ** | : | No. 12-cv-00433 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **SAUCON VALLEY MANOR, INC., et al.** | : | |
| | : | |
| Defendants. | : | |

## VERIFICATION OF CARMENT MATOS IN SUPPORT OF
## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

I, Carmen R. Matos, hereby verify that the following facts are true and correct and based on my personal knowledge and belief:

1. I am an attorney licensed to practice law in the Commonwealth of Pennsylvania. I am the sole owner of the Law Offices of Carmen R. Matos, located at 40 East Court Street, Third Floor, Doylestown, PA 18901, which I established in June 2007.

2. I submit this Verification in support of Ms. Diaz's petition for attorneys' fees and costs.

3. I am a graduate of Temple Law School. I have been admitted to the bar in the Commonwealth of Pennsylvania since 1980. I am also admitted to practice before the United States Court of Appeals for the Third Circuit, Fourth Circuit, and the U.S. Supreme Court. I have

been admitted to practice pro hac vice in the U.S. District Court of New Jersey and New Jersey Superior Court, U.S. District Court of Maryland.

    4.  My employment history includes work at the U.S. Equal Employment Opportunity Commission for 15 years from 1981 to 1995 as trial attorney and supervisory trial attorney. My supervisory responsibilities at the EEOC included supervision of a team of 4 – 6 attorneys, and litigation in four states, in addition to my own caseload. At the EEOC, I reviewed hundreds of cases of discrimination. Many of the cases I reviewed were approved for litigation by the EEOC. During my tenure with the EEOC, I twice received the highest award known as the Chairman's Organizational Performance Award from then Chair Clarence Thomas (now Justice Thomas) in February 1989 and in 1995. The first Chairman's Award involved a settlement of $1,600,000 in a class action, age discrimination case, which took place in 1986 and the second was for my participation as amicus curiae as EEOC counsel in the *Doe v. Kohn Nast & Graf* case, which involved the first federal district court opinion finding that HIV was a covered disability under the provisions of the ADA.

    5.  My practice since 1981 has been devoted exclusively to the area of employment law, including cases under the Pennsylvania Human Relations Act, Title VII, ADEA, LAD and ADA. I have represented hundreds of employees in all aspects of discrimination – race, age, gender, national origin and handicap. I have also represented plaintiffs in wrongful termination cases, contract matters, defamation, breach of restrictive covenants and the like.

    6.  I have litigated several employment cases to their conclusion, and have settled several cases for significant sums. I have worked on appeals in the Third Circuit Court of Appeals and the Fourth Circuit Court of Appeals.

7.  I am active in professional organizations in the field of employment law such as the

National Employment Lawyer's Association ("NELA"), American Bar Association, and the

Hispanic Bar Association, Bucks County Bar Association, and PBI Institute. I am frequently

consulted by other members of the bar on legal issues in cases involving employment disputes.

8.  I lecture and speak frequently on the topic of employment law, as can be seen from

curriculum vitae attached hereto. Some of these include within the last five years: Pennsylvania

Bar Institute (PBI) Ten Steps of Mediation, presenter with Honorable Jacob Hart, 2000;

Montgomery Bar Association, presenter, Employment Law, 10/25/00; PBI:  Basics of Employment

Law, presenter, Americans with Disability Act, 7/17/01; PBI: Trial of an Age Discrimination Case,

presenter, 8/01; PBI:  Employment Law Conference, Fee Petitions for Plaintiffs, presenter 4/03;

PBI:  Basics of Employment Law, presenter, Americans with Disabilities Act, 3/04 & 11/04;

NAACP: Employment Law Update, presenter 7/12/04; 2004: Philadelphia Bar Association: Fee

Petition Preparation, presenter; June 2005; Montgomery Bar Association:  Employment Law

Update, Settlement Issues and Recent Cases, 2007 PBI Institute: Family Responsibilities.  I have

authored articles on employment law accepted for publication as noted in my Curriculum Vitae

attached hereto.

9.  Based on my knowledge of civil rights litigation and my knowledge of the hourly

rates charged in the Philadelphia, Montgomery and Bucks County legal communities, I believe

that $400 per hour is a reasonable hourly rate for experienced counsel when measured by

appropriate standards of client representation. I am familiar with the hourly rates charged in the

Philadelphia, Montgomery and Bucks County legal community through my involvement in

NELA and by reading other court cases.  I do not believe such a practice can survive at any

lower rate, and unless these practices can survive, there will be no process available to an

3

employee with a legitimate discrimination, harassment, or individual wage payment claim, to find justice in our legal system.

10. I recognize that many employment clients are not able to pay even the reduced hourly fee, as they are often unemployed or find lesser paying jobs.

11. These clients are often also emotionally fragile, and require substantially more support than clients in other litigation areas. I understand that Ms. Diaz was a client whose background required more time and support than the typical client in other litigation areas. I am not surprised to see that Ms. Hardwick and Ms. Benfer spent many hours meeting with her and supporting her throughout the litigation, and particularly in the weeks before trial.

12. The practice of employment law is often a labor of love. The cases are complex, always require extensive discovery, involving fighting against large corporate defendants and giant defense firms.

13. I know Virginia Hardwick and her partners Joyce Collier and Tiffanie Benfer personally. I have consulted with them on questions pertaining to cases I am handling, and I have found that they are intelligent and highly knowledgeable on questions of employment law. From my observation, the Hardwick Collier firm does excellent work on behalf of its clients.

14. I also know Ms. Hardwick from our mutual involvement in the National Employment Lawyers Association, and in that context I have observed her knowledge of employment law issues.

15. From my personal knowledge of Ms. Hardwick and the quality of her work, it is my belief that she is among the most capable employment lawyers in the greater Philadelphia area, and the hourly rate of $400 - $425 per hour for her work is well within the market standards.

16. I have had the opportunity to read some of the written submissions in this matter, and to discuss the claims with Ms. Hardwick. I understand that the plaintiff prevailed on claims under both the ADA and the FMLA, as well as the Rehabilitation Act and related state law claims.

17. I have reviewed the pre-bill and a draft of the Verification of Ms. Hardwick to be submitted in this matter.

18. From my review of these documents, it appears that the time charged by Hardwick Collier is reasonable and was necessary to obtain the ultimate result.

19. In my opinion, the award of over $120,000 to plaintiff was a substantial victory. In my experience in employment litigation, it is quite common for a successful plaintiff to prevail on only one of several claims or to receive only a small percentage of the award initially sought. This result does not mean that the plaintiff was not successful or that attorneys' fees were needlessly incurred.

20. It is significant that the jury awarded substantial punitive damages. In my experience, this is a rare occurrence in an employment case, and it underscores the excellent preparation by the attorneys for the plaintiff.

21. It is significant that the defendants took the position that Ms. Diaz was fired for cause. In addition to the monetary award, this award represents a substantial benefit to her of clearing her name.

The foregoing facts are true to the best of my knowledge and information. I understand that if any of the foregoing statements made by me are willfully false, I am subject to the penalties provided for under 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

5

Carmen L. Rivera Matos, Esquire
PA ID 32795

**HARDWICK COLLIER, LLC**
**BY:** **VIRGINIA HARDWICK, ESQ.** (Attorney I.D. No. 202649)
   **TIFFANIE C. BENFER, ESQ.** (Attorney I.D. No. 202096)
179 North Broad Street
Doylestown, PA. 18901                          Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULIE DIAZ** | :     No. 12-cv-00433 |
| 49 E. Saucon Street, | : |
| Hellertown, PA 18055 | : |
| | : |
|      Plaintiff, | : |
| | : |
|      v. | : |
| | :     Jury Trial Demanded |
| **SAUCON VALLEY MANOR, INC.** | : |
| 1177 6th Street | : |
| Whitehall, PA 18052 | : |
| | : |
|      and | : |
| | : |
| **NIMITA KAPOORATIYEH** | : |
| **A/K/A NEMITA ATIYEH** | : |
| **A/K/A NEMO AIYAH** | : |
| 1177 6th Street | : |
| Whitehall, PA 18052 | : |
| | : |
|      Defendants. | : |

---

## VERIFICATION OF SCOTT POLLINS IN SUPPORT OF
## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

I, Scott M. Pollins, hereby verify that the following facts are true and correct
and based on my personal knowledge and belief:

     1.      I am an attorney licensed to practice law in the Commonwealth of
Pennsylvania and States of New Jersey and Maryland. I have focused on Plaintiff's

employment law since 2000. I am currently of counsel to the firm Willig, Williams &

Davidson.

2.      I submit this Verification in support of Ms. Diaz's petition for

attorneys' fees and costs.

3.      I am President of the National Employment Lawyers Association

Eastern Pennsylvania Chapter, and co-chairman of the Plaintiffs' Employment Panel

of the U.S. District Court for the Eastern District of Pennsylvania.

4.      Based on these professional leadership positions and my own practice

in the field of Plaintiff's employment law, I have knowledge of prevailing rates for

the employment law bar in the greater Philadelphia area.

5.      I also personally know Virginia Hardwick, counsel for Ms. Diaz in this

matter. I have known Ms. Hardwick for about four years, and she and I have

collaborated on several matters during the past three and a half years. I have

reviewed Ms. Hardwick's written work in several matters, and most recently I have

reviewed her written work in this matter.

6.      In addition, I observed several hours of the trial in this matter.

Specifically, I observed Ms. Harwick's closing argument.

7.      During our work together, I have observed the quality of Ms.

Hardwick's litigation skills, strategic thinking, and her knowledge of employment

law.

8.      On a number of occasions, I have spoken to Ms. Hardwick to get her

input on difficult questions of employment law and legal strategy. I have read briefs

and pleadings written by her, which she has shared with me when I have had matters involving similar issues.

9.      In my work with Ms. Hardwick, I have also collaborated with Ms. Benfer. I know her to be a highly able and knowledgeable attorney.

10.      In addition, I have seen Ms. Hardwick speak on a number of occasions at American Bar Association meetings. I have observed the breadth of her knowledge. I also know from speaking to other employment lawyers in the ABA and in the Philadelphia legal community that Ms. Hardwick is held in high regard by many employment lawyers in both the plaintiff's and defense bar.

11.      For these reasons, I consider Ms. Hardwick to be one of the outstanding plaintiff's employment lawyers in the greater Philadelphia area.

12.      In the Philadelphia area, the market rate for experienced attorneys in employment cases is between $350 and $450 per hour.

13.      The market is especially tight for attorneys who are willing to take cases on a contingency basis, and the higher end of the scale is appropriate to compensate for the risk undertaken by counsel in a contingency case as well as the delay in payment.

14.      It is worth noting that there are particular challenges for attorneys who take employment cases on a contingent basis. These cases are risky for attorneys in a way that personal injury actions are not. One reason for the added risk is that it is difficult to assess the likelihood of success in the early stages of the litigation. Unlike an injured plaintiff in a personal injury case, damages are uncertain in employment actions. Because employers rarely have insurance to

cover these claims, it is often more difficult to achieve a settlement of an employment claim than a personal injury claim.

15.     I also find that employment cases are particularly difficult because proving "intent" is intangible -- it cannot be demonstrated in the way that the speed of an automobile can. It is easy and common for management witnesses to lie or shade the truth about their intent. It is often difficult to combat the testimony of a defense witness because documents that might attack the credibility of the witness are mostly in the hands of the employer. Although the key documents should be produced in litigation, often they are not. In addition, a savvy employer will avoid putting into writing anything that will hurt an employment case and will often create a false paper trail to back up the employer's version of events.

16.     Another difficulty in employment litigation is that employers often are motivated to put up an extremely costly defense even for a small case, so that they can send a message to other employees that they will not pay on lawsuits.

17.     It is well documented that because of these challenges, it is difficult for a plaintiff's attorney to prevail at trial. An attorney who is able to overcome an employer's testimony and to demonstrate pretext has usually shown great skill and tenacity in making the proofs.

18.     From my review of the evidence in this matter and from the portion of the trial I observed, it is clear that Ms. Hardwick and Ms. Benfer demonstrated great skill and tenacity to overcome the defendants' insistence that Ms. Diaz was fired for cause.

19.     For this reason I believe that the requested rates of $400/hour for Ms. Hardwick and $300/hour for Ms. Benfer are extremely reasonable.

20.     In addition, I have reviewed the pre-bill and a draft of the Verification to be submitted in this matter. I have spoken to Ms. Hardwick about the claims raised in this litigation, some of the challenges in the discovery process, and the interrelated factual issues raised in the claims. I have also reviewed the brief submitted by Ms. Hardwick and Ms. Benfer in opposition to defendants' motion for summary judgment.

21.     From my review of these documents, it appears to me that the time charged by Claimant is reasonable. In my experience, challenges in obtaining document discovery from defendants who are not forthcoming are common, and can be very time consuming for the plaintiff's attorney.

22.     I note that the testimony of all of the witnesses deposed by Ms. Hardwick and Ms. Benfer appear to have been essential to the plaintiff's proofs. Ms. Hardwick and Ms. Benfer's use of discovery resources therefore seems to be very reasonable.

23.     I note that Ms. Hardwick has cut from her time records all time that relates to the claim on which she was not successful, and that she has cut other discretionary time as well (such as the time for two attorneys to attend some of the depositions).

24.     Also, I note that the summary judgment briefing was extensive and very fact intensive. I know from my own experience that this sort of factual analysis and explanation is very time consuming.

25.     I understand that this Court has found that the defendants did not act in good faith, and thus awarded liquidated damages on Ms. Diaz's FMLA claim. This is an accomplishment by counsel for Ms. Diaz.

26.     The fact that the jury awarded $75,000 in punitive damages helps demonstrate the strength of the proofs put together by Ms. Hardwick and Ms. Benfer.   It seems that the testimony that led to an award of punitive damages was elicited almost entirely from the employees and former employees of defendants.  I know from my own experience that this highly effective cross-examination of hostile witnesses requires a great deal of preparation and planning.

27.     The total time spent by the attorneys seems to have been very reasonable and necessary to obtain the judgment to Ms. Diaz of $121,369.24.

The foregoing facts are true to the best of my knowledge and information.  I understand that if any of the foregoing statements made by me are willfully false, I am subject to the penalties provided for under 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

SCOTT M. POLLINS

DATED: 9/9/13

HARDWICK COLLIER, LLC
BY:    VIRGINIA HARDWICK, ESQ.  (Attorney I.D. No. 202649)
       TIFFANIE C. BENFER, ESQ. (Attorney I.D. No. 202096)
179 North Broad Street
Doylestown, PA. 18901                                    Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE DIAZ** | : | No. 12-cv-00433 |
| 49 E. Saucon Street, | : | |
| Hellertown, PA 18055 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Jury Trial Demanded |
| **SAUCON VALLEY MANOR, INC.** | : | |
| 1177 6th Street | : | |
| Whitehall, PA 18052 | : | |
| | : | |
| and | : | |
| | : | |
| **NIMITA KAPOORATIYEH** | : | |
| **A/K/A NEMITA ATIYEH** | : | |
| **A/K/A NEMO AIYAH** | : | |
| 1177 6th Street | : | |
| Whitehall, PA 18052 | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATION OF SERVICE

I, VIRGINIA L. HARDWICK, ESQ., attorney for Plaintiff Julie Diaz hereby

certify that true and correct copies of Plaintiff's Brief in Support of Plaintiff's Petition for

Attorneys' Fees and Costs, Verification of Virginia L. Hardwick in Support of Plaintiff's

Petition for Attorneys' Fees and Costs, Verification of Scott Pollins in Support of

Plaintiff's Petition for Attorney's Fees and Costs, and Verification of Carmen Matos in

Support of Plaintiff's Petition for Attorneys' Fees and Costs, were sent via Electronic

Case Filing and electronic mail to the following:

Alan S. Fellheimer, Esquire
Victoria Hooper, Esquire
Fellheimer & Eichen, LLP
Two Liberty Place
50 South 16th Street, 34th Floor
Philadelphia, PA 19102

Date: Septermber 11, 2013

BY: */s/Virginia L. Hardwick, Esquire*
**VIRGINIA L. HARDWICK, ESQ.**
Attorney for Plaintiff