IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE DIAZ, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAUCON VALLEY MANOR, INC. | : | |
| and NIMITA KAPOORATIYEH, A/K/A | : | |
| NEMITA ATIYEH, A/K/A NEMO AIYAH, | : | No. 12-0433 |
|     Defendants. | : | |

MEMORANDUM OPINION

TIMOTHY R. RICE                                                                                   October 31, 2013
U.S. MAGISTRATE JUDGE

        Defendants Saucon Valley Manor, Inc. and Nimita Kapooratiyeh a/k/a Nemita Atiyeh a/k/a Nemo Atiyeh have filed a post-trial motion pursuant to Federal Rule of Civil Procedure 59(e) to amend or alter the judgment entered in favor of Plaintiff Julie Diaz on her discrimination and failure to accommodate claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Pennsylvania Human Relations Act, 43 P.S. § 91 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794 (collectively, the "ADA claims"). For the following reasons, the post-trial motion is denied.

        "Because courts have a strong interest in the finality of judgments," Rule 59(e) motions should be granted sparingly. Liverman v. Gubernik, Nos. 10-1161, 2049, 2500, 2558, 2010 WL 4054195 at *1 (E.D. Pa. Oct. 15, 2010) (citing Douris v. Schweiker, 29 F. Supp. 2d 391, 408 (E.D. Pa. 2002)). These motions must be based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010). Such motions also cannot "be used to relitigate old matters, or to raise arguments or present evidence that could

have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (citing C. Wright and A. Miller, Federal Practice and Procedure § 2810, 127-28 (2d ed. 1995)).

Defendants initially argue that there has been an error of law and manifest injustice with regard to the judgment entered for Diaz on her ADA claims because the evidence did not show Diaz suffered from a disability as defined by the ADA. See Post-Trial Mot. (doc. 84) at 4-16. I disagree.[1]

The parties stipulated at trial that "[a]lcoholism is a disability under the ADA."[2] N.T. 7/23/2013 at 194. Accordingly, Diaz was not required to present additional evidence to show that her alleged alcoholism met the ADA's definition for a disability. See N.T. 7/25/2013 at 6 ("When a fact is stipulated to by the lawyers and parties, the law deems that fact to be true."). Diaz needed to show only that she suffered from the medical condition of alcoholism.[3] Once the

---

[1] This issue is related to the claim raised in Defendants' Motion for a Directed Verdict, which was filed at the close of Diaz' case. See Motion for a Directed Verdict (doc. 89), N.T. 7/23/2013 at 188-89. To the extent it overlaps with that issue, it is meritless because it was previously litigated. See Exxon Shipping Co., 554 U.S. at 485 n.5; see also infra at 4.

[2] Diaz presented evidence at trial showing that she suffered from alcoholism, including testimony from herself and family members about her alcohol use and various issues she had because of that use. See Diagnostic and Statistical Manual of Mental Disorders IV-TR 192, 212-13 (4th ed. Am. Psychiatric Assoc. 2000) (alcohol dependence is a pattern of repeated use of alcohol that can result in tolerance, withdrawal, or compulsive alcohol-use behavior); N.T. 7/22/13 at 200, 201, 202 (Diaz' brother knew she was drinking and struggling with alcohol); N.T. 7/23/13 at 35, 44 (Diaz' husband was worried Diaz would go back to drinking because she did not have her job when she returned home from rehabilitation treatment), 52 (Diaz had relapses with drinking after returning from rehabilitation); 71 (Diaz tested positive for alcohol at work); 74 (Diaz was arrested for driving under the influence of alcohol); 75, 81 (Diaz was struggling with alcohol and trying to stop drinking); 75 (Diaz went to outpatient counseling for her drinking); 81, 136 (Diaz starting drinking when she was nine years old and drank every night after work); 195 (Diaz was cited for public drunkenness).

[3] Defendants admit in their Post-Trial Motion that alcoholism is a medical condition not

jury concluded that she had such a condition, it was required to find–based on the stipulation and pursuant to the jury instructions, which were read without objection–that she had a disability under the ADA.[4]  See id. at 25 ("The parties have agreed that if you find that Ms. Diaz suffered from alcoholism, alcoholism would be a disability under the ADA's definition of that term."); id. at 40-41 (no exceptions to this portion of the charge).

Defendants nevertheless maintain that alcoholism is not a per se disability under the ADA, and their stipulation did not excuse Diaz "from demonstrating that *she herself* suffered from that disability, as it is defined by the ADA."  Reply Br. at 2; see also Post-Trial Mot. at 7.  This contention, however, contradicts the stipulation that unambiguously states alcoholism is a disability under the ADA.  See N.T. 7/23/2013 at 194.  The parties never agreed that alcoholism could, or may be, a disability under the ADA if the ADA requirements for a disability were established.  Defendants cannot seek to litigate a stipulated fact after the case has been tried and a judgment has been entered.[5]

---

defined by the ADA's definition for a disability.  See Post-Trial Mot. at 25 ("Alcohol dependence, or alcoholism, is a specific medical condition identified in the Diagnostic and Statistical Manual of Mental Disorders.").

[4]     Defendants assert that the ADA disability instruction informed the jury that it needed to find Diaz' alcoholism met the ADA's definition for a disability because the initial part of the instruction defined the term disability under the ADA.  See Reply Br. (doc. 88) at 4-5.  The instruction, however, must be read as a whole and a full reading of the uncontested instruction makes clear that the jury was told "alcoholism would be a disability under the ADA's definition" as that term had just been defined.  See N.T. 7/25/2013 at 6.

[5]     Because I find that the stipulation sufficiently established that Diaz' alcoholism met the requirements of a disability under the ADA, I do not address Defendants' claim that the other evidence failed to meet those requirements.  Additionally, Defendants' current argument contradicts the argument and evidence they presented at trial suggesting that Diaz' alcoholism substantially limited her ability to perform her work.  See N.T. 7/23/13 at 204 (Diaz was often slow at work), 222-23 (Diaz came to work many times not performing her job).

Defendants additionally renew the argument first presented in their Motion for a Directed Verdict: that Diaz failed to establish she suffered from alcoholism because she did not present any expert testimony on that issue.[6] See Post-Trial Mot. at 22; Motion for a Directed Verdict; N.T. 7/23/13 at 105-13. They further assert that I erroneously considered information excluded from the record in denying the directed verdict motion. See Post-Trial Mot. at 22.

Defendants' first argument fails for the same reasons I denied it during the trial, and because a Rule 59(e) Post-Trial Motion cannot be used to relitigate matters addressed at trial.[7] See Exxon Shipping, 554 U.S. at 485 n.50. Defendants' second argument is likewise meritless. Assuming arguendo that I considered some information that was not introduced to the jury, the majority of information that I considered, including the testimony from Diaz and her family relating to Diaz' continuing alcohol use, her positive test for alcohol use at work, her DUI conviction, her participation in Alcoholics Anonymous, and her entry into a 28-day rehabilitation program, was introduced, see supra at n.2, and was sufficient to establish that Diaz suffered from alcoholism.

Defendants also argue that there has been an error of law and manifest injustice with regard to the judgment entered for Diaz on her ADA failure to accommodate claim because the jury's finding on that claim is inconsistent with the jury's finding that Defendants did not

---

[6] Several paragraphs in Defendants' Post-Trial Motion actually are identical to paragraphs in Defendants' Motion for a Directed Verdict. Compare Post-Trial Motion at 23-28, with Motion for Directed Verdict at 3-8.

[7] As I explained at trial, expert testimony is not necessary to establish all medical conditions and the jury was capable of concluding whether Diaz suffered from alcoholism without expert testimony. See N.T. 7/23/2013 at 188-90; see also Marinelli v. City of Erie, Pa., 216 F.3d 354, 360, 361 (3d Cir. 2000) (there is "no general rule that medical testimony is always necessary to establish disability" because some ailments are amendable to comprehension by a lay jury").

retaliate against Diaz in violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA").  I disagree.

I "must render a judgment that makes the jury's answers consistent if such a construction is possible."  Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 104-05 (3d Cir. 1993); see also McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764 (3d Cir. 1990) (trial court has "a constitutional mandate to search for a view of the case that makes the jury's answers consistent").  To prove her FMLA retaliation claim, Diaz had to show that she requested a leave of absence for a serious health condition and Defendants intentionally terminated her employment because of her request.  See N.T. 7/25/13 at 20-21; Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).  In contrast, to prove her ADA failure to accommodate claim, Diaz needed to show that she requested a reasonable accommodation for her disability and Saucon Valley failed to provide such an accommodation.  See N.T. 7/25/13 at 29-31; Skerski v. Time Warner Cable Co., 257 F.3d 273, 284 (3d Cir. 2001).  Diaz did not need to show that Saucon Valley intentionally terminated her because of her request.[8]

Diaz also could establish–and presented evidence to establish–that Saucon Valley failed

---

[8] Citing to a case from the Court of Appeals for the Fifth Circuit, Defendants assert that where an "alleged request for a reasonable accommodation is in the form of a leave of absence, a jury can only find a violation of the ADA if the plaintiff was terminated in order to avoid accommodating the impairment, i.e., providing a leave of absence."  Post-Trial Mot. at 20 (citing Burch v. Coca-Cola Co., 119 F.3d 305, 314 (5th Cir. 1997)).  In Burch, however, the plaintiff brought only a wrongful termination claim; he did not bring a separate failure to accommodate claim, as Diaz did here.  See id. at 312.  In addition, although the plaintiff in Burch sought to prove his wrongful termination claim under a reasonable accommodation theory, he failed to show that he had requested an accommodation.  See id. at 314.  Nevertheless, this case is not binding here and its precedential value is doubtful.  See Patton v. eCardio Diagnostics, LLC, 793 F. Supp. 2d 964, 968 (S.D. Tex. 2011) (Burch was based on earlier version of ADA); see also Feist v. Louisiana, Dep't of Justice, No. 12-31065, 2013 WL 5178846 at*1 (5th Cir. Sept. 16, 2013) (not requiring wrongful termination as part of prima facie case for failure to accommodate claim).

to provide a reasonable accommodation by showing that it did not engage in an interactive process with her regarding her need for an accommodation after receiving notice of that need. See N.T. 7/25/2013 at 30-31 ("The intent of the ADA is that there be an interactive process between the employer and the employee to determine whether there is a reasonable accommodation that would allow the employee to perform the essential functions of the job."); Williams v. Phila. Housing Auth., 380 F.3d 751, 771-72 (3d Cir. 2004) ("employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process. . . ."); N.T. 7/23/13 at 93-96 (Diaz' supervisor did not discuss with or give Diaz FMLA paperwork after learning of Diaz' need for a leave of absence). The jury, therefore, could have found that Defendants did not intentionally terminate Diaz based on her request for a leave of absence, but Saucon Valley had nevertheless failed to reasonably accommodate Diaz' request by refusing to provide the accommodation or failing to engage in an interactive process with Diaz. The judgment on the ADA failure to accommodate claim and FMLA retaliation claim was consistent.

There is no merit to Defendants' Post-Trial Motion. Diaz may file a supplemental application for attorneys' fees and costs within seven days from the entry of this Opinion related to their work in responding to the Post-Trial Motion.

An appropriate Order follows.