IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE DIAZ, : | |
|     Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | |
| : | |
| SAUCON VALLEY MANOR, INC. : | |
| and NIMITA KAPOORATIYEH, A/K/A : | |
| NEMITA ATIYEH, A/K/A NEMO AIYAH, : | No. 12-0433 |
|     Defendants. : | |

**MEMORANDUM OPINION**

**TIMOTHY R. RICE**                                                                                                    December 9, 2013
**U.S. MAGISTRATE JUDGE**

      Plaintiff Julie Diaz was the prevailing party on several claims brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), the Pennsylvania Human Relations Act, 43 P.S. § 91 et seq. (the "PHRA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1] She now seeks an award of $445,248.00 in attorneys' fees and $16,495.93 in costs. See Hardwick Supp. Verification (doc. 86) ¶ 4; Hardwick Second Supp. App. (doc. 93), Ex. A, Hardwick Collier 11/1/2013 Invoice. Defendants object. See Def.' Br. (doc. 85).

      I grant in part and deny in part Diaz' petition. I award Diaz $375,650.50 in attorneys' fees and $9,514.06 in costs.

---

[1] On August 28, 2013, a final judgment was entered for Diaz and against Defendants Saucon Valley Manor, Inc. and Nimita Kapooratiyeh, a/k/a Nemita Atiyeh, a/k/a Nemo Aiyah, on her claims that: (1) Defendants interfered with her right to unpaid leave under the FMLA; (2) Saucon discriminated against Diaz because of her disability in violation of the ADA, PHRA, and Rehabilitation Act; and (3) Saucon failed to provide a reasonable accommodation for Diaz as required by the ADA and PHRA. Judgment was entered for Saucon on Diaz' claims that Saucon retaliated against her for requesting a leave of absence in violation of the FMLA, ADA, PHRA, and Rehabilitation Act.

A prevailing party on FMLA, ADA, and PHRA claims is entitled to reasonable attorneys' fees and costs.  See 29 U.S.C. § 2617(a)(3); 42 U.S.C. § 12205; 43 P.S. § 962(c.2).  The party must show that its fees are reasonable by submitting evidence "supporting the hours worked and rates claimed."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  An adverse party may oppose the fee petition by specifically challenging the reasonableness of the requested fee.  See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  I have a "great deal of discretion to adjust the fee award in light of those objections."  Id.

Reasonable attorney fees are determined first by calculating the "lodestar," or the number of hours reasonably expended multiplied by a reasonable hourly rate.  See Hensley, 461 U.S. at 433.  "Excessive, redundant, or otherwise unnecessary" hours are not reasonable and must be excluded from the lodestar calculation.  Id. at 434.  The reasonableness of the hourly rate requested must be based on "prevailing market rates in the relevant community," as well as "the experience and skill of the prevailing party's attorneys."  Rode, 892 F.2d at 1183.

In support of her request for attorneys' fees and costs, Diaz has filed several documents, including: (1) a brief explaining the hours and rates billed by her attorneys and paralegals; (2) verifications by Diaz' attorney Virginia Hardwick with additional information about the hours and rates billed; (3) invoices reflecting the exact amount of time and rates billed by each attorney and paralegal on particular activities; and (4) verifications by attorneys not employed by Diaz supporting the rates charged and work performed.  See Pl.'s Br. (doc. 83); Hardwick Supp. Verification; Hardwick Second Supp. App.  Diaz' request for $445,248.00 in attorneys' fees is based on approximately 1,820 hours of work performed over almost three years by

approximately three attorneys and two paralegals, charging rates between $95.00 to $400.00 per hour.[2]  Her request for $16,495.93 in costs relates to expenses from the same time period.

Defendants assert Diaz is not entitled to her requested fees and costs because: (1) the hours spent by Diaz' attorneys have not been properly documented or explained, and were unreasonable; (2) the fees charged by Diaz' attorneys do not reflect the appropriate market rates and have been improperly increased; and (3) any award of fees and costs should be reduced to account for Diaz' limited success.

I.   Hours Billed

   A.  Inadequate Invoicing and Explanation

Defendants contend Diaz has failed to meet her burden of proving that the hours spent by her attorneys were reasonable because the attorneys' invoices include "approximately 40 pages of boilerplate, unspecific, blocked billing entries" that are not delineated by task or "in any comprehensible manner."  Def.'s Br. at 6; see also id. at 9.  They additionally assert that Attorney Hardwick's verifications do not sufficiently explain the time spent on the case because they only provide "anecdotal" examples for a fraction of the total hours billed.  Id. at 6, 10-11.

A fee petition must be specific enough to show that the hours spent were reasonable.  Rode, 892 F.2d at 1190.  It, therefore, "should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys. . . .'"  Id. (quoting Lindy Bros. Builders, Inc. of

---

[2]   The hours include: (1) approximately 37 hours spent by attorneys and paralegals from the law firm of Hill Wallack, which had the case between September 2010 and July 2011; (2) approximately 1,715 hours spent by Attorney Hardwick's firm between July 2011 and the filing of the fee petition in September 2013; and (3) approximately 67 hours spent by that firm in responding to Defendants' post-trial motion.  See Hardwick Verification (doc. 83), Ex. A, Hill Wallack Invoice; 9/26/2013 Hardwick Collier Invoice; 11/1/2013 Hardwick Collier Invoice.  Diaz' attorneys have not charged for approximately 200 of these hours.

Phila. v. American Radiator & Standard Sanatory Corp., 487 F.2d 161, 167 (3d Cir. 1973)). "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted. . . ." Id.; see also Hensley, 461 U.S. at 437 (counsel "is not required to record in great detail how each minute of his time was expended").

Contrary to Defendants' claims, the invoices, brief, and verifications filed by Diaz sufficiently explain the time spent by Diaz' attorneys on various activities. The time entries on the invoices are not "boilerplate" or "unspecific." Def.'s Br. at 6; see also 9/26/2013 Hardwick Collier Invoice. Nor do they include a series of "block billing entries," or entries where numerous activities are described in a single time entry. Def.'s Br. at 6; see also 9/26/2013 Hardwick Collier Invoice. Rather, the time entries generally describe one task or a few related tasks completed by each attorney or paralegal. See 9/26/2013 Hardwick Collier Invoice.

The documents filed by Diaz also are not inadequate because they do not segregate or categorize all of the time entries by tasks or activities. As Defendants acknowledge, Diaz summarizes and discusses the hours devoted to certain tasks in her brief and Attorney Hardwick's verification. See Pl.'s Br. at 4-10; Hardwick Verification at 8-23. Although these documents do not account for or describe every time entry or task, such an accounting was not necessary because the time entries on the invoices "provided enough information as to what hours were devoted to what activities and by whom."[3] Rode, 892 F.2d at 1191 (computer-

---

[3] Defendants rely on three cases in support of their claim that Diaz needed to segregate or delineate by task the hours spent by her attorneys. See Def.'s Br. at 9 (citing Codex v. Milgo Elec. Corp., 717 F.2d 622, 632 (1st Cir. 1983), Argue v. David Davis Enters., No. 02-9521, 2009 WL 750197, at *31 (E.D. Pa. Mar. 20, 2009), Berg Chilling Sys., Inc. v. Hull Corp., No. 00-5075, 2005 WL 67081, at *5 (E.D. Pa. Jan. 11, 2005)). These cases are all distinguishable. In Codex, which is not binding here, the Court found the plaintiff's fee petition was inadequate because it failed to provide any categorization of the time spent by activity. 71 F.2d at 632. Here, Diaz has provided explanations for various categories of tasks completed by her attorneys

4

generated time sheet, which included chronological time entries showing the general nature and subject matter of attorneys' activities, sufficiently explained fees claimed). Thus, Diaz has submitted sufficient evidence to determine if her fees and costs are reasonable.

    B. Discovery

Defendants also argue that Diaz' attorneys spent an unreasonable amount of time in various parts of the "discovery" phase.[4] First, Defendants contend that Diaz' attorneys spent too much time discussing discovery-related issues. Two time entries relating to a "discovery" discussion are excessive. Specifically, on March 28, 2013, Attorneys Hardwick and Benfer each billed .80 hours for discussing unspecified "discovery issues." See Hardwick Collier 9/26/2013 Invoice, 3/28/2013 Entry. These time entries will be cut in half for purposes of the fee petition ($290.00 will be deducted from the fee petition). All other time entries related to "discovery" discussions between Diaz' attorneys and paralegals are reasonable, particularly because (1) some of them were not charged; (2) most involved discussions between an attorney and a paralegal related to a task; and (3) only one person billed for the time. See Hardwick Collier 9/26/2013 Invoice, 5/2/2012 Entry, 5/16/2012 Entry, 5/25/2012 Entry, 7/24/2012 Entry.

Defendants additionally argue that Diaz' attorneys performed "discovery" work that could have been completed by a paralegal. Specifically, they assert Attorney Benfer improperly

---

in a brief and attorney verification, and provided enough detail in her attorneys' invoices to permit a categorization of the time spent by task. In Argue, the plaintiff did not provide any contemporaneous time sheet summaries, as Diaz has done. 2009 WL 750197, at *31. Lastly, in Berg, the invoices included block entries for multiple tasks encompassing a six month period. 2005 WL 67081, at *5. Diaz' attorneys' invoices do not contain such entries.

[4] Consistent with their previous argument, Defendants assert that Diaz has failed to explain the time spent by her attorneys on discovery because not all that time is accounted for in Attorney Hardwick's verification. See Def.'s Br. at 11. Diaz' attorneys' invoices, however, adequately describe the time they spent on discovery so that I can determine whether it was reasonable.

billed for redacting documents and updating a time line. Although I agree that the redaction could have been completed by a paralegal, it was appropriate for Attorney Benfer to update the time line because she had the best understanding of what dates were important and she needed to familiarize herself with those dates for trial. Thus, one hour of Attorney Benfer's time for redacting documents on July 25, 2012, will be reduced to a paralegal rate ($205.00 will be deducted from the fee petition).[5] See id., 7/25/2012 Entry.

Defendants also contend Diaz' attorneys spent excessive time on written discovery because only 825 documents were produced. Def.'s Br. at 12. The time related to written discovery, however, did not merely include the review of documents, as suggested by Defendants.[6] See id. ("A total of 825 documents should not have taken an excessive time to review."). The "60 hours" allocated by Defendants to written discovery also included drafting requests for discovery, communicating with Defendants about their document requests, locating documents, and preparing documents for production. See id. at 11; Hardwick Collier 9/26/2013 Invoice, at 8-12. This time was reasonable.

Defendants further assert that Diaz' attorneys spent excessive time preparing for depositions. See Def.'s Br. at 12. Diaz' attorneys spent approximately 70 hours preparing for seven depositions, which took approximately 20 hours. See Hardwick Collier 9/26/2013

---

[5] Attorney Benfer's rate was $300.00 per hour and the paralegals' rates were $95.00 per hour. See Hardwick First Supplemental Verification ¶ 3; Hardwick Verification ¶¶ 170, 174. Attorney Benfer's July 25, 2012 time entry notes several activities and does not specify how much time the redaction of documents took. See Hardwick Collier 9/26/2013 Invoice, 7/25/2012 Entry. Nevertheless, one hour appears to be a reasonable amount of time based on the activities described in the entry. See id.

[6] Less than 20 hours of time appears to have been spent on document review. See Hardwick Collier 9/26/2013 Invoice, 8/3/2012 Entry (document review included in 7.3 hours); 8/14/2012 Entry (5.5 hour meeting with Diaz to review and analyze documents).

Invoice, at 10-13, 19-20. Because Diaz' attorneys are experienced litigators and had already spent a sufficient amount of time reviewing the case facts through documents and with their client, some of this preparation time was excessive.[7] Twenty-five hours of Attorney Benfer's deposition preparation time ($7,500.00) will be deducted from the fee petition.

Defendants also argue that Diaz' attorneys and paralegals spent an excessive amount of time summarizing depositions and that Diaz' attorneys should have delegated all of the "deposition summaries" to their paralegals. Def.'s Br. at 13. With regard to the latter argument, Diaz' attorneys knew best what was important from the depositions. This knowledge also should have made the attorneys more efficient. Nevertheless, Diaz' attorneys spent an unreasonable amount of time summarizing some of the depositions. For example, Attorney Benfer spent approximately 20 hours summarizing Cindy Fox's and Carolyn Hirsh's depositions, even though each deposition lasted approximately 2.5 hours. See Hardwick Collier 9/26/2013 Invoice at 13-14. Ten hours of this time ($3,000.00) will be deducted from the fee petition. Because the remaining "deposition summary" time billed is more consistent with the lengths of the depositions and was primarily done by paralegals, it will not be reduced.

C. Responding to the Summary Judgment Motion

Defendants argue that Diaz' attorneys spent an "extraordinarily high number of hours" responding to the summary judgment motion. Def.'s Br. at 14. Diaz' attorneys spent approximately 160 hours in drafting and preparing their response to Defendants' 26-page motion

---

[7] Attorney Benfer also did not adequately explain her deposition preparation in some time entries. See Hardwick Collier 9/26/2013 Invoice, 11/2/2012 Entry, 11/6/2012 Entry, 11/7/2012 Entry.

for summary judgment.[8] See Hardwick Collier 9/26/2013 Invoice at 14-16. Although Diaz argues this work was necessary because defending against the motion was not a foregone conclusion, she also states that the motion was "meritless" and questions Defendants' decision to file it. Pl.'s Br. at 8; see also id. at 9. Furthermore, even if Diaz' alcoholism made some of the issues in the summary judgment motion complicated, these issues encompassed only a portion of the motion. See Am. Motion for S.J. (doc. 19). Therefore, it was unreasonable for Diaz' experienced litigation team to spend approximately four weeks responding to the motion.[9] Attorney Benfer, who spent approximately 96 hours on the motion for summary judgment, will have 50 hours of her time ($15,000.00) deducted from the fee petition. Ten hours ($950.00) from the 38 hours of paralegal time spent on the summary judgment motion also will be deducted from the fee petition.

    D. Trial Preparation

Defendants contend Diaz' attorneys spent an unreasonable amount of time preparing for trial. Diaz' attorneys spent more than 350 hours, over eight weeks, preparing for the five day trial.[10] See Hardwick Collier 9/26/2013 Invoice at 16-30. This was an unreasonable amount of

---

[8]   I have not included time billed in February that concerns reviews of the summary judgment motion.

[9]   Diaz suggests that the time spent on her motion for summary judgment was reasonable because the U.S. District Court for the Middle District of Pennsylvania has awarded fees for approximately 130 hours spent in responding to a summary judgment motion. See Pl.'s Br. at 6-7 (citing to EEOC v. Fed. Exp. Corp., 537 F. Supp. 2d 700 (M.D. Pa. 2005)). That case, however, involved less time spent on two motions. See Fed. Exp. Corp., 537 F. Supp. 2d at 724-25.

[10]   This calculation includes time spent preparing for the focus group presentations that also constituted trial preparation time, such as preparing for openings and closings. See Hardwick Collier 9/26/2013 Invoice, 6/21/2013 Entries. The majority of the trial preparation time was billed by Attorneys Hardwick and Benfer, with Attorney Hardwick billing approximately 150

time for experienced litigation attorneys. Diaz' attorneys also performed some redundant preparation work. For example, Attorney Benfer spent numerous hours drafting her examination and cross-examination of Cindy Fox in April 2013 and, again, in July 2013, for a total of about 40 hours. See id., 4/25/2013 Entry, 4/26/2013 Entry, 4/29/2013 Entry, 7/9/2013 Entry, 7/10/2013 Entry, 7/11/2013 Entry, 7/13/2013 Entry, 7/16/2013 Entry, 7/17/2013 Entry. Similar redundant work was done in preparing for Nemita Atiyeh's examination and Diaz' opening statement. See id., 5/20/2013 Entry, 6/5/2013 Entry, 6/11/2013 Entry, 6/7/2013 Entry, 6/18/2013 Entry, 6/20/2013 Entry, 6/24/2013 Entry, 6/27/2013 Entry, 7/6/2013 Entry, 7/9/2013 Entry, 7/14/2013 Entry. Although Diaz argues this trial preparation time was necessary because she had to establish much of her case through defense witnesses, Diaz' attorneys were sufficiently experienced to examine such witnesses without engaging in multiple weeks of preparation.

Diaz' attorneys also spent an unreasonable amount of time preparing Diaz for trial. For example, Attorneys Hardwick and Benfer often both attended these meetings and billed for their attendance at significant rates. See id., 6/6/2013 Entries, 6/13/2013 Entries, 6/27/2013 Entries, 7/9/2013 Entries. Diaz argues these meetings were essential to build her confidence and trust. However, both attorneys were not necessary at all of these meetings. Fifty hours will be deducted from both Attorney Hardwick's ($20,000.00) and Attorney Benfer's ($15,000.00) trial preparation time in the fee petition.

E. Focus Groups

Defendants contend that the Diaz' attorneys' use of focus groups was unreasonable. They assert this was a "garden variety disability discrimination case" that did not necessitate the

---

hours in preparing for trial and Attorney Benfer billing approximately 170 hours. See Hardwick Collier 9/26/2013 Invoice at 16-30. A substantial amount of paralegal trial preparation time was not charged. See id.

extra expense and time of presenting it to focus groups before trial. Def.'s Br. at 18. It was reasonable, however, for Diaz' attorneys to use one focus group to gather some lay opinions about Diaz' alcoholism and arrests and citations. A second focus groups was an unnecessary extra expense. Therefore, all time ($6,632.50) and expenses ($1,658.00) related to the second focus group will be deducted from the fee petition.[11]

F. Research

Defendants argue that Diaz' attorneys unreasonably spent more than 140 hours researching legal issues in the case. The invoices, however, show that approximately 35 hours of legal research was charged. This time was reasonable. Although Diaz' attorneys are experienced employment law litigators, they needed to research changes in the law and case law particular to the issues in Diaz' case to adequately represent their client.

G. Consultation With Other Lawyers

Defendants assert that Diaz' attorneys spent an excessive amount of time consulting with attorneys and paralegals within and outside of their firm. Many of the hours related to in-firm meetings, however, were not charged. See Hardwick Collier 9/26/2013 Invoice, 6/3/2013 Entries, 6/20/2013 Entries, 7/11/2013 Entries. All other time billed for in-firm meetings, which has not previously been reduced, was not excessive for the reasons discussed earlier. See supra at 5.

Although Diaz' attorneys consulted with attorneys outside the firm, it was infrequent and only one of the charges related to such a meeting was inappropriate. The charges related to the

---

[11] Because the second focus group took place on June 27, 2013, I calculated the time and expenses for the work related to that group based on the time entries and expenses on or immediately before that date. See Hardwick Verification ¶ 94. I also included half of the expenses related to the videographer and supplies. See Hardwick Collier 9/26/2013 Invoice, at 32-22.

April 4, 2013 meeting with an outside attorney were unreasonable because Attorneys Hardwick and Benfer were both present when only one attorney was needed.  See Hardwick Collier 9/26/2013 Invoice, 4/5/2013 Entries (2.5 hours charged by both attorneys for meeting with another attorney).  Two and a half hours of Attorney Benfer's time ($750.00) will be deducted from the fee petition.

      H.  Trial Attendance

Defendants argue it was unreasonable for Diaz' attorneys to charge for a paralegal to attend trial.  This paralegal, however, was responsible for electronically displaying the trial exhibits so that Attorneys Hardwick and Benfer could concentrate on their presentations.[12]  Electronic imagining of exhibits at trial also was encouraged by me to aid the jury and improve trial efficiency.  Although Defendants note they did not have a paralegal at trial, only one of the defense attorneys presented evidence and argument at trial.  Defendants' second attorney, therefore, could focus more on assisting with exhibits.  It was not unreasonable for Diaz' attorneys to use a paralegal at trial.[13]

      I.  The Fee Petition

Defendants contend that Diaz' attorneys spent an excessive amount of time preparing the fee petition.  Approximately 40 hours was spent in preparing the fee petition.  Because the time

---

[12]  Defendants assert that the use of a paralegal at trial was unnecessary based on Bjorkland v. Phila. Housing Auth., No. 98-2838, 2003 WL 22988885 (E.D. Pa. Nov. 20, 2003).  Bjorkland, however, is distinguishable because the paralegal did not seem to be responsible for a specific task, such as displaying the exhibits.  See id. at *5.

[13]  Defendants also contend that Diaz improperly charged for a second paralegal to attend the trial.  Diaz has acknowledged this charge was mistakenly included in the first invoice filed with the Court and has filed a revised September 26, 2013 invoice in which this charge has been removed.  See 9/26/2013 Hardwick Collier Invoice, 7/23/2013 AH Entry.  The revised invoice has been used to calculate the fee award.

spent on this case was extensive and Diaz' attorneys filed several lengthy documents in support of their petition, this time was reasonable.[14]

II.     Attorney Rates

Diaz requests an hourly rate of $400.00 per hour for the work of Attorney Hardwick and Attorney Joyce Collier, who provided some assistance to Attorneys Hardwick and Benfer in this case. See Pl.'s Br. at 11; Hardwick Verification at ¶¶ 132, 164. She requests an hourly rate of $300.00 per hour for Attorney Benfer. See Pl.'s Br. at 11; Hardwick Verification at ¶ 154. Diaz asserts that these are "reasonable and customary [rates for attorneys] within the market of the greater Philadelphia area." Pl.'s Br. at 10. Defendants challenge these rates for several reasons.

First, Defendants argue that Philadelphia should not be the relevant "community" for determining the appropriate billing rates because Diaz' attorneys are from Bucks County, Pennsylvania, and Diaz is from Northampton County, Pennsylvania.[15] Attorneys from Bucks County, however, frequently engage in employment litigation in the Philadelphia federal courthouse, rather than the Bucks County state courts, because of the federal statutes involved. See, e.g., McGuffey v. Brinks, 598 F. Supp. 2d 659, 669-70 (E.D. Pa. 2009) (considering rates in and around Philadelphia to determine appropriate rate for employment law attorneys who are located in Bucks and Delaware Counties, but practice in Philadelphia). Bucks County also is one of the largest counties in the Eastern District of Pennsylvania and attorneys from Bucks County

---

[14]     Defendants argue that 14.5 hours is an acceptable amount of time for preparing a fee petition based on another case from this Court. That case, however, did not establish 14 hours as a threshold amount for a fee petition. See Bjorkland, 2003 WL 22988885, at *5. It also is not clear how many documents were provided in support of that fee petition.

[15]     Defendants argue both parties are from Northampton County. Although Saucon Valley Manor is from Northampton County, the lawsuit was filed against Saucon Valley, Inc. and Nemita Atiyeh and they are both allegedly from Lehigh County. See Am. Compl. (doc. 6).

are prominent litigators in the Eastern District of Pennsylvania. Thus, the market rate for attorneys, who have offices in Bucks County, but litigate in Philadelphia – like Diaz' attorneys – can be the same as the market rate for attorneys of similar caliber with offices in Philadelphia.[16] See id.; see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) (there is no real "prevailing market rate" but fees should be in line with other lawyers in the "community" with similar experience, skill, and reputation); Hardwick Verification at ¶¶ 134, 147-48. Furthermore, although Diaz is from Northampton County and the underlying events occurred there, the case could be filed and heard in Philadelphia because Northampton County is within the Eastern District of Pennsylvania. The prevailing market rate, therefore, may be the Philadelphia market rate when a case is tried in Philadelphia because the attorneys practice within that district and litigants are located there.

Defendants also argue that Diaz has failed to provide any evidence to show that the $400.00 hourly rate charged by Attorneys Hardwick and Collier are reasonable in the community in and around Philadelphia. Attorney Hardwick, however, has submitted a verification in support of this rate as well as verifications from two other employment law attorneys in and around the Philadelphia area. See Hardwick Verification, Matos Verification, Pollins Verification. Furthermore, contrary to Defendants contentions, these verifications do not include conclusory statements that $400.00 per hour is a reasonable rate. Def.'s Br. at 28. Rather,

---

[16] Defendants contend that the rate should be based on the location of Diaz' attorneys or the parties based on Davis v. Eastman Kodak Co., 758 F. Supp. 2d 190 (W.D.N.Y. 2010) and Stewart v. Weis Markets, 890 F. Supp. 382 (M.D. Pa. 1995). The court in Davis, however, looked at the attorneys' "customary hourly rates," rather than the "going" rate at the attorneys' office location, as Defendants suggest should be done here. 758 F. Supp. 2d at 199-200. Similarly, in Stewart, the court stated that the fees were to be determined according to rates in Williamsport, Pennsylvania because the plaintiff's attorneys practiced in that area. 890 F. Supp. at 397-98.

Attorney Hardwick avers that she has been an attorney for almost 30 years, involved in employment litigation for more than 10 years, and active in employment law associations in the greater Philadelphia area. See Hardwick Verification ¶¶ 138-52. Attorney Collier has been an attorney for approximately 25 years and been practicing employment law for 12 years. See id. ¶¶ 164-68. Attorney Hardwick asserts that $400.00 per hour is a reasonable rate for experienced employment law attorneys based on her conversations with numerous employment attorneys in the greater Philadelphia area, and because she was recently awarded such a rate in an arbitration. See Hardwick Verification ¶¶ 132, 133. She further argues that this rate is reasonable based on case law allowing $400.00 per hour for experienced attorneys in and around Philadelphia. See Pl.'s Br. at 11-12 (citing cases).

Attorney Scott Pollins avers that $400.00 per hour is reasonable rate for an experienced employment law attorney in the greater Philadelphia area based on his leadership roles in employment law associations in the community and his own practice of employment law in this area for more than 10 years. Pollins Verification ¶¶ 3, 4, 12. He further explains that he is familiar with Attorney Hardwick and her work in this case, as well as in other cases, and believes her to be a highly experienced employment litigator. See id. ¶¶ 10, 11. Attorney Carmen Matos similarly states that she believes $400.00 per hour is a reasonable rate for experienced employment attorneys like Attorney Hardwick, based on her 30 plus years of practicing employment law in the Philadelphia area and her involvement in legal associations in this area. See Matos Verification ¶¶ 4-9, 14-15. These verifications are sufficient to establish that $400.00 per hour was a reasonable rate for Attorneys Hardwick and Collier. See Blum, 465 U.S. at 895 n.11 (fee applicant should produce own affidavit and other satisfactory evidence to show "that the requested rates are in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience and reputation"); Becker v. ARCO Chemical Co., 15 F. Supp. 2d 621, 636 (E.D. Pa. 1998) ("prevailing party's burden may be satisfied by the submission of affidavits of attorneys with personal knowledge of the hourly rates customarily charged in the relevant market"); see also McGuffey, 598 F. Supp. 2d at 670 ($400.00 per hour was reasonable rate for experienced employment law attorneys in and around Philadelphia).

Defendants additionally argue that Diaz' attorneys are improperly seeking a contingency fee multiplier by charging "contingent" rates that are higher than the hourly rates they charge for non-contingent cases.[17] Seeking the use of this higher rate for the calculation of the lodestar amount, however, is not equivalent to seeking a contingency fee multiplier, which is an enhancement or upward adjustment to the lodestar amount. See City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Blum, 465 U.S. at 897-98; Braun v. Wal-Mart Stores, 24 A.3d 875, 980 (Pa. Super. 2011). Furthermore, as already explained, Diaz has sufficiently shown that the rates charged by her attorneys were the prevailing market rates in and around the Philadelphia community. Although her attorneys may have charged lower rates in other cases, I am not bound by those lower rates. Instead, I must calculate the lodestar amount based on "prevailing market rates," which are equivalent to the rates charged by Diaz' attorneys in this case. See Blum, 465 U.S. at 894-95 (billing rates must be prevailing market rates, rather than actual "cost" rates).

III.   Degree of Success

Defendants next argue that Diaz' attorney fees should be reduced because she did not succeed on all of her claims. Specifically, Defendants point out that Diaz did not prevail on her FMLA and ADA retaliation claims, and thus, was successful on only 57% of her claims.

---

[17]   Diaz states that Attorney Hardwick regularly charges $400.00 per hour for contingent cases, such as this one, and $350.00 per hour for non-contingent cases. See Pl.'s Br. at 13.

A plaintiff is not entitled to fees incurred in connection with unsuccessful claims. See Hensley, 461 U.S. at 434. In reducing an award for time spent on such claims, I have the discretion to deduct time from the fee petition for the hours related to such claims or to reduce the award by a certain percentage to account for the limited success. See id. at 436-37. In exercising that discretion, I may consider whether the successful and unsuccessful claims were related and the attorneys' time, therefore, was spent on the litigation as a whole, rather than each specific claim. See id. at 434-45. I also may look to the significance of the overall relief obtained. See id. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Id. at 435.

Although Diaz did not prevail on her retaliation claims, this result did not impact her damage award because she would have been entitled to the same amount of compensatory damages under the FMLA and ADA if she had prevailed on those claims.[18] See, e.g., 8/27/2013 Op. at 3 n.3. Diaz' retaliation claims also shared a common core of facts with her successful FMLA and ADA claims. Thus, the work performed on Diaz' retaliation claims was generally intertwined with the work performed on Diaz' successful claims. Given these circumstances, Diaz's fee award shall not be reduced on a whole to account for her limited success. Rather, any hours spent solely related to the retaliation claims shall be deducted from the fee petition.

Diaz' attorneys already have not charged for most of the time solely related to the retaliation claims. Some time devoted to these claims, however, has been billed. See 9/26/2013

---

[18] Defendants argue that the result was not favorable to Diaz because she demanded more than $150,000.00 in damages in her complaint, and the jury awarded only $34,296.04 in compensatory damages. Defendants, however, are ignoring Diaz' $75,000.00 punitive damages award, which brings Diaz' total damages more in line with the damages sought in her complaint.

Hardwick Collier Invoice, 3/11/2013 Entry ($270.00).  That time will be deducted from the fee petition.

IV.     Costs

Defendants argue Diaz' attorneys' costs are unreasonable.  Specifically, they claim the charges for overnight trial transcripts were unnecessary.  I agree.  Diaz had several attorneys and paralegals in the courtroom during the trial to record and take notes concerning important testimony.  The trial also was not so long that some of the admitted evidence or testimony was likely to be forgotten.  Although Diaz asserts the overnight transcripts were necessary to resolve a discrepancy concerning the admission of deposition excerpts, this discrepancy could have been resolved by requesting clarification in court without the expense of ordering daily overnight transcripts.  See Hardwick Verification ¶ 126.  The daily overnight transcript charges ($5,096.30) will be deducted from the fee petition.

Defendants further contend that it was unreasonable for Diaz to charge for postage and copies because these expenses should be included in counsels' hourly rate.  Although postage and courier charges generally should not be included in an attorneys' hourly rate, attorneys may charge for copying fees.  See, e.g., Matter of Penn Central Transp. Co., 630 F.2d 183, 191 (3d Cir. 1980) (disallowing costs for postage and courier fees); Becker, 15  F. Supp. 2d at 636 (allowing copying charges).  Therefore, the postage and courier charges ($235.57) will be deducted from the fee petition.[19]

Defendants additionally assert it was unreasonable for Diaz' attorneys to charge for seeking advice from a "trial consultant" because this was "an ordinary disability discrimination

---

[19]     This amount includes postage fees from the September 26 and November 1, 2013 invoices.

case." Def.'s Br. at 38.  Diaz' attorneys explain that they hired a psychologist/trial consultant to help prepare Diaz for testifying about sensitive and embarrassing subjects at trial.  See Hardwick Verification ¶ 105.  They further explain that although three attorneys met with Diaz and the consultant, they have billed for only one attorney's attendance at the meeting.  See id. ¶ 106.  Because there were some sensitive and embarrassing issues related to Diaz' alcoholism at trial, the use of a psychologist/trial consultant was reasonable.

Defendants also challenge the fee associated with the rental of a bar association room for the "jury project."  Def.'s Br. at 38.  This room, however, was rented for trial preparation, rather than the jury project.  See 9/26/2013 Hardwick Collier Invoice at 32.  The $50.00 rental expense was reasonable.

V.     Award

Accordingly, Diaz' fee request of $445,248.00 will be reduced to $375,650.50 based on the following deductions:

| | |
|---|---|
| Discovery discussions | $290.00 |
| Improper use of attorney/paralegal time | $205.00 |
| Deposition preparation time | $7,500.00 |
| Deposition summary time | $3,000.00 |
| Summary Judgment preparation time | $15,000.00 (attorney time) |
| | $950.00 (paralegal time) |
| Trial preparation time | $20,000.00 (Attorney Hardwick) |
| | $15,000.00 (Attorney Benfer) |
| Focus groups | $6,632.50 |
| Consultation with other lawyers | $750.00 |

| | |
|---|---|
| Time spent on retaliation claims | $270.00 |
| Total reductions: | $69,597.50 |

Similarly, Diaz request for $16,495.93 in costs will be reduced to $9,514.06 to reflect the following deductions:

| | |
|---|---|
| Focus group expenses | $1,650.00 |
| Daily overnight transcripts | $5,096.30 |
| Copying and courier charges | $235.57 |
| Total reductions: | $6,981.87 |

Diaz shall be awarded a total of $385,164.56.

An appropriate order follows.